1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TATIANA WESTBROOK, an individual; JAMES WESTBROOK, an individual; HALO BEAUTY PARTNERS, LLC, a Nevada Limited Liability Company,<br><br>                Plaintiffs,<br><br>     v.<br><br>KATIE JOY PAULSON, an individual; WITHOUT A CRYSTAL BALL, LLC, a Minnesota Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>                Defendants. | NO.<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

## PARTIES

1.  Plaintiff TATIANA WESTBROOK (hereinafter "TATI"), is, and at all relevant times was, an individual whose domicile is in King County, Washington and who is a citizen of the state of Washington.  TATI is the founder, owner, and Chief Executive Officer of Halo Beauty, Inc.

2.  Plaintiff JAMES WESTBROOK (hereinafter "JAMES"), is, and at all relevant times was, an individual whose domicile is in King County, Washington and who is a citizen of the state of Washington.

**COMPLAINT - 1**

3.  Plaintiff HALO BEAUTY PARTNERS, LLC (hereinafter "HALO") is a Nevada limited liability company with its principal place of business in the state of Nevada.  Plaintiffs TATI, JAMES, and HALO are hereinafter collectively referred to as "Plaintiffs."

4.  Upon information and belief, Defendant WITHOUT A CRYSTAL BALL, LLC (hereinafter "Defendant" or "CRYSTAL BALL") is a Minnesota Limited Liability Company authorized to conduct business in the state of Minnesota.  Defendant CRYSTAL BALL's principal executive address is: 9917 Jasmine Avenue NE, Hanover, Minnesota 55341.

5.  Upon information and belief, Defendant KATIE JOY PAULSON (hereinafter "Defendant" or "PAULSON") is, and at all relevant times was, an individual whose domicile is the state of Minnesota.

6.  The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1-100, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.  Plaintiffs allege on information and belief that each of the Defendants designated herein as a fictitiously named Defendant is, in some manner, responsible for the events and happenings referred to, either contractually or tortuously, and/or that such fictitiously named Defendants are liable in some manner for the damages described herein. When Plaintiffs ascertain the true names and capacities of DOES 1-100, Plaintiffs will amend this Complaint accordingly.  Defendants PAULSON, CRYSTAL BALL, and DOES 1-100 are hereinafter collectively referred to as "Defendants."

### JURISDICTION

7.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants, who are citizens of different states, and Plaintiffs allege that their damages exceed $5,000,000, exclusive of interest and costs; thus the matter in controversy exceeds the jurisdictional minimum of $75,000.

**COMPLAINT - 2**

8.  This Court has personal jurisdiction over Defendants because they committed torts within the state of Washington and this District.  Plaintiffs are informed and believe that Defendants directly targeted Plaintiffs, who are residents of this District, with their tortious activity.

9.  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.  Plaintiffs are informed and believe that Defendants' behavior and wrongful conduct as described in this Complaint substantially occurred, and/or was specifically directed at, Plaintiffs within the jurisdiction of the Western District of Washington.

## GENERAL FACTUAL ALLEGATIONS

10. Plaintiff TATI is an internet personality, celebrity, and influencer.  TATI has worked as a beauty products critic under the sobriquet GlamLifeGuru.  TATI critiques beauty products and posts those critiques on social media platforms, including YouTube.  TATI has over 9 million followers on YouTube alone.

11. JAMES is married to TATI and is an entrepreneur and businessperson with many years of successful business experience.

12. Plaintiff HALO is a company formed by TATI and JAMES. It is a nutraceuticals company that produces products formulated to support hair, skin, and nail health.

13. Upon information and belief, Defendant PAULSON identifies herself and holds herself out to the public as a journalist.  Upon information and belief, Defendants claim that Patheos.com was Defendant PAULSON's former employer.  Upon information and belief, Defendant PAULSON never was an employee of Patheos.com, and Patheos.com cut whatever ties it had with PAULSON, in part, due to improper conduct, including her propensity to maliciously publish false and misleading information about third parties in her postings.

**COMPLAINT - 3**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

14. Upon information and belief, Defendant PAULSON is an internet blogger and vlogger who makes, produces, and uploads "drama" and/or "tea" videos and internet postings on various internet-based platforms, including but not limited to YouTube and Twitter.

15. Upon information and belief, Defendant PAULSON intentionally publishes false and defamatory matter to denigrate others through sensationalism and fabrication of perceived drama for the sole purpose of enticing followers and viewers to help Defendants monetize Defendant PAULSON's pages and channels on her various social media platforms.

16. Upon information and belief, Defendant PAULSON intentionally engages in being an "internet troll," under both her own name and various pseudonyms, for the purposes of harassment and causing others consternation, grief, emotional distress, and to otherwise cause damage to their reputations, well-beings, and livelihoods.

17. Upon information and belief, Defendants have a history of intentionally, maliciously, and/or recklessly publishing false and/or misleading information about various people and entities, including Plaintiffs.

18. Upon information and belief, Defendants tout themselves as established YouTube personalities and self-proclaimed internet trolls with a professed obsession with Plaintiffs. In fact, upon information and belief, PAULSON has openly stated on her various platforms that she will not stop going after Plaintiffs and she has otherwise openly dared Plaintiffs to sue Defendants so that PAULSON can misuse the discovery process to inflict more damage upon Plaintiffs.

19. Upon information and belief, Defendants have approximately 135,000 followers on YouTube alone.

20. Upon information and belief, Defendants are infatuated with the concept of "exposing" Plaintiffs, and it appears that others, who are currently unknown, are conspiring with, and/or

**COMPLAINT - 4**

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

feeding, Defendants private/confidential information about Plaintiffs for the purpose of harming Plaintiffs.

21. In May 2019, Defendants stated publicly in a YouTube video entitled "James Charles Cancels 'Sisters' Tour" that they intended to target Plaintiff TATI, her family, and her business, and do an "exposé" on TATI as retribution for what Defendants perceived as TATI's alleged mistreatment of another internet personality.

22. True to their word, Defendants thereafter obsessively fixated on TATI and her family to try to ruin TATI's good name and reputation and otherwise intentionally damage everyone around TATI.  Upon information and belief, Defendants intentionally harassed and maligned Plaintiffs and/or otherwise maliciously portrayed them in a false light and sought to financially harm them.  Upon information and belief, Defendants even went so far as to tell their social media viewers that TATI and JAMES are "demons."

23. Upon information and belief, and in addition to countless social media postings and articles, Defendants have devoted at least 40 YouTube videos to discussions about Plaintiffs since May 2019.  These videos include, but are not limited to:

a.   A video entitled: "The Truth About the Vitamins Surrounding Tati & James Charles," uploaded on or about May 11, 2019;

b.   A video entitled: "Tati's Story is Falling Apart," uploaded on or about May 13, 2019;

c.   A video entitled: "Seattle Waiter Speaks Out About James Charles," uploaded on or about May 13, 2019;

d.   A video entitled: "James Charles No Longer Canceled," uploaded on or about May 16, 2019;

e.   A video entitled: "Jeffree Star Rolls the Bus Over James Charles," uploaded on or about May 18, 2019;

**COMPLAINT - 5**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

f.  A video entitled: "Jeffree Star Apologizes," uploaded on or about May 19, 2019;

g.  A video entitled: "James Charles Moves On," uploaded on or about May 19, 2019;

h.  A video entitled: "Tati Westbrook Roasted on Twitter," uploaded on or about May 20, 2019;

i.  A video entitled: "James Charles Cancels 'Sister' Tour," uploaded on or about May 24, 2019;

j.  A video entitled: "The Truth about Tati Westbrook," uploaded on or about May 25, 2019;

k.  A video entitled: "Sephora Arrived at My house! And I'll answer questions too," uploaded on or about May 31, 2019;

l.  A video entitled: "Tati's Business Reveals Why She Called out James Charles," uploaded on or about June 1, 2019;

m.  A video entitled: "The Past James & Tati Westbrook Don't want you to Know," uploaded on or about June 2, 2019;

n.  A video entitled: "My Response to the Tea Channels," uploaded on or about June 3, 2019;

o.  A video entitled: "Can We Talk About Tati Lying for 18 minutes," uploaded on or about June 15, 2019;

p.  A video entitled: "Beauty Influencer Sends My Boss A Letter," uploaded on or about June 16, 2019;

q.  A video entitled: "Proof Tati's Vitamin Sales Not from Shane Dawson," uploaded on or about June 18, 2019;

r.  A video entitled: "James Charles is Back, Copyright, & Lost Diamonds," uploaded on or about June 19, 2019;

**COMPLAINT - 6**

s. A video entitled: "Should We Care about Beauty Gurus After Dramageddon 2019?" uploaded on or about July 14, 2019;

t. A video entitled: "James Charles Shares What Happens When Rumors Go Viral," uploaded on or about November 29, 2019;

u. A video entitled: "Tati Westbrook's Channel is Tanking & She's Blaming YouTube," uploaded on or about March 2, 2020;

v. A video entitled: "Trisha Paytas The Most 'Unproblematic' Person Ever Claps Back at Tati Westbrook over Shane Dawson," uploaded on or about June 1, 2020;

w. A video entitled: "Jeffree Star Caught Lying about Owning Morphe & Merch Company After Tati Westbrook Called Him Out," uploaded on or about June 1, 2020;

x. A video entitled: "Jeffree Star & Shane Dawson's Friends are Fed Up & Spilling Details Behind James Charles' Takedown," uploaded on or about June 12, 2020;

y. A video entitled: "Jeffree Star Trying to Scrub Criticism About Him off YouTube & Voice Memos Show His True Personality," uploaded on or about June 19, 2020;

z. A video entitled: "Shane Dawson's Not So Beautiful Scam of the Beauty Community - Will Tati Westbrook Expose Them All?" uploaded on or about June 21, 2020;

aa. A video entitled: "Jeffree Star Allegedly Used Tati Westbrook as a Pawn - Will She Reveal the Truth?" uploaded on or about June 23, 2020;

bb. A video entitled: "Blaire White Reveals the Dirt Jeffree Star is Extorting James Charles into Silence," uploaded on or about June 28, 2020;

cc. A video entitled: "YouTube's Biggest creators are in trouble," uploaded on or about June 28, 2020;

**COMPLAINT - 7**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

dd. A video entitled: "Why I Can't Stay Silent About Tati Westbrook Anymore With Receipts," uploaded on or about July 2, 2020;

ee. A video entitled: "Jeffree Star's Indifference to Tati Westbrook Could Be Due to Potential Lawsuit & Business Troubles," uploaded on or about July 8, 2020;

ff. A video entitled: "Jeffree Star's Apology to James Charles is Just Another Infomercial to Sell his Makeup," uploaded on or about July 19, 2020;

gg. A video entitled: "TikTokers Lose Power for Parties/Tati Westbrook Ghosts Halo/Dani Cohn's Age Slip/Kail's baby drama," uploaded on or about August 20, 2020;

hh. A video entitled: "6 Huge YouTubers Recently Dipped Out & May Never Come Back," uploaded on or about August 27, 2020;

ii. A video entitled: "Tati Westbrook Lists Her Los Angeles Compound She Just Bought - Is She Leaving YouTube for Good?" uploaded on or about September 22, 2020;

jj. A video entitled: "James Charles Instructed Me to Remove All Videos about Tati Westbrook So they Could End Jeffree Star," uploaded on or about October 14, 2020;

kk. A video entitled: "Clearing a Few Things Up About the Tati-James Charles Situation - Why I Spoke Out," uploaded on or about October 14, 2020;

ll. A video entitled: "Why I spoke Out Now about the James Charles/Tati Westbrook Situation," uploaded on or about October 14, 2020;

mm. A video entitled: "Tati Westbrook's Legal Issues - Going Over the Full Complaint," uploaded on or about October 28, 2020;

nn. A video entitled: "I was Right about Everything - A Huge Story Coming on Tati Westbrook," uploaded on or about October 28, 2020;

**COMPLAINT - 8**

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA 98104

oo. A video entitled: "Tati Westbrook Sued for Defrauding Millions from Biz Partner & Motivation for 'Bye Sister' Exposed," uploaded on or about October 28, 2020;

pp. A video entitled: "Why Tati Westbrook is the Mastermind behind James Charles Takedown & Why she Blamed Jeffree & Shane," uploaded on or about October 29, 2020;

qq. A video entitled: "Tati Westbrook Dragged Kiki Chanel the prelude to Bye Sister - Plus Her Love For Jeffree Star," uploaded on or about October 29, 2020; and,

rr. A video entitled: "Tati Westbrook's Old Videos Were Setting Us Up for Bye Sister & What She Said about Jeffree Star," uploaded on or about October 29, 2020

24. Plaintiffs allege, on information and belief, that Defendants have conspired, and continue to conspire with others, to ruin and sully Plaintiffs TATI's and JAMES' reputations, to defame and injure Plaintiffs, and to intentionally injure and interfere with HALO's business opportunities.

25. Upon information and belief, Defendants initiated a series of defamatory and disparaging attacks against Plaintiffs posted on various mediums on the internet, including but not limited to: YouTube, Instagram, Twitter, Facebook, and Patheos.com.

26. Upon information and belief, Defendants have created and uploaded to YouTube numerous videos in which they defamed and disparaged TATI, JAMES, and HALO. Upon information and belief, such videos have been viewed hundreds of thousands, if not millions, of times.

27. Upon information and belief, Defendants' improper posts and articles have been published to, and/or are accessible by the general public, including Defendants' posts that contain false and disparaging statements of fact regarding Plaintiffs.

**COMPLAINT - 9**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA 98104

28. Upon information and belief, Defendants have published articles concerning Plaintiffs on Patheos.com, including, but not limited to a June 3, 2019 article entitled "The Criminal Background Tati & James Westbrook are Hiding From Millions.

    a. Upon information and belief, TATI does not have a criminal background to speak of, which makes the title of the article grossly misleading and defamatory as to her;

    b. Upon information and belief, the article states that JAMES has "a lengthy criminal rap sheet," and then proceeds to discuss an arrest in 1989 and another in 1990 related to drug use when JAMES was still in his teens.  However, the article then fails to mention any further "criminal" activity over the next 30 years.  What is more, the article likewise fails to proffer any evidence that TATI or JAMES have taken any affirmative steps to "hide" such matters of public record.  As such, the subject article is both intentionally misleading and defamatory on its face;

    c. Upon information and belief, the subject article further states that JAMES has never been "successful in business."  JAMES' businesses over the years have been very successful, including his current businesses that Defendants attempt to attack for their success.  As such, the false generalization regarding JAMES' entire history as a businessman in said blog is likewise defamatory.

    d. Upon information and belief, the article also reiterates as conclusive fact obviously false allegations found in an unsuccessful lawsuit filed in Hawaii regarding the inheritance of JAMES' mother's estate.  Had a valid investigation been performed, it would have been discovered that this lawsuit was filed by JAMES' estranged sister who was expressly disinherited by their respective mother many years prior due to said sister having previously sued their mother when her step-father died in an attempt to challenge the inheritance of a surviving

**COMPLAINT - 10**

spouse.  After repeating the salacious and unproven allegations by his estranged sister, Defendants conclude as fact – not opinion - that JAMES had defrauded his family.  This statement is an obvious malicious and blatant lie published solely to inflict damage upon TATI and JAMES and ignores that said lawsuit was settled by said estate being divided amongst the family members, and that attorneys' fees were ordered to be paid from the proceeds of the estate – not from JAMES;

e.  Upon information and belief, the statement in the article that "Tati Westbrook's vitamin line was not selling in the way she hoped" is both misleading and maliciously false, as the vitamin line more than exceeded expectations, and TATI only lamented that the launch of the line could have gone more smoothly;

f.  Upon information and belief, the statement in the article that the purpose of transitioning TATI's business in 2019 from an LLC to a corporation was to protect her assets from legal issues in connection with the James Charles fallout is false and was made recklessly without regard for the truth.  The fact remains LLC's provide the same asset protection as corporations.  As such, the only purpose of making such a statement is to intentionally portray TATI in a false light by attributing a nefarious purpose associated with the transition of her corporate structure;

g.  Upon information and belief, the statement in the article that James Charles has "lost millions of dollars" as a direct result of his relationship with Plaintiffs is false, as even Mr. Charles himself expressly stated that his tour was cancelled for reasons unrelated to Plaintiffs; and,

h.  Upon information and belief, the article in question obviously harms TATI and JAMES' reputation and HALO's future business prospects by falsely asserting a significant amount of defamatory statements.  By publishing these falsehoods,

COMPLAINT - 11

1    Plaintiffs have been outrageously defamed.  The statements made about Plaintiffs

2    amount to a false assertion that they are engaging in current criminal conduct,

3    which is defamatory on its face.

4    29. Upon information and belief, and by way of example and not limitation, Defendants have

5    made additional false, defamatory and misleading statements such as:

6        a.  Upon information and belief, Defendants were talking about TATI when

7            Defendant PAULSON stated as fact –  not opinion – on or about July 1, 2020 in a

8            YouTube video entitled "My Experience with Tati Westbrook," that Tati is

9            "constantly lying and not taking accountability";

10        b.  Upon information and belief, Defendants were talking about TATI when

11            PAULSON stated as fact – not opinion – on or about March 2, 2020 in a

12            YouTube video entitled "Tati Westbrook's Channel is tanking and she's blaming

13            YouTube,": TATI is "not honest," and "she's not properly disclaiming …

14            products she's using by the FTC standards.  She's the owner of Halo Beauty, so

15            she should be disclosing that";

16        c.  Upon information and belief, Defendants were talking about Plaintiffs TATI and

17            JAMES on June 16, 2019 in a YouTube video entitled "Beauty Influencer Sends

18            My Boss a Letter" wherein Defendants concede that they recklessly failed to

19            verify the veracity of the false and misleading statements they made about

20            Plaintiffs.  In the video, after indicating that she had conducted some background

21            research on Plaintiffs JAMES and TATI, Defendant PAULSON said: "I might

22            have rushed it, to be honest.  I may have rushed it a little bit… pieces I didn't

23            have all together…."  She then stated that her videos might have been disruptive

24            to TATI and JAMES' lives;

25

26

**COMPLAINT - 12**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

d.  Upon information and belief, Defendants were talking about JAMES on Twitter when PAULSON stated as fact – not opinion – on or about June 2, 2019: "her husband, who is a career con-artist";

e.  Upon information and belief, Defendants were talking about JAMES on Twitter when PAULSON stated as fact – not opinion – on or about June 3, 2019: "He hasn't changed! He stole money from his dying mother, took out loans in her name while she was sick and ill - and then stole $340k from a lender in CA";

f.  Upon information and belief, Defendants were talking about JAMES on Twitter when PAULSON stated as fact – not opinion – on or about June 2, 2019: "He has failed and has a long history of crimes";

g.  Upon information and belief, Defendants were talking about JAMES on Twitter when PAULSON stated as fact – not opinion – on or about June 2, 2019: "Her husband is a career criminal and scammer";

h.  Upon information and belief, Defendants were talking about JAMES on Twitter when PAULSON stated as fact – not opinion – on or about June 3, 2019: "he stole money from his dying mother";

i.  Upon information and belief, Defendants were talking about TATI on Twitter when PAULSON stated as fact – not opinion – on or about June 2, 2019: "two con-artists [who] destroyed [James Charles'] reputation so they could pay off debt";

j.  Upon information and belief, Defendants were talking about TATI on YouTube when PAULSON stated as fact – not opinion – on or about May 25, 2019: "She's lying to sell snake oil";

k.  Upon information and belief, Defendants were talking about TATI and JAMES on YouTube when PAULSON stated as fact –  not opinion – on or about May 31,

**COMPLAINT - 13**

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

2019: "she's had a pretty consistent reputation of like fooling people into believing that she's very trustworthy but then she does a lot of very untrustworthy things"; she covers Tati stories because she sells "junk vitamins";

l.  Upon information and belief, Defendants were talking about TATI and JAMES on YouTube when PAULSON stated as fact – not opinion – on or about June 2, 2019 in a video entitled "The Past James & Tati Westbrook Don't Want You to Know": "I just want you to keep in mind she's been accused of selling snake oil and … after everything that I've done I can say ***without a doubt*** her product is snake oil … She's manipulating her followers into buying these products and promising results that have ***zero testing*** to show that they do anything"… "Let's just say Tati brags that he's a self-made... I'll bet when you're stealing money from your family... its self-made all right";

m.  Upon information and belief, Defendants were talking about HALO on YouTube when PAULSON stated as fact – not opinion – on or about June 1, 2019: "you're stealing other companies' logos … it's not completely stealing the logo it just is kind of stolen";

n.  Upon information and belief, Defendants were talking about TATI, JAMES, and HALO on YouTube in a video entitled "Why I spoke Out Now about the James Charles/Tati Westbrook Situation" on or about October 14, 2020, when she stated their business is "on the verge of imploding… and it all relates back to that history that they have just not necessarily following the rules…";

o.  Upon information and belief, Defendants admitted in a YouTube video entitled, "James Charles Shares What Happens When Rumors Go Viral" on or about November 29, 2019 that Defendants are aware that PAULSON's activities cause Plaintiffs damage when PAULSON stated that she has been "guilty" of creating

**COMPLAINT - 14**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA 98104

"drama" and that "troll accounts" create a "massive ripple effect" where "everyone becomes impacted," and "untruths become facts";

p.  Upon information and belief, Defendants were talking about TATI and JAMES on Twitter on or about October 14, 2020 when they stated as fact – not opinion: "Last year I reported that Tati Westbrook's husband James Westbrook had a history of questionable behavior in relation to alleged fraud.  A video I made on his court cases infuriated him to the point that they sent someone to my inbox to threaten me.  Let's just say I wasn't wrong";

q.  Upon information and belief, Defendants were talking about TATI on Twitter on or about October 14, 2020 when they stated as fact – not opinion: "But after receiving a phone call yesterday, I feel sick to my stomach.  Tati Westbrook & James Charles used me in their quest to take down Jeffree Star";

r.  Upon information and belief, Defendants were talking about TATI and JAMES on Twitter on or about October 14, 2020 when they stated as fact – not opinion: "They needed the internet SCRUBBED of any of Tati's or her husband's wrongdoings before she could put out a video about Jeffree Star.  She wanted all the evidence gone - so she could pin it on Jeffree Star";

w.  Upon information and belief, Defendants were talking about TATI and JAMES on Twitter on or about October 28, 2020 when they stated as fact – not opinion: "Tati Westbrook wanted to set up her audience to make them believe she was trustworthy and likened herself to being an Angel.  But She [SIC] was with her husband James Westbrook when he ripped off his Family & his former friend for nearly a million –this time the fraud is more than $5m";

x.  Upon information and belief, Defendants were talking about TATI and JAMES on Twitter on or about October 28, 2020 when they stated as fact – not opinion:

**COMPLAINT - 15**

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

"It seems the Westbrook's attempts to remove blogs by Without a Crystal Ball could have been done to mislead business partners & potentially hide fraudulent actively from investors";

y.  Upon information and belief, Defendants were talking about JAMES on Twitter on or about October 28, 2020, when they stated as fact -- not opinion: "The lawsuit accuses James Westbrook of liquidating hundreds of thousands of dollars of Halo Beauty's assets on October 10, 2020 as the Westbrook's learned about the case - effectively devaluing the company.";

z.  Upon information and belief, Defendants were talking about TATI and JAMES on Twitter on or about October 28, 2020, when they stated as fact and not opinion: "Tati Westbrook isn't scared for her life because of Jeffree Star.  She & her husband are unloading their assets and trying to dodge their business responsibilities.  They don't want anything in their name because they are on the hook for millions to Clark Swanson";

aa. Upon information and belief, Defendants were talking about JAMES on Twitter on or about October 28, 2020, when they stated: "While I get that the complaint is one opinion for one partner, James Westbrook's history of fraud lends me to believe that the partner isn't lying";

bb. Upon information and belief, Defendants were talking about TATI on Twitter on or about October 29, 2020, when they stated: "JC, Tati abused u once & used u a second time - cut ties now";

cc. Upon information and belief, Defendants were talking about TATI on Twitter on or about October 29, 2020, when they stated: "This right here.  Tati lying for one minute"; and

**COMPLAINT - 16**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

dd. Upon information and belief, Defendants were talking about TATI on Twitter on or about October 29, 2020, when they stated: "I dared FACT check Tati's assertions that her husband is a great business man (sic)."

30. Upon information and belief, Defendants have shown a reckless disregard for the truth of their statements about Plaintiffs, and a propensity for portraying Plaintiffs in a false light. While Defendants admitted on or about July 2, 2020 that they removed statements from articles written about Plaintiffs that were blatantly false after receiving a letter from Plaintiffs' counsel, Defendants have refused to remove the same or similar false statements from other internet platforms, including YouTube.

31. Upon information and belief, since July 2, 2020, Defendants have continued unabated their relentless attack upon Plaintiffs with false statements and/or statements portraying Plaintiffs in a false light.

32. Upon information and belief, on or about October 20, 2020, Plaintiffs' business partner filed a lawsuit in Los Angeles Superior Court entitled *Swanson, et al. v. Halo Beauty, Inc., et al.* Case No. 20SMCV01573. In response to the filing of this lawsuit, Defendants have devoted numerous hours of content on YouTube and numerous Twitter posts. Defendants even posted on Twitter on or about October 28, 2020 that they were "tipped off about the suit by a source" who "asked us to break the story."

33. Upon information and belief, on or about October 28, 2020, Defendants uploaded a video onto YouTube entitled, "I was Right about Everything - A Huge Story Coming on Tati Westbrook." In said video, upon information and belief, Defendants made the following false statements and/or statements portraying Plaintiffs in a false light, including, but not limited to:

a. "I now get why James and Tati Westbrook have been wanting my stuff off the internet. They did not want their business partner to see what he was involved in.

**COMPLAINT - 17**

They did not want any of those fraudulent cases that he [JAMES] was involved in to become public. They did not want it searchable";

b. "you don't want to be affiliated with this at all … these are not good people;

c. that TATI and JAMES "scrub everything so that they can protect things from investors";

d. that TATI and JAMES were broke when they launched HALO;

e. that TATI and JAMES had no credit when they launched HALO;

f. that TATI and JAMES had no money when they launched HALO;

g. that TATI and JAMES had no bank accounts when they launched HALO;

h. that JAMES liquidated all the cash in HALO's bank accounts and paid it out to members without the knowledge of the partners, rendering HALO worthless; and,

i. that JAMES liquidated his mom's house "to the point where it was zero. He had put in so many reverse mortgages that the house had no equity." There is not a shred of truth to any of the claims that Defendants state as fact. Moreover, Defendants portray JAMES in a false light as they knew this statement was untrue at the time it was made. Generally, one must be 62 years of age to obtain a reverse mortgage. Defendants are in possession of knowledge that JAMES is well below the age of 62.

34. Upon information and belief, Defendants falsely stated in the "I Was Right about Everything…" video that TATI and JAMES liquidated all of HALO's cash in advance of a lawsuit being filed. This statement is false on several levels. The Swanson complaint says no such thing. The complaint only alleges that HALO issued a distribution and says nothing about said distribution leaving the bank accounts without any cash. Second, the statement is absolutely false. The truth is that HALO merely went through a standard and routine end-of-financial-quarter distribution in which Clark Swanson took part, and which also left significant sums in the company's operating account to cover current operating expenses. This statement was made for

**COMPLAINT - 18**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA 98104

the sole purpose of defaming TATI and JAMES and portraying them in a false light.  Moreover, the lawsuit does not state the funds were paid without Mr. Swanson's knowledge  – the lawsuit says that he objected to it.  Such quarterly withdrawals of funds did not render HALO "worthless," nor does the Swanson complaint make such a claim.

35. Upon information and belief, on or about October 28, 2020, Defendants uploaded a video onto YouTube entitled, "Tati Westbrook's Legal Issues- Going Over the Full Complaint."  In said video, upon information and belief,  Defendants made the following false and/or misleading statements portraying Plaintiffs in a false light, including, but not limited to:

    a.  stating that TATI and JAMES listed their house for sale because they wanted to get rid of their assets if they lose the Swanson lawsuit so that people cannot get access to their money; and

    b.  stating that JAMES "liquidated all of his assets from Halo Beauty."

36. Upon information and belief, Defendants recklessly made these false statements without any supporting information.  To begin, it is mathematically impossible to liquidate "all of his assets" if JAMES is being sued as a 33% owner of HALO in the Swanson case.  In addition, TATI and JAMES moved to the state of Washington in 2018 and became permanent residents therein in 2019—a fact known by Defendants as PAULSON has made mention of TATI's move to Washington in certain of her videos.  Despite having such knowledge, Defendants instead claimed that TATI and JAMES were selling a house that they no longer lived in for nefarious reasons.

37. Defendants' defamatory statements and videos have caused damage to TATI, JAMES, and HALO.

38. Upon information and belief, Defendants initiated these numerous salacious and defamatory attacks on Plaintiffs to maliciously damage, disparage, criticize, or otherwise adversely affect Plaintiffs.

**COMPLAINT - 19**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

39. Upon information and belief, Defendants expressly seek to destroy Plaintiffs' relationships with their business relations, customers, and followers.  In fact, in one video, Defendants claim that they privately reached out to individuals with whom Plaintiffs maintain business relationships, repeated their defamatory claims to them, and told them to "cut ties" with Plaintiffs.

40. Upon information and belief, Defendants seek to impede and undermine HALO and the commercialization of its vitamin supplement brand, thus inflicting economic damage on TATI, JAMES, and HALO.

41. Plaintiffs have built their highly valuable customer base, reputation, and goodwill over several years.  The harm that Defendants are inflicting upon Plaintiffs—and continue to inflict if not enjoined—cannot be calculated at this time, but is believed to exceed $5,000,000.

42. Plaintiffs have requested that Defendants take down the false, misleading, and defamatory videos, articles, and tweets.  Yet, Defendants have refused to remove the videos and tweets, and have continued to publish additional false and defamatory content regarding Plaintiffs.

43. The allegations made by Defendants in various YouTube, Twitter, and Patheos.com postings have defamed Plaintiffs, disparaged Plaintiffs' products, and negatively impacted Plaintiffs' relationships with their customers, prospective customers, and business relations.

44. Defendants' willful, disparaging, malicious, and defamatory conduct, as set forth herein, has inflicted and will continue to inflict irreparable harm upon Plaintiffs, including harm to their reputation, substantial impairment to their customer relationships and goodwill, and impairment to their relationships with current and potential business partners, which cannot be remedied by money damages alone.

**COMPLAINT - 20**

45. No price tag can be placed on harm caused by threatened destruction of Plaintiffs' reputation as a result of Defendants' disparaging and defamatory statements made to the general public, which includes Plaintiffs' customers, followers, and business relations.

46. Upon information and belief, it is currently impossible to determine how much Plaintiffs stand to lose as a result of Defendants' improper conduct. Without judicial intervention, the damage and harm to Plaintiffs undoubtedly will increase exponentially.

47. Upon information and belief, the existence of irreparable harm is beyond doubt. Without an injunction, Defendants' aggressive campaign of disparagement and interference with Plaintiffs' prospective economic advantage and business relationships will continue.

48. Upon information and belief, as of October 2020, despite Plaintiff TATI remaining offline for a few months, Defendants have continued their malicious, aggressive campaign of disparagement and defamation against Plaintiffs.

49. Upon information and belief, at all relevant times described herein, Defendants, in doing the acts alleged in this Complaint, acted in concert and conspired with or aided and abetted each other to do the acts complained of in this complaint, and that each Defendant acted, at all times, as the agent, partner, co-conspirator, co-venturer, joint-venturer, representative or employee of the other Defendants and acted within the scope and purpose of that agency, partnership, joint venture or employment, such that the acts and conduct of each Defendant was known to, authorized by, and ratified by the other Defendants. Plaintiffs are further informed and believe that each of the Defendants named herein engaged in wrongful conduct that is a proximate cause of Plaintiffs' damages, and are therefore responsible in some manner for the damages sustained by Plaintiffs.

///

///

///

**COMPLAINT - 21**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

**FIRST CAUSE OF ACTION**

**DEFAMATION**

50. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51. Upon information and belief, from May 2019 to the present, Defendants published to third parties, and/or caused others to publish to third parties, through articles, tweets, Instagram posts, and postings on other internet platforms, numerous written, false, non-privileged statements of fact regarding Plaintiffs that were degrading, damaging, disparaging, and defamatory and made for the purpose of causing Plaintiffs financial harm and emotional distress.

52. Upon information and belief, Defendants also have made numerous oral, false, unprivileged statements of fact about Plaintiffs, which were published to third parties, were degrading, damaging, disparaging, and defamatory, and were made for the purpose of causing Plaintiffs financial harm and emotional distress.

53. Upon information and belief, these false and defamatory statements made by Defendants, as stated above, were posted to YouTube, Twitter, Patheos.com, Instagram and other global media platforms, which are in the public domain, and were therefore published to individuals of the general public, including Plaintiff TATI's followers on social media and Plaintiff HALO's customers and potential customers, negatively impacting their business and potential business relationships.

54. Upon information and belief, third parties reasonably understood that Defendants' false statements were about Plaintiffs TATI, JAMES, and HALO respectively, as Plaintiffs were each mentioned by name numerous times throughout the various mediums that Defendants chose to publish the defamatory statements.

55. Upon information and belief, Defendants published the same or similar defamatory statements to other third parties by way of other means and venues.

**COMPLAINT - 22**

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

56. As a result of Defendants' false statements, Plaintiffs have been exposed to ridicule and contempt.

57. By refusing to take down the defamatory posts currently on multiple internet platforms, Defendants continue to make false and misleading statements.  Upon information and belief, these statements are intended to carry out a smear campaign against Plaintiffs.  Monthly revenue of Plaintiffs began declining, and has continued to decline, month over month since Defendants' campaign of malice and defamation commenced.

58. Upon information and belief, in publishing false and misleading statements of fact about Plaintiffs, Defendants acted negligently and/or intentionally, maliciously, and with a reckless disregard for the truth or falsity of such statements.  Defendants' statements clearly were calculated falsehoods and were made either with knowledge of their falsity or with reckless disregard of their truth or falsity.  For instance, in a June 16, 2019 video, Defendants admit that Defendant PAULSON may have rushed publication of false, defamatory statements before having all facts, and admit that her false statements may have disrupted Plaintiffs' lives and business as a result.  Additionally, in a July 2, 2020 video, Defendants acknowledge that they removed false statements from articles, but refused to remove the same or similar false content from YouTube and Twitter.

59. Defendants' defamatory statements have subjected Plaintiffs to hatred, contempt, ridicule, and obloquy.

60. As a direct and proximate result of the conduct of Defendants as described herein, Plaintiffs have been shunned, avoided, and/or injured in their occupation or business.

61. As a direct and proximate result of the conduct Defendants as stated herein, Plaintiffs have been damaged in an amount to be proven at trial, including without limitation emotional distress, mental anguish, loss of income/profits, and loss of goodwill damages, the amount of which is expected to exceed $5,000,000.

**COMPLAINT - 23**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

**SECOND CAUSE OF ACTION**

**DEFAMATION PER SE**

62. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs 1 through 61 of this Complaint as though fully set forth herein.

63. Upon information and belief, from May 2019 to the present, Defendants published to third parties false and/or misleading, non-privileged statements of fact about Plaintiffs that were degrading, damaging, disparaging, and defamatory for the purpose of causing them harm, and to otherwise destroy Plaintiffs' ability to conduct business through YouTube and through Plaintiff HALO's sale of supplement products.

64. Upon information and belief, Defendants published these false statements in numerous articles, tweets, Instagram posts, You Tube vides, Patheos.com posts, and posts and videos on other internet platforms.  Such false statements were published to hundreds of thousands of people, if not millions, including to Plaintiff TATI's followers on various social media platforms and Plaintiff HALO's customers and potential customers.

65. Upon information and belief, Defendants published the same or similar false statements to other third parties by way of other means and venues.

66. By way of example, and not limitation, these false statements include:

    a.   That JAMES has a "long history of crimes"; is a "career criminal and scammer"; has engaged in theft; engaged in fraud; has a "shady background;" has an arrest for possession of drugs that he was trying to hide; has multiple felonies; has a possible incarceration; has a bankruptcy; stole money from his dying mother; has a long rap sheet; has had four businesses permanently revoked as evidence he committed fraud; has a judgment against him for over $500,000 for defrauding an investor; has engaged money laundering; and is a "career con-artist."  In addition,

**COMPLAINT - 24**

she has stated that court records show he took his mom off of oxygen to imply that he intentionally killed his mother;

b.  That Plaintiff TATI is "a snake," a "con-artist," and has a history of: selling "snake oil"; defrauding lenders; engaging in fraud; money laundering; and lying.

c.  That Plaintiff HALO is "manipulating its customers," "stealing" property from other companies, and that its products are harmful to human health.  Defendants also have falsely stated or implied that HALO's products need to be FDA approved and are not.

67. Upon information and belief, third parties reasonably understood that these false and/or misleading statements were about Plaintiffs TATI, JAMES, and HALO respectively, as they were each mentioned by name numerous times throughout the various mediums that Defendant PAULSON chose to publish her defamatory statements.

68. Upon information and belief, Defendants' false statements were made without authorization and without privilege.

69. Upon information and belief, Defendants' false statements impute dishonestly and criminal conduct to Plaintiffs and were designed to subject Plaintiffs to public ridicule, potential violence, and contempt; to deprive Plaintiffs of the benefit of public confidence; and to injure Plaintiffs in their business, profession, or trade.

70. Upon information and belief, by refusing to take down the defamatory posts currently on multiple internet platforms, Defendants continue to make false and misleading statements, with the intent of conducting a smear campaign against Plaintiffs.  Plaintiffs have lost revenue as a result of Defendants' false statements, and these revenue declines have continued to occur month over month since Defendants campaign of malice and defamation commenced.

71. Upon information and belief, Defendants failed to use reasonable care to determine the truth or falsity of these false statements.  Further, Defendants' publications of these false

**COMPLAINT - 25**

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1   statements were done intentionally, maliciously, and with reckless disregard for the truth or
2   falsity of the statements.

3      72. Upon information and belief, Defendants have made, and continue to make, false
4   statements about Plaintiffs intentionally, maliciously, and/or in a grossly negligent manner, for
5   the sole purpose of injuring the business and reputation of Plaintiffs

6      73. Upon information and belief, Defendants' publications of these false statements
7   constitute defamation per se, and Plaintiffs' are therefore presumed to have incurred damages as
8   a result of such publications.

9      74. Plaintiffs have suffered harm to their business and reputation and have been exposed to
10  contempt and ridicule as a result of Defendants' defamatory statements.

11     75. As a direct and proximate result of the conduct of Defendants as stated herein, Plaintiffs
12  have been damaged in an amount which is believed to exceed $5,000,000.

13                              **THIRD CAUSE OF ACTION**

14                                   **TRADE LIBEL**

15     76. Plaintiffs hereby incorporate by reference each and every allegation contained in the
16  preceding paragraphs 1 through 75 of this Complaint as though fully set forth herein.

17     77. Upon information and belief, Defendants have made numerous statements disparaging
18  Plaintiff HALO's credibility, business, and products. These statements include but are not
19  limited to: that Plaintiff HALO is selling "snake oil" and its products are harmful.

20     78. Upon information and belief, Defendants also have stated falsely that Plaintiff HALO's
21  products need to be FDA approved, falsely implying that such products do not comply with FDA
22  regulations.

23     79. Upon information and belief, these statements would be clearly or necessarily understood
24  by third parties to disparage Plaintiff HALO's credibility and products in the marketplace.

25

26

**COMPLAINT - 26**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

80. Upon information and belief, Defendants knowingly made these and other false and/misleading, unprivileged statements of fact and intended such statements to injure HALO's pecuniary interests with respect to their profession, trade, and business.

81. Upon information and belief, Defendants knew that the statements were untrue at the time the statements were made or acted with reckless disregard of the truth or falsity of the statements. Defendants knew or should have recognized that third parties would act in reliance on the statements, causing Plaintiff HALO financial harm.

82. HALO has suffered direct financial harm because numerous people have acted in reliance on Defendants' false statements, and HALO subsequently lost sales and customers as a result. Plaintiff HALO has been damaged in an amount to be proven at trial, which is expected to exceed $5,000,000.

## FOURTH CAUSE OF ACTION

## FALSE LIGHT INVASION OF PRIVACY

83. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs 1 through 82 of this Complaint as though fully set forth herein.

84. Upon information and belief, Defendants have made numerous false statements regarding Plaintiffs, which have depicted Plaintiffs in a false light in the public eye, including without limitation statements that Plaintiffs JAMES and TATI are liars; have engaged in criminal conduct, including money laundering, stealing from Plaintiff JAMES' own mother, and intentionally causing Plaintiff JAMES' mother's death; have defrauded investors and customers; and have a history of failed businesses and money management problems.

85. Upon information and belief, the publicity created by Defendants' statements was highly offensive and objectionable to both Plaintiffs JAMES and TATI and to a reasonable person, and such statements attribute to Plaintiffs JAMES and TATI characteristics, conduct, or beliefs and that are false, thereby placing Plaintiffs in a false position before the public.

**COMPLAINT - 27**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA 98104

86. Upon information and belief, Defendants published such statements, either with knowledge of their falsity, or with reckless disregard of their falsity and the false light in which Plaintiffs were placed.  For instance, in a June 16, 2019 video, Defendants admit they may have rushed publication of their statements before having all facts, which may have disrupted Plaintiffs' lives.

87. Upon information and belief, as a proximate result of Defendants false statements and depictions, Plaintiffs JAMES and TATI have suffered general damages, including emotional distress and mental suffering, in an amount to be proven at trial, which is expected to exceed $5,000,000.

88. Plaintiffs JAMES and TATI believe that Defendants will continue making false statements depicting them in an offensive and objectionable false light unless and until enjoined and restrained by order of this court.  Defendants' continued publications will cause Plaintiffs TATI and JAMES great and irreparable injury.  Plaintiffs TATI and JAMES have no adequate remedy at law for the injuries being suffered in that a judgment for monetary damages will not end the invasion of Plaintiffs TATI and JAMES' privacy.

## FIFTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

89. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs 1 through 88 of this Complaint as though fully set forth herein.

90. Upon information and belief, the conduct of Defendants as described in this Complaint was extreme and outrageous and beyond the bounds of decency tolerated in a civilized society.

91. Upon information and belief, the conduct of Defendants was intended to cause Plaintiffs TATI and JAMES severe emotional distress and/or was perpetrated with reckless disregard as to the probability that Plaintiffs TATI and JAMES would suffer severe emotional distress as a result.

**COMPLAINT - 28**

92. Upon information and belief, regarding Plaintiff JAMES, the extreme and outrageous conduct of Defendants included, but was not limited to a series of harassment where Defendants published to various public mediums false statements that Plaintiff JAMES was a thief who stole from his dying mother; intentionally caused his mother's death; engaged in fraud; and was a career criminal convicted of multiple felonies with a long rap sheet.

93. Upon information and belief, regarding TATI, the extreme and outrageous conduct of Defendants included, but was not limited to a series of harassment where Defendants published to various public mediums false statements that Plaintiff TATI is a liar; has defrauded investors; and has a history of hiding assets to defraud creditors.

94. Upon information and belief, Defendant posts numerous videos and statements about Plaintiffs nearly every week, and sometimes even uploads multiple posts and videos on a single day.

95. Upon information and belief, Defendants made these false statements about Plaintiffs TATI and JAMES, either with knowledge of their falsity, or with reckless disregard of their falsity.

96. As a direct and proximate result of Defendant's outrageous conduct, Plaintiffs TATI and JAMES have suffered severe emotional distress and mental anguish including, but not limited to: loss of sleep; anxiety; depression; nausea; loss of appetite; loss of weight; fear; sense of helplessness; and despair.

97. As a direct and proximate result of the tortious and wrongful acts of Defendants, Plaintiffs have suffered past and future special damages and past and future general damages in an amount to be proven at trial.

**COMPLAINT - 29**

**SIXTH CAUSE OF ACTION**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

98. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs 1 through 97 of this Complaint as though fully set forth herein.

99. Upon information and belief, Defendants owed a duty to use reasonable care in their conduct with regard to the mental health and safety of Plaintiffs TATI and JAMES.  It was foreseeable and probable that Plaintiffs TATI and JAMES would suffer severe emotional distress from constant onslaught of defamatory statements being made by Defendants about Plaintiffs TATI and JAMES and their company on social media and aimed at their consumer base.

100.      Upon information and belief, Regarding Plaintiff JAMES, the negligent conduct of Defendants includes without limitation, publishing on various public mediums false statements that Plaintiff JAMES was a thief who stole from his dying mother; engaged in fraud; and was a career criminal convicted of multiple felonies with a long rap sheet.

101.      Upon information and belief, regarding TATI, the negligent conduct of Defendants includes without limitation, publishing on various public mediums false statements that Plaintiff TATI is a liar; has defrauded investors; and has a history of hiding assets to defraud creditors.

102.      Upon information and belief, Plaintiffs TATI and JAMES are informed and believe that Defendants breached the duty of care they owed to Plaintiffs by repeatedly harassing Plaintiffs in derogatory, defamatory, and outright bullying ways as described in this Complaint.

103.      Plaintiffs TATI AND JAMES have suffered severe emotional distress, with objective symptomology including, but not limited to: loss of sleep; anxiety; depression; nausea; loss of appetite; fear; sense of helplessness; and despair.

104.      Plaintiffs are informed and believe that, as a direct and proximate result of the tortious and wrongful acts of Defendants as described in this Complaint, Plaintiffs TATI and

**COMPLAINT - 30**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1    JAMES have suffered past and future special damages and past and future general damages in an

2    amount to be proven at trial.

3                              **SEVENTH CAUSE OF ACTION**

4                       **WASHINGTON CONSUMER PROTECTION ACT**

5        105.   Plaintiffs hereby incorporate by reference each and every allegation contained in

6    the preceding paragraphs 1 through 104 of this Complaint as though fully set forth herein.

7        106.   Upon information and belief, Defendants' numerous publications of false and

8    misleading statements directly targeting Plaintiffs and their business income for the purpose of

9    fabricating drama and controversy to increase Defendants' own number of followers and

10   revenue from their various social media platforms constitute unfair or deceptive acts or practices

11   in trade or commerce under RCW 19.86.020.  Such acts or practices by Defendants had, and

12   continue to have, the capacity to deceive a substantial portion of the public.

13       107.   Upon information and belief, Defendants' unfair or deceptive acts or practices

14   affect the public interest because they had, or have, the capacity to injure other persons as

15   described in this Complaint.

16       108.   Defendants' unfair or deceptive acts have caused injury to Plaintiffs in their

17   business or property, including loss of followers, loss of consumers, and other lost revenue and

18   profits.

19       109.   Plaintiffs are entitled to recovery of damages in an amount to be determined at

20   trial, plus treble damages, reasonable attorneys' fees and costs, for Defendants' violation of the

21   Washington Consumer Protection Act.

22                              **EIGHTH CAUSE OF ACTION**

23                                **CIVIL HARASSMENT**

24       110.   Plaintiffs hereby incorporate by reference each and every allegation contained in

25   the preceding paragraphs 1 through 109 of this Complaint as though fully set forth herein.

26

**COMPLAINT - 31**

111.   Upon information and belief, Defendants have manifested an intent to "expose" Plaintiffs and have relentlessly pursued Plaintiffs.  Upon information and belief, since May 2019, Defendants have knowingly and willfully engaged in a course of conduct directed at Plaintiffs TATI and JAMES, including publishing defamatory statements about them, which has seriously alarmed, annoyed, harassed, and is detrimental to them and which serves no legitimate purpose.

112.   Defendants' pattern and practice of civil harassment targeting Plaintiffs TATI and JAMES, in violation of RCW 10.14.020, includes but is not limited to the following:

   a.   Falsely accusing Plaintiffs JAMES of having a "long history of crimes"; being a "career criminal and scammer"; theft; fraud; having multiple felonies; stealing money from his dying mother; having a long rap sheet; being a "career con-artist"; being a "demon"; and intentionally killing his mother;

   b.   Falsely accusing Plaintiff TATI of being "a snake"; a "con-artist"; selling "snake oil"; intentionally and knowingly selling products harmful to the public; having a company that is "stealing" property from other companies and "manipulating its customers"; being a "demon"; and lying.

113.   Defendants' knowing and willful course of conduct directed at Plaintiffs TATI and JAMES is such conduct that would cause a reasonable person to suffer emotional distress and which actually caused Plaintiffs to suffer substantial emotional distress, including without limitation loss of sleep; anxiety; depression; nausea; loss of appetite; fear; sense of helplessness; and despair.

114.   Plaintiffs TATI and JAMES are entitled to entry of a preliminary and, at the conclusion of these proceedings, a permanent injunction against Defendants and anyone acting in concert with them or at their direction, prohibiting Defendants from making and/or

**COMPLAINT - 32**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1  publishing, whether directly or indirectly, statements about Plaintiffs TATI and JAMES that the

2  Court determines are false.

3  **PRAYER FOR RELIEF**

4      WHEREFORE, Plaintiffs pray for judgment as follows:

5      1.  For judgment against Defendants in a sum to be proven at trial;

6      2.  For recovery of attorneys' fees and costs as authorized by Washington

7          statutes, including RCW 19.86.090, and common law;

8      3.  For preliminary and permanent injunctive relief;

9      4.  For pre- and post-judgment interest in the amount of 12% per annum;

10      5.  For treble damages pursuant to RCW 19.86.090; and

11      6.  For such other and further relief as the Court may deem proper.

12  Dated: October 30, 2020

13                 CARROLL, BIDDLE, & BILANKO, PLLC

14            By:    */s/ Jeffrey E. Bilanko*
               Jeffrey E. Bilanko, WSBA 38829

15

16                 */s/ Susan K. Kapan*
               Susan K. Kaplan, WSBA 40985

17                 Carroll, Biddle, & Bilanko, PLLC
               1000 2nd Avenue, Suite 3100

18                 Seattle, WA 98104
               Phone: (206) 338-1496

19                 Tel.: (206) 338-1518

20                 Email: jbilanko@cbblegal.com
               Email: skaplan@cbblegal.com

21                 Attorneys for Plaintiffs

22                 MICHAEL J. SALTZ
               msaltz@jrsnd.com

23                 *pro hac vice pending*
               ELANA R. LEVINE

24                 lani@jrsnd.com
               *pro hac vice pending*

25                 JACOBSON, RUSSELL, SALTZ, &
               NASSIM & DE LA TORRE LLP

26

**COMPLAINT - 33**

1880 Century Park East, Suite 900
Los Angeles, CA  90067
Telephone:        (310) 446-9900
Facsimile:        (310) 446-9909

**COMPLAINT - 34**

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104