THE HONORABLE THERESA L. FRICKE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TATIANA WESTBROOK, an individual; JAMES WESTBROOK, an individual; HALO BEAUTY PARTNERS, LLC, a Nevada Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>KATIE JOY PAULSON, an individual; WITHOUT A CRYSTAL BALL, LLC, a Minnesota Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>Defendants. | NO. 2:20-cv-01606-TLF<br><br>**DECLARATION OF MICHAEL J. SALTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO PRESERVE EVIDENCE**<br><br>NOTE ON MOTION CALENDAR: DECEMBER 18, 2020 |

I, Michael J. Saltz, hereby state as follows:

1. I am an attorney admitted pro hac vice to appear before the U.S. District Court for the Western District of Washington in the above-captioned matter, and am a partner of Jacobson, Russell, Saltz, & Nassim & De la Torre, LLP, counsel for Plaintiffs Tatiana Westbrook, James Westbrook, and Halo Beauty Partners, LLC in this matter. I am over the age of eighteen and am competent to testify to the facts alleged herein.

**DECLARATION OF MICHAEL J. SALTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO PRESERVE EVIDENCE -1**
(2:20-CV-01606-TLF)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA 98104

2. Within a half hour of the Complaint being filed on Friday, October 30, 2020, I sent a copy of the Complaint and a preservation of evidence notice to Defendant Katie Joy Paulson via email.  The preservation of evidence notice expressly instructed Defendants to preserve published content related to my clients, including without limitation "social media posts; comments on social media posts and videos; and videos, live chats; direct messages; instant messages; e-mails; phone messages; [and] text messages."  The notice further requested that Defendants "preserve as evidence any content related to, or regarding [my clients] in any way that you posted to or published on any internet platform including, but not limited to Instagram, Twitter, and YouTube."  Finally, the notice informed Defendants that their failure to preserve such documents and evidence "may result in evidentiary or other sanctions being imposed against [them]."  Attached as **Exhibit A** is a true and correct copy of the October 30, 2020 email to Defendant Paulson.

3. At 7:23am on Saturday, October 31, 2020, I received an email from Defendant Paulson's Minnesota attorney referencing this lawsuit and requesting that all further communications be directed to him.  Attached as **Exhibit B** is a true and correct copy of the email received on October 31, 2020.

4. Defendants, after receiving the evidence preservation notice and Complaint, began deleting their videos and other online content related to my clients, including specific content referenced in the Complaint, from various online platforms, such as YouTube, Facebook, and Twitter.  Attached as **Exhibit C** are examples and evidence of Defendants' deletions that I personally acquired between October 30 and the date of the execution of this declaration.

5. These mass deletions began immediately after I sent the preservation of evidence notice and Complaint to Defendant Paulson on October 30, 2020.  This conduct has continued as of the date of filing this declaration.

**DECLARATION OF MICHAEL J. SALTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO PRESERVE EVIDENCE -2**
(2:20-CV-01606-TLF)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

6. In fact, my office was in the process of documenting tweets on Defendant Without A Crystal Ball's Twitter page and witnessed the disappearance of tweets related to my clients. In addition to actually witnessing some of these deletions, we also observed tweets by others calling attention to Defendants' sudden deletions of content on their various social media platforms.

7. Then at some point over the Halloween weekend, Defendant Without A Crystal Ball's entire Twitter account was deactivated. By November 2, 2020, the Twitter account had been reactivated; however, at least 37 tweets had been deleted. Similarly, by November 2, 2020, Defendant Paulson had deleted every tweet prior to September 13, 2019 on her personal Twitter account, @Katiejoyyt, which has been active since 2015.

8. Once tweets are deleted, they are permanently lost, along with any analytic data or other information that could be gleaned from such online postings, including the number of people who saw the tweets, how many people spread it through re-tweets, and the identity of the people who published potentially defamatory information.

9. Likewise, Defendants also deleted Facebook posts and comments and YouTube videos after receiving the evidence preservation notice and Complaint.

10. Like Twitter, once Facebook posts or comments are deleted, they cannot be recovered, and any analytic data or other information that could be gleaned from such comments and postings is forever lost.

11. Similarly, the deletion of YouTube videos permanently removes all chats, comments, and other information related to the videos, including the number of views and Defendants' own comments containing additional defamatory statements. Such information cannot be recovered even if the video itself is recovered.

12. I have personal experience with the way YouTube channels work. My personal experience derives from the fact that I currently represent multiple YouTube channels, including

DECLARATION OF MICHAEL J.
SALTZ IN SUPPORT OF PLAINTIFFS'
MOTION FOR AN ORDER TO
PRESERVE EVIDENCE -3
(2:20-CV-01606-TLF)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

a YouTube channel that, in 2019, was the largest and most successful YouTube content provider in the world, and my representation involves issues with regard to the management of the analytics related to my clients' pages. I also have personal experience managing the technical aspects of a YouTube page for a family member and have personally interacted with YouTube with regard to deleting and privatizing videos that have been uploaded to YouTube for a specific page and channel.

13. When a video is uploaded to a channel on the YouTube platform, YouTube immediately starts to collect data on users' interactions with that video. Some interactions occur by way of allowing users to leave comments on the video page. Other interactions, such as views and activity related to views, are also tracked. This tracking is called analytics. The analytics for each video uploaded to a YouTube channel are unique to that particular video and include the number of views, the number of times viewers remained viewing a video, the geographic location of certain viewers, and how viewers accessed said video. For a monetized channel, the analytics also will include revenue information with regard to how much money a particular video has generated for the channel owner.

14. Once a video is uploaded to a channel on the YouTube platform, the channel owner can make the video public or private, or can delete it. YouTube will maintain all comments and analytics for all uploaded videos to a channel regardless of whether they are public or private. However, once a video is deleted from the YouTube platform, all such comments and analytics are destroyed and permanently lost for that particular video.

15. I also have a personal Twitter page and am familiar with the workings of Twitter as a result of my managing the same and as a result of litigating cases involving Twitter and efforts to retrieve deleted information in other litigation matters.

16. Twitter allows an account holder to post tweets (i.e. "statements") on their own Twitter page and on the pages of other users—which tweets also will be accessible through that

DECLARATION OF MICHAEL J. SALTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO PRESERVE EVIDENCE -4
(2:20-CV-01606-TLF)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1  particular account holder's own page.  Like YouTube, Twitter maintains analytics on every tweet that a user posts.  These analytics track "impressions"—meaning the amount of users that have interacted with the posted tweet.  The analytics also includes data such as: how many times users engaged with a particular tweet by pressing on it or the picture of the tweet's author to obtain more information about the author and his/her/its Twitter page; the number of "likes" users placed on a particular post; and the number of times a post has been "re-tweeted" (i.e., re-posted) by other users—including the identity of the users who re-tweeted said post.

17. Once a post or "tweet" is deleted, all of the analytics for that "tweet" are destroyed and cannot be subsequently retrieved.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

SIGNED at Los Angeles, California, on November 4, 2020.

/s/ *Michael J. Saltz*
Michael J. Saltz

**DECLARATION OF MICHAEL J. SALTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO PRESERVE EVIDENCE -5**
(2:20-CV-01606-TLF)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104