THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TATIANA WESTBROOK, an individual;
JAMES WESTBROOK, an individual; HALO
BEAUTY PARTNERS, LLC, a Nevada Limited
Liability Company,

                    Plaintiffs,

    v.

KATIE JOY PAULSON, an individual;
WITHOUT A CRYSTAL BALL, LLC, a
Minnesota Limited Liability Company; and
DOES 1 through 100, inclusive,

                    Defendants.

NO. 2:20-cv-01606-BJR

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-0**
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

1

## I.   INTRODUCTION & RELIEF REQUESTED

Over the past 19 months, Defendants Katie Joy Paulson ("Paulson") and Without a Crystal Ball, LLC ("WOACB") have engaged in a course of conduct specifically aimed at harassing Plaintiffs Tatiana Westbrook ("Tati"), James Westbrook ("James"), and Halo Beauty Partners, LLC ("Halo") through Defendants' social media communications, including publishing defamatory statements about Plaintiffs in at least 80 YouTube and Instagram videos and in more than a hundred postings on Twitter and other locations on the internet. This case arises out of these widespread incidences of defamation and the ongoing campaign of harassment Defendants have waged against Plaintiffs.

Defendants filed a Motion to Dismiss the Complaint, asserting jurisdictional, failure to join a necessary party, and failure to state a claim arguments[1] as their bases for dismissal. In the Motion, Defendants attempt to distract the Court from the defects in their arguments by relying on inadmissible evidence and extensively reciting wholly irrelevant facts. In addition, Defendants rely upon the misleading declarations of Paulson[2] and her attorney Michael P. Brown to support Defendants' jurisdictional arguments as well as obsolete, inapplicable federal case law and California state law to support their jurisdictional and failure to state a claim arguments. Finally, Defendants fail to acknowledge that their deletion of evidence, particularly YouTube videos, destroyed evidence relevant to their jurisdictional objections.[3]

The Court should deny the Motion to Dismiss because: 1) Defendants have sufficient minimum contacts with the forum through their research; published of defamatory statements in the forum; and targeted known residents of the state of Washington; 2) the Court has subject matter jurisdiction over all of Plaintiffs' claims through diversity jurisdiction, which is not destroyed by the inclusion of Doe defendants; 3) there is no required joinder of parties under

---

[1] As Defendants failed to cite 12(b) at any point in their motion, Plaintiffs assume that the procedural basis for Defendants' objections to the Complaint are made pursuant to 12(b)(1), 12(b)(2), 12(b)(6), and 12(b)(7).
[2] Also referred to as Katherine Paulson, and Kathryn Manske Paulson in the Motion to Dismiss and supporting declaration.  *See* Defs.' Mot. to Dismiss, Dkt. no. 17, at 2, 7, 25; Paulson Decl., Dkt. no. 19.
[3] Pls.' Mot. to Preserve, Dkt. no. 8; Saltz Decl., Dkt. no. 9, Ex. C.

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**-1
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

1   Rule 19; and 4) Plaintiffs' Complaint satisfies the requirements of Rule 8(a)(2) and states claims

2   for relief that are plausible on the face of the Complaint.

## II.    STATEMENT OF RELEVANT FACTS

### A. DEFENDANTS KATIE JOY PAULSON'S & WITHOUT A CRYSTAL BALL'S CONTENT ABOUT PLAINTIFFS DEMONSTRATE FORUM CONTACTS.

Defendants "Paulson" and WOACB announced their campaign of harassment against Tati and their plan to dig into her background and "expose" her in a video uploaded to YouTube on or about May 31, 2019.[4] In that video, Defendants state that they were "digging" into Tati's "background and…looked all over the place…everywhere everywhere [sic]."[5] Defendants also reference civil judgments and tax liens that they found.[6]  Defendants then go on to indicate that they conducted more in-depth searches than a simple background check.[7] Defendants also state that people "can actually go state to state and try to pull stuff up" and that people can go "to the different databases within each of the states" to find information, which Defendants admit is what they did to get personal information regarding Tati and her family.[8] Defendants also assert that Tati's "address is online too" but Defendants were "not going to provide that."[9] Defendants further state that they continued "digging through more and more information, going through marriage records and birth certificate[s]"—specifically asserting it was weird that they could not find Tati's birth certificate.[10] Tati was born in Washington.[11] Defendants then go on to discuss the extensive public records and social media pages they searched regarding Tati's parents (Washington residents) and her two sisters (one is a Washington resident), lamenting about how they could not find information regarding Tati's father, which led Defendants to theorize that Tati's father is either dead or in the "mafia."[12]

---

[4] T. Westbrook Decl. ¶ 11.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* ¶ 2, 6.
[12] *Id.*

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-2
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

Subsequently, in a video entitled "The Past James & Tati Westbrook Dont want you to Know" uploaded to YouTube on or about June 2, 2019, Defendants continue their campaign of harassment and planned exposé on Tati and her family.[13] In that video, Defendants discuss the research they have done into Tati's childhood and family in Washington.[14] Defendants also specifically talk about Tati's two sisters and mother, who are private Washington citizens.[15] They further examine Tati's personal history in Washington and connections to Washington.[16] Defendants also assert that they have documentation for all the information in this video, including court records from "Washington State" that they found through "three weeks of non-stop research…to find all of this information."[17] Defendants even show a public document confirming that Tati's and James' residence was in Washington at the time of the video.[18] In the document, Defendants expressly redacted the house number, street, and city of Tati's and James' Washington address, but left the state designation, which was "WA."[19] In the video, Defendants claim "[they] don't want to put [Tati's and James'] addresses out; [they] don't want to show [their viewers] like where [Tati and James] live."[20] At the end of the video, Defendants thank their viewers "for sticking with [them] in [their] two-part exposé and if [they] uncover more information,…they will deliver it [to the viewers]."[21]

More recently, in a video uploaded to YouTube on or about September 22, 2020, Defendants admit that Tati and James moved back to Seattle "actually a while ago."[22] Defendants reference Tati's and James' purchase of a house in Los Angeles—however, during the entire time they owned that Los Angeles home, neither Tati nor James lived in Los Angeles or even spent a single night in said Los Angeles house.[23] Since May 2019, Defendants have

---

[13] Decl. J. Westbrook, ¶ 18.
[14] *Id.*
[15] Decl. T. Westbrook, ¶¶ 6, 12.
[16] *Id.* at ¶ 12; Decl. J. Westbrook, ¶ 18.
[17] *Id.*
[18] Decl. J. Westbrook, ¶ 18.
[19] Decl. J. Westbrook, ¶ 18; Decl. T. Westbrook, ¶ 12.
[20] *Id.*
[21] *Id.* at ¶ 12.
[22] Decl. J. Westbrook, ¶ 19.
[23] *Id.*

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-3
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA 9810

published approximately 80 videos as well over 100 internet postings on Twitter and other social media maligning Tati, James, and Halo.[24]

## B. DEFENDANTS' WASHINGTON VIEWERSHIP & PLAINTIFF'S HARM IN THE FORUM.

Defendants' viewership includes residents of Washington,[25] and contrary to the misleading statements in Paulson's declaration, Defendants know their content is published to viewers in Washington.[26] During multiple live stream videos in August and September 2020—three to four months before the filing of Paulson's declaration—Washington residents expressly identified their Washington locations to Defendants in the live stream chat.[27] *Id.* In addition, in a live stream video dated August 30, 2020, Defendants specifically interrupted the live stream to acknowledge and say said hello to "Patricia" "from the state of Washington."[28]

Moreover, Defendants' publication of their harassing and defamatory content about Tati, her family, and her business to Washington viewers caused such viewers to stop supporting Tati.[29]   One of the reasons Washington viewers watched Tati was because she was from Washington.[30]   They stopped ordering Tati's Halo products, they stopped watching Tati's monetized YouTube channel, and they stopped following Tati's social media, which damaged Tati's, James,' and Halo's business interests.[31] In addition, Defendants' Tati-related content caused Washington residents to think less of, and develop negative feelings toward, Tati, James, and Halo.[32]

---

[24] J. Westbrook Decl. ¶ 15.
[25] J. Westbrook Decl. ¶ 9; Walker Decl. ¶¶ 5–7 (testifying that she is a Washington resident and viewed Defendants' social media content about Tati, James, and Halo, including YouTube and Twitter, beginning in May 2019); Fulmer Decl. ¶ 11 (showing Defendants proclaim follower/fan Lori Ann Barnhart (@Bloodtall)—whose online information indicates she is a Washington resident (see ¶ 10)—as one of their "fiercest and loyalist" fans), ¶ 12 (showing Defendants' defending Lori Ann on Twitter), and ¶ 14 (showing a screenshot of Defendants' computer screen containing Defendants' Twitter direct messaging list, which appears to include Lori Ann's direct messaging information).
[26] J. Westbrook Decl. ¶ 9.
[27] *Id.*
[28] *Id.*
[29] *See* Walker Decl. ¶¶ 3–10; Storme Decl. ¶¶ 3–7.
[30] *See* Storme Decl. ¶ 4.
[31] *See* Walker Decl. ¶¶ 8–9; Storme Decl. ¶¶ 5–6.
[32] *See* Walker Decl. ¶¶ 8–10; Storme Decl. ¶¶ 5–7.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS-4** (2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC** 1000 2nd Avenue, Suite 3100 Seattle, WA  9810

## C.  TATI'S AND JAMES' WASHINGTON RESIDENCE

Tati and James moved back to Washington from California in late 2018, signing an 18-month lease agreement for their current residence, with the lease term beginning December 1, 2018; the lease term then was extended to March 31, 2021.[33] In fact, Tati's Instagram account, @GlamLifeGuru has a picture of Tati in their current residence, which was posted on February 18, 2019.[34] Tati and James paid taxes in Washington for the 2019 tax year and will pay taxes in Washington for the 2020 tax year.[35] They own investment property in Washington, and their personal bank accounts are located in Washington.[36] Additionally, Tati and James have three businesses incorporated in Washington—Tati, Inc., Tati Halo, Inc. and Tati Cosmetics Inc.[37] The Washington citizenship of these companies are publicly available, and easily found in, Washington Secretary of State's online database.[38] All three corporations also have business bank accounts in Washington.[39] Tati and James do not own any property in California.[40] Tati is the Chief Executive Officer of Halo and manages nearly all of Halo's business in Washington through her Washington corporation, Tati Halo.[41] Likewise, James is the Chief Operating Office of Halo.[42]

Tati has over 9 million subscribers on YouTube, approximately 2.5 million followers on Instagram, and approximately 1.3 million followers on Twitter.[43] She does not manage her social media accounts on her own, and many of her social media posts are created by others, including her social media assistant.[44] Moreover, because Tati is a highly recognizable figure, for her own

---

[33] T. Westbrook Decl. ¶ 7; J. Westbrook Decl. ¶ 3, Ex. 1.
[34] T. Westbrook Decl. ¶ 9.
[35] *Id.* at ¶ 8; J. Westbrook Decl. ¶ 4.
[36] T. Westbrook Decl. ¶ 2; J. Westbrook Decl. ¶ 2.
[37] T. Westbrook Decl. ¶ 2; J. Westbrook Decl. ¶ 2.
[38] J. Westbrook Decl. ¶ 2.
[39] T. Westbrook Decl. ¶ 2; J. Westbrook Decl. ¶ 2.
[40] T. Westbrook Decl. ¶ 2; J. Westbrook Decl. ¶ 2
[41] T. Westbrook Decl. ¶ 3.
[42] J. Westbrook Decl. ¶ 5.
[43] T. Westbrook Decl. ¶ 4.
[44] *Id.*

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-5
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

personal safety, she often will post at random times when she is not in the referenced location so the public does not know exactly where she is at a particular time.[45]

### III.   EVIDENCE RELIED UPON

Plaintiffs rely upon the record herein and the declarations of James Westbrook, Tatiana Westbrook, Kim Fulmer, Hope Walker, and Macy Storme, and exhibits attached thereto.

### IV.   ARGUMENT & AUTHORITY

**A. THIS COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS CLAIMS UNDER 12(b)(1) BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION.**

Despite the fact that the Court has original subject matter jurisdiction over this entire civil action—consisting solely of Washington civil state law claims—on the basis of diversity under 28 USC § 1332, Defendants erroneously argue that this Court somehow lacks subject matter jurisdiction over the civil harassment claim. Defendants further erroneously assert that this Court lacks subject matter jurisdiction over this action due to the inclusion of Doe defendants.

1. The Court should deny Defendants' 12(b)(1) Motion because this Court has subject matter jurisdiction over Plaintiffs' Civil Harassment Claim.

Before making any ruling in a case, every court, even the Supreme Court, must determine independently that it has subject matter jurisdiction over an action, even when no party has challenged subject matter jurisdiction.[46] Defendants' arguments ignore the fact that both the Western District of Washington and the Ninth Circuit previously have determined that federal courts have subject matter jurisdiction over a civil harassment claim brought under RCW 10.14 by ruling on, and affirming, such a claim.[47] In fact, the Western District of Washington expressly rejected the argument that subject matter jurisdiction did not exist in such an action.[48] Because

---

[45] *Id.* at ¶ 5.
[46] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) ("[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").
[47] *See Ferguson v. Waid*, 798 Fed. Appx. 986, 989 (9th Cir. 2020) ("As to the remaining sections of the [civil harassment] injunction, we affirm."
[48] *Ferguson v. Waid*, C17-1685 RSM, 2018 WL 5734662, at *1 (W.D. Wash. Nov. 2, 2018) ("Ms. Ferguson brings no new facts to the Court's attention that would cause the Court to suddenly realize it lacked subject matter jurisdiction after it previously ruled [denying summary judgment]. . . . "The Court has supplemental jurisdiction over this related state law claim under [28 USC § 1367].")

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS-6** (2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC** 1000 2nd Avenue, Suite 3100 Seattle, WA 9810

1    the Washington state superior court has original subject matter jurisdiction over civil harassment

2    claims,[49] the federal court is not precluded from also exercising subject matter jurisdiction—just

3    like for any other state civil statutory claim in which the relevant statute directs plaintiffs to file

4    in superior court.[50] Moreover, even if this Court did not have original subject matter jurisdiction

5    over the civil harassment claim under 28 USC § 1332, the court would have supplemental

6    subject matter jurisdiction under 28 USC § 1367 because the defamation claim and the civil

7    harassment claim "are so related…that they form part of the same case or controversy under

8    Article III of the U.S. Constitution.[51]

9            Unlike *Ferguson v. Waid*,[52] in which the federal trial court and Ninth Circuit considered a

10   civil harassment claim brought under RCW 10.14, the cases relied upon by Defendants are

11   inapposite. In *Cariega v. City of Reno*, the court was analyzing a Nevada public records request

12   statute, not Washington's civil harassment statute, and it determined that it could not exercise

13   supplemental jurisdiction because the plaintiff had not brought a claim for relief based on a

14   violation of the statute.[53] In *Barberio v. City of Burien*, the court already had determined it did

15   not have subject matter jurisdiction over the party's state law claims and dismissed the action.[54]

16   In an effort to create subject matter jurisdiction through a federal question, the plaintiff filed an

17   amended complaint alleging a federal claim of civil harassment. Finding that there is no such

18   claim under federal law, the court dismissed the complaint, noting that due to lack of diversity, it

19

20

---

21   [49] *McIntosh v. Nafziger*, 69 Wash. App. 906, 910–12, 851 P.2d 713 (1993) (finding that superior courts have original jurisdiction over civil harassment claims under RCW 10.14).
     [50] *See, e.g.*, Washington Consumer Protection Act, RCW 19.86.090 ("Any person who is injured in his or her

22   business or property by a violation . . . may bring a civil action in superior court to enjoin further violations.").
     [51] *See* 28 USC § 1367 ("[In] any civil action of which the district courts have original jurisdiction, the district courts

23   shall have supplemental jurisdiction over <u>all other claims</u> that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the

24   United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." (emphasis added)).
     [52] *Ferguson*, 2018 WL 5734662, at *1; *Ferguson*, 798 Fed. Appx. at 989.

25   [53] *Cariega v. City of Reno*, 316CV00562MMDWGC, 2017 WL 3299030, at *2 (D. Nev. Aug. 2, 2017) "(Plaintiffs'

26   Third Amended Complaint contains no "claim" (i.e., claims for relief) that is predicated upon a violation of Chapter 239 of the Nevada Revised Statutes.")
     [54] *Barberio v. City of Burien*, C05-1569P, 2006 WL 2237704, at *3 (W.D. Wash. Aug. 3, 2006).

**PLAINTIFFS' OPPOSITION TO**           **CARROLL, BIDDLE, & BILANKO, PLLC**
**DEFENDANTS' MOTION TO DISMISS-7**      1000 2nd Avenue, Suite 3100
(2:20-CV-01606-BJR)                      Seattle, WA 9810

could not consider state law claims.[55] The court's ruling did not find that a plaintiff could not bring a civil harassment claim under Washington state law in federal court in a diversity case.[56]

Likewise, Defendants' repeated assertion that RCW 10.14 is a criminal procedure statue cannot turn this civil claim into a criminal one.[57] In fact, Washington expressly distinguishes between civil harassment claims under RCW 10.14 and criminal claims under RCW 9A.46. This Court has original subject matter jurisdiction over this action because the jurisdictional requirements of diversity and amount in controversy are pled sufficiently. Defendants 12(b)(1) motion to dismiss the civil harassment claim should therefore be denied.

   2.   The Court should deny Defendants' 12(b)(1) Motion because the inclusion of Doe defendants does not automatically destroy diversity.

Generally, courts in the Ninth Circuit hold that Doe defendants raise jurisdictional questions only when the actual parties are substituted.[58] Defendants' reliance on *Garter-Bare*[59] is misplaced. More recent Ninth Circuit decisions have called into question the rule announced in *Garter-Bare* based on the subsequent Ninth Circuit decision in *Lindley v. Gen. Elec. Co.*[60]

## B. THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS UNDER 12(b)(2) BECAUSE IT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANTS FOR ALL OF PLAINTIFFS' CLAIMS.

Jurisdiction over Defendants is proper in Washington based on the "effects" of their Minnesota conduct in Washington.[61] Where, as here, the motion to dismiss "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing

---

[55] *Barberio*, 2006 WL 2237704, at *5, n. 4.
[56] *Id.*
[57] *See, e.g.*, RCW 10.04.010 (referencing "civil antiharassment protection orders"); RCW 10.14.140 (indicating that the relief provided by RCW 10.14 is a civil remedy)
[58] *See Gardiner Family, LLC v. Crimson Res. Mgmt. Corp.*, 147 F. Supp. 3d 1029, 1035 (E.D. Cal. 2015); *Fat T, Inc. v. Aloha Tower Associates Piers 7, 8, & 9*, 172 F.R.D. 411, 415 (D. Haw. 1996); *Constr. Mgmt. & Dev.-Nevada, LLC v. Liberty Club Resorts, LLC*, SACV1900628JVSKESX, 2019 WL 4149437, at *3 (C.D. Cal. June 24, 2019).
[59] *Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 981 (9th Cir. 1980)
[60] *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 799 (9th Cir. 1986); *see, e.g., Gardiner Family, LLC.*, 147 F. Supp. 3d at 1035.
[61] *See Walden v. Fiore*, 571 U.S. 277, 287, 134 S. Ct. 1115, 188 L.Ed.2d 12 (2014) ("Jurisdiction over the defendants was therefore proper in California based on the "effects" of their Florida conduct in California." (internal quotations omitted) (analyzing and quoting *Calder v. Jones*, 465 U.S. 783, 789, 104 S. Ct. 1482, 79 L.Ed.2d 804)).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS-8**
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

of jurisdictional facts to withstand the motion to dismiss."[62] To satisfy this prima facie standard, a plaintiff only has to "demonstrate facts that if true would support jurisdiction over the defendant."[63] Uncontroverted allegations in the complaint must be taken as true, and factual disputes raised by affidavits "must be resolved in the plaintiff's favor."[64]

The Ninth Circuit applies a three-factor "minimum contacts" test to determine if the exercise of personal jurisdiction is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.[65]

For the first prong of the test, when a claim sounds in tort—like the claims in this case— the Ninth Circuit generally employs the purposeful direction framework from *Calder v. Jones*,[66] also known as the "effects" test: (1) commission of an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."[67] Notably, the Ninth Circuit expressly has rejected the "brunt of the harm" requirement relied upon by Defendants in their Motion to Dismiss.[68] In addition, where the claims all arise from the same "common nucleus of operative facts" and personal jurisdiction is established as to

---

[62] *Washington Fed. Bank v. Garold*, C19-995RSM, 2020 WL 60256, at *1 (W.D. Wash. Jan. 6, 2020) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)).
[63] *Fortress Secure Sols., LLC v. AlarmSIM, LLC*, 4:17-CV-5058-TOR, 2017 WL 11495260, at *3 (E.D. Wash. Nov. 29, 2017) (quoting *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003)).
[64] *Washington Fed. Bank*, 2020 WL 60256, at *1.
[65] *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018)  ("[T]he 'effects' test appears unnecessary where, as here, part of the alleged tort occurred in [the forum].").
[66] *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804.
[67] *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017); *see also Calder*, 465 U.S. at 791 (finding that that a defendant can be subject to personal jurisdiction based on "intentional conduct [outside the forum] calculated to cause injury to [a plaintiff] in [the forum.]").
[68] *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) ("We take this opportunity to clarify our law and to state that the "brunt" of the harm need not be suffered in the forum state. If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state.").

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS-9** (2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

at least one claim, courts generally will exercise pendent personal jurisdiction for the remaining claims.[69]

Here, Defendants had sufficient contacts with Washington to confer personal jurisdiction over them as to all claims in this case because contrary to Paulson's sworn statements:

1) Defendants searched through and relied upon Washington sources for their harassing and defamatory "stories" about Plaintiffs;

2) In those "stories," Defendants discussed Plaintiffs' significant Washington connections;

3) Defendants knew or should have known that such "stories" had a viewership in Washington; and

4) Defendants published the defamatory statements in Washington, deriving income from such publications, which they knew would cause injury to all Plaintiffs in Washington.

1. <u>The Court should deny Defendants' 12(b)(2) Motion because Defendants' contacts with the forum are sufficient to satisfy the minimum contacts test as to all claims.</u>

Defendants only argue that the first prong of the minimum contacts test—purposeful direction under the *Calder* effects test—is not satisfied.[70] Defendants do not address either the second or third prong of the minimum contacts test. Defendants also do not contest that the first prong of the *Calder* effects test—an intentional act—is satisfied in this case. Defendants' primary argument against personal jurisdiction is that Defendants did not engage in any conduct that connected Defendants to Washington—i.e. the express aiming prong of the effects test was not met.[71]  Defendants' secondary argument is that the "brunt of the harm" was not incurred by Plaintiffs in Washington.[72] Defendants' final argument is that Halo's Nevada citizenship

---

[69] *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *Russell v. Samec*, 2:20-cv-0026-3RSM-JRC, 2020 WL 7048403, at *6 (W.D. Wash. Oct. 8, 2020).
[70] Defs. Mot. to Dismiss, Dkt. no. 17, at 10–17.
[71] *Id.* at 10–13.
[72] *Id.* at 13–14.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**-10 (2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

automatically precludes jurisdiction over Defendants as to Halo's claims.[73] Defendants also assert that Tati's and James' allegations of domicile in the Complaint are contradicted by their public statements but Defendants fail to demonstrate how Plaintiffs' domicile is relevant to the inquiry of whether personal jurisdiction exists over Defendants.[74]

Defendants' arguments against this Court's exercise of jurisdiction fail for several reasons, not the least of which is because they rely upon Paulson's misleading declaration as well as evidence submitted by Defendants' attorney about which he lacks personal knowledge. In addition, Defendants' arguments and reliance on non-defamation cases ignore the findings and analysis in *Calder* and *Keeton*, the Supreme Court's two seminal cases on personal jurisdiction in defamation cases, which were decided on the same day and which remain good law.[75]

In *Calder*, the plaintiff's claims against the defendant writer and editor were based on an article appearing in one issue of a weekly newspaper with national circulation. The article was written and edited in Florida by the defendants, discussed the California activities of a California resident, whose work activities were based in California, and impugned the professional reputation of that resident by alleging that she "drank so heavily as to prevent her from fulfilling her professional obligations." Although in writing and editing the article, both defendants relied upon California sources, only the writer actually contacted the California sources. The Supreme Court determined that this forum-related conduct of both the writer and editor of the defamatory story constituted "express" aiming at the forum by each defendant and satisfied the minimum contacts due process requirement. In *Walden*, the Supreme Court reiterated that, in *Calder*, the special nature of the tort of defamation itself together with the injury to the plaintiff's reputation in California as a result of the defamatory article being published in California "connected the defendants' conduct to *California*, not just to the plaintiff who lived there."[76] That connection

---

[73] *Id.* at 10.
[74] *Id.* at 14–17.
[75] *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984); *Calder*, 465 U.S. 783; *Walden*, 571 U.S. at 285–88.
[76] *Walden*, 571 U.S. at 287–88 ("The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-11
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

plus the defamatory article's reliance on California sources and references to the California activities of the plaintiff were "sufficient to authorize the California court's exercise of jurisdiction."[77]

In *Keeton*, the Supreme Court found that, while a plaintiff's residence in the forum state is relevant to the jurisdictional inquiry, "[t]here is no justification for restricting libel actions to the plaintiff's home forum" and lack of residence in the forum will not defeat jurisdiction.[78] The *Keeton* Court expressly noted that, in reaching its holding, it did not rely on the very minimal contact the plaintiff had to the forum.[79] The Supreme Court's analysis regarding the nature of a defamation tort and the harm incurred is instructive:

> The tort of libel is generally held to occur wherever the offending material is circulated. The reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous. The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished.[80]

Unlike in *Calder*, where the defendants were not the owners of the newspaper and did not have an economic interest in the publication or circulation of the newspaper, in this case, the defendant was the magazine itself and it profited from the circulation in the forum state.[81] The Supreme Court found that even though only a small portion of the total number of defamatory issues were circulated in the forum, the repeated circulation of the magazine in the forum was sufficient to establish personal jurisdiction over the defendant magazine.[82]

Similar to the actions of the writer and editor in *Calder*, here, Defendants' conduct meets the express aiming requirement of the effects test because they searched through, and relied

---

function of the nature of the libel tort."); *see also Keeton*, 465 U.S. at 776 ("False statements of fact harm both the subject of the falsehood *and* the readers of the statement." (emphasis in original)).
[77] *Walden*, 571 U.S. at 288.
[78] *Keeton*, 465 U.S. at 780–81.
[79] *Keeton*, 465 U.S. at 777, n. 5 ("We do not, therefore, rely for our holding on the fact that petitioner's name appears in fine print in several places in a magazine circulating in New Hampshire.").
[80] *Id.*
[81] *Id.* at 779–80.
[82] *Id.* at 774–75.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-12
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

upon, Washington sources as part of their "research" for their purported "exposé" on Plaintiffs.[83] Additionally, like the defamatory article in *Calder*, the defamatory content in this matter discussed and referenced the Washington activities and connections of Plaintiffs, which would particularly appeal to Washington viewers.[84] In May 2019, Defendants first announced their intention "to expose" Tati and harm her reputation and Halo's business interests.[85] Prior to and after this announcement of their intent to harm Tati, Defendants thoroughly investigated[86] Tati and her immediate family in Washington—including her husband, James.[87]

From the beginning, Defendants repeatedly claimed to know everything there was to know about Plaintiffs and their businesses because they had researched everything and everywhere, including Tati's and James' birth certificates, financial records, and business records, as well as Tati's entire Washington-based family.[88] In fact, in the same May 2019 video referenced above, Defendants flippantly questioned whether Tati's father was in the mafia because they could not find any employment records for him anywhere despite searching every Washington-based database available to Defendants.[89] From the very first defamatory and harassing publications about Plaintiffs, Defendants spoke about how Tati grew up in Washington and that she is a just a failed actress from Washington.[90] The idea that Defendants completely circumvented Washington sources in their research of Tati, her husband and other family members, and her businesses is wholly implausible, especially since Defendants' own statements in May and June 2019 directly contradict that sentiment.

Likewise, Defendants' assertion that they did not know Tati and James were living in Washington before December 2019 is patently false. In the June 2, 2019 video entitled "The

---

[83] *See* T. Westbrook Decl. ¶¶ 11 – 12; J. Westbrook Decl. ¶ 19.
[84] *See id.*
[85] *See* T. Westbrook Decl. ¶ 11.
[86] For the past 19 months, up to the night this lawsuit was filed and even after, Defendants continued to investigate and follow Tati's, James,' and Halo's activities, and Defendants continued to publish defamatory material about Plaintiffs—in many cases, republishing prior defamatory content on all of their social media platforms. *See, e.g.*, T. Westbrook Decl. ¶¶ 10 – 12; J. Westbrook Decl. ¶¶ 15–19.
[87] T. Westbrook Decl. ¶¶ 2, 6, 10–12; J. Westbrook Decl. ¶¶ 2, 15–19.
[88] *See* T. Westbrook Decl. ¶¶ 10 – 12.
[89] *See id.* at ¶ 11.
[90] *See id.* at ¶¶ 11 – 14; J. Westbrook Decl. ¶ 13f.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-13
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

Background Tati and James Dont [sic] want you to Know," Defendants indicated that they knew Tati's and James' current address but were not going to reveal it in the video.[91] They then showed a copy of Halo's business information from Nevada's Secretary of State records, which listed Tati and James as officers of the company and showed their address in Washington.[92] Even more revealing is the fact that Defendants expressly redacted the street and city portion of Tati's and James' Washington address before showing it to their viewers—meaning that Defendants had a personal and physical interaction with said address and cannot claim to not have seen it.[93] In addition, Nevada's Secretary of State records also show that another business of Tati's and James,' Tati Halo, Inc., was a managing member of Halo and had a Washington address that was different from Tati's and James' Washington address.[94] Tati Halo is one of three Washington corporations owned by Tati and James. All three were incorporated in Washington, and their business information was publicly available on Washington's Secretary of State website in late 2018 and early 2019, prior to Defendants' investigation into Plaintiffs in May and June 2019.[95] At the time of their first defamatory and harassing publications, Defendants knew that all three Plaintiffs' had significant Washington connections and business activities. Given Defendants' goal of learning everything there was to know about Tati in a concerted effort to harm her, it is impossible that, by the June 2, 2019 video, Defendants did not know about Tati's and James' Washington business activities or Halo's connection to Washington through Tati, James, and Tati Halo.

Moreover, Defendants expressly aimed their conduct at the Washington forum because, like the defendant in *Keeton*, Defendants circulated their defamatory content to viewers in Washington and derived income through all views of that content in Washington.[96] Defendants

---

[91] J. Westbrook Decl. ¶ 19.
[92] *Id.*
[93] *See id.*
[94] J. Westbrook Decl. ¶ 3.
[95] *Id.*
[96] *See* Storme Decl. ¶¶ 5–7; Walker Decl. ¶¶ 5–10; J. Westbrook Decl. ¶¶ 5–14 (detailing how YouTubers derive income from views of their content).

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-14
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

even asked their followers, subscribers, and viewers—some of whom they knew were located in Washington—to donate money for the cost of the research and obtaining the records to "expose" Plaintiffs.[97] Despite Paulson's assertions in her misleading declaration, Defendants know that their defamatory materials have a circulation in Washington because the analytics for Defendants' YouTube videos easily provides this information directly to Defendants.[98]

Likewise, Defendants' arguments regarding "brunt of the harm" also fail. First, the Ninth Circuit, relying on *Keeton*, expressly has rejected any requirement that the brunt of harm from defamation be felt in the forum.[99] Second, as both the *Keeton* and *Walden* Courts noted, due to the nature of the defamation tort itself, a party is harmed wherever the defamatory material is published to a third person, regardless of the party's residency.[100] The evidence before the Court demonstrates that Defendants' defamatory content was published to, and viewed by, Washington residents. The evidence also demonstrates that Halo's reputation was injured in the view of the Washington community and Halo lost Washington customers due to Defendants' defamatory statements. Likewise, the evidence shows that Tati's and James' reputations in Washington were harmed by Defendants' defamatory content and that Tati and James both experienced emotional distress in Washington as a result of the defamation.

Furthermore, contrary to Defendants' arguments, Halo's Nevada residency does not preclude the Court from exercising personal jurisdiction over Defendants as to Halo's claims. Courts consider a plaintiff's residence in the forum as a factor supporting jurisdiction but neither domicile nor residence is a requirement; this is especially true in defamation cases, where a plaintiff is harmed wherever the defamatory statements are published.[101] Like the non-resident plaintiff in *Keeton*, Halo's Nevada location is immaterial to the jurisdictional inquiry because Defendants' own forum-related conduct satisfies the minimum contacts requirements. Similarly,

---

[97] J. Westbrook Decl. ¶ 21.
[98] J. Westbrook Decl. ¶ 9.
[99] *Yahoo! Inc.*, 433 F.3d at 1207.
[100] *See Walden*, 571 U.S. at 287–88; *Keeton*, 465 U.S. at 777 ("The tort of libel is generally held to occur wherever the offending material is circulated.").
[101] *See Keeton*, 465 U.S. at 780–81.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS-15** (2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

Tati's and James' domicile[102] cannot preclude the exercise of personal jurisdiction over Defendants.

Defendants' contacts with Washington satisfy all three prongs of the *Calder* effects test, thereby satisfying the purposeful direction prong of the minimum contacts test. In addition, the second prong of minimum contacts test also is met because there can be no dispute that Plaintiffs' claims arise out of Defendants' contacts with the forum. Because the first two prongs are established, Defendants bear the burden of "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable," which Defendants failed to do in their moving brief.[103] For the foregoing reasons, the Court should deny Defendants' 12(b)(2) Motion to Dismiss.

### C. THE COURT SHOULD DENY DEFENDANTS 12(b)(6) MOTION BECAUSE THE COMPLAINT SATISFIES THE RULE 8(a) REQUIREMENTS.

In considering 12(b)(6) motions, courts must assume all well-pleaded, non-conclusory factual allegations contained in the complaint are true, and courts will determine whether such facts plausibly give rise to an entitlement to relief.[104] A claim for relief is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[105] To cross the threshold from conceivable to plausible, the factual allegations must be sufficient to raise the entitlement to

---

[102] The evidence submitted to court demonstrates that Tati and James were domiciled in Washington at the time of the defamatory and harassing conduct by Defendants.  *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).  They signed an 18-month lease beginning December 1, 2018, which has been extended to March 31, 2021. T. Westbrook Decl. ¶ 7.  They paid taxes in Washington in 2019 and will pay taxes in Washington in 2020.  J. Westbrook Decl. ¶ 4. They own Washington investment property and three Washington corporations, and their personal and business bank accounts are in Washington. J. Westbrook Decl. ¶¶ 2–3. Also, after they purchased the house in California, they did not live in Los Angeles or ever stay at said house. J. Westbrook Decl. at ¶ 19.
[103] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985).
[104] Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).
[105] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-16
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

relief "above the speculative level."[106] This standard "asks for more than a sheer possibility that a defendant has acted unlawfully" but it is "not akin to a 'probability requirement.'"[107]

1. Intentional Infliction of Emotional Distress

a) *Extreme & Outrageous Conduct*

Defendants assert that Plaintiffs failed to allege sufficiently outrageous conduct as to Tati's Intentional Infliction of Emotional Distress ("IIED") claim.[108] Defendants' arguments, however, fail to acknowledge that the IIED claim incorporates all the preceding factual allegations in the Complaint, including the allegations of false statements imputing criminal conduct to Tati—e.g., that Tati has a history of defrauding lenders; engaging in fraud; and money laundering.[109] Moreover, the 19-month campaign of harassment towards Tati (and James) and the onslaught of internet postings and videos (40+ videos alleged in Complaint) harassing and defaming Tati (and James) in that 19-month period with the intent of harming their business and causing them distress also demonstrates the outrageous conduct of Defendants.[110] In addition, Defendants were not innocently "report[ing] from…public records," they were falsely imputing serious criminal conduct to both Tati and James in a very public manner, and they knew their statements were false. Defendants' conduct is not "a certain degree of rough language, unkindness, and lack of consideration."

b) *Severe Emotional Distress*

Although Plaintiffs have brought their claims under Washington law, Defendants inexplicably rely upon California law to argue that the allegations in the Complaint fail to adequately state a claim for relief.[111] Generally, whether a plaintiff incurred severe emotional

---

[106] *Twombly,* 550 U.S. at 555.
[107] *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).
[108] Defs.' Mot. to Dismiss, Dkt. no. 7, at 19–20.
[109] Compl., Dkt. no. 1, at ¶ 66.
[110] *See id.* at ¶¶14–43; *see also Spicer v. Patnode,* 9 Wn. App. 2d 283, 289–90, 297, 443 P.3d 801, 809 (2019) (finding that a defendant's remote starting of his vehicle, revving the engine, and activating the alarm over a course of four months to damage plaintiff's business and cause plaintiff to suffer emotional distress was sufficient to satisfy the first element of an IIED claim).
[111] Defs.' Mot. to Dismiss, Dkt. no. 7, at 20.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-17
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

distress is a fact question for the jury.[112] In contrast to the California cases cited by Defendants, in evaluating the viability of IIED claims, Washington courts focus more on the outrageousness of the conduct rather than the specific symptoms of emotional distress alleged.[113] Moreover, Plaintiffs have alleged sufficient facts to create a reasonable inference that the Defendants' defamation and harassing conduct is ongoing and continuing to cause Plaintiffs to incur the severe emotional distress described in the Complaint.[114] In addition, while embarrassment or humiliation is insufficient harm to support an IIED claim under Washington law, Plaintiffs have alleged facts showing they incurred severe emotional distress.[115] Furthermore, unlike the California case cited by Defendants, Plaintiffs have not relied upon a conclusory assertion of "emotional distress," but instead have alleged specific emotional distress including despair, nausea, loss of sleep, and a sense of helplessness.[116] Washington courts have found that similar symptoms as those alleged here are sufficient to support an IIED verdict.[117] Plaintiffs' IIED claim is plausible on the fact of the Complaint.

2. Negligent Infliction of Emotional Distress

Defendants' reliance on California law and a Ninth Circuit dissenting opinion does not show Defendants are entitled to dismissal of the Negligent Infliction of Emotional Distress ("NIED") claim.[118] The Complaint alleges severe emotional distress sufficient to support a claim of under Washington law.[119] As the *Hegel v. McMahon* case notes, the emotional distress objective symptomology need only be "susceptible" to medical diagnosis and then proved through medical evidence. Defendants' argument appears to be that Plaintiffs must submit medical proof of emotional distress in the Complaint. The notice pleading standard of Rule 8(a) has no such requirement. Furthermore, contrary to Defendants' conclusory arguments, Plaintiffs

---

[112] *Spicer*, 9 Wn. App. 2d at 292.
[113] *See id.* at 292–93.
[114] *See* Compl., Dkt. no. 1, at ¶¶ 23–39, 96–97.
[115] *See id.*
[116] *Id.* at ¶ 96.
[117] *See Spicer*, 9 Wn. App. 2d at 298 (finding that symptoms of stress and insomnia were sufficient to constitute extreme emotional distress).
[118] Defs.' Mot. to Dismiss, Dkt. no. 17, at 21.
[119] Compl., Dkt. no. 1, at ¶ 103.

have alleged that they incurred a medically diagnosable mental or emotional disorder—depression and anxiety.[120] Plaintiffs' NIED claim is plausible on the fact of the Complaint.

3. Washington Consumer Protection Act ("CPA")

Defendants' arguments fail to acknowledge the incorporation of the preceding factual allegations, including the fact that Defendants make their livelihood on YouTube and that the focus of their content is gossip or "tea" about other people.[121] The number of defamatory videos Defendants made about Tati also is relevant as is the allegation that Defendants have similarly targeted other people.[122] Moreover, Defendants arguments misstate the public interest requirement under the CPA.[123] Plaintiffs do not have to prove that another person has been injured or threatened with injury. They only have to prove that Defendants' unfair or deceptive pattern or practice *could* injure another person in the same way as Plaintiffs.[124] Here, the allegations in the Complaint establish that Defendants have a monetized YouTube channel with approximately 135,000 subscribers on which they regularly post videos; that Defendants' topics of interest include "drama" or "tea," i.e. gossip; they have pattern or practice of denigrating, harassing, and defaming others without bothering to verify their false statements; and that Defendants were posting such defamatory videos on the same day this action was filed.[125] These allegations demonstrate a real and substantial potential for repetition.[126] Plaintiffs have alleged a violation of RCW 18.86 that is facially plausible.

4. Civil Harassment

First, Defendants erroneously assert that testimony under oath regarding the harassment is a requirement at this initial pleading stage of an action.[127] To the contrary, sworn testimony is

---

[120] *See Snyder v. Med. Serv. Corp. of E. Washington*, 145 Wn.2d 233, 254, 35 P.3d 1158 (2001) (finding that symptoms of depression and anxiety were sufficient to constitute a "diagnosable emotional disorder" in an NIED claim).
[121] Defs.' Mot. to Dismiss, Dkt. no. 17, at 21–22..
[122] *See* Compl., Dkt. no. 1, at ¶¶ 15–18, 23.
[123] *See* RCW 19.86.093(3).
[124] *See id.*
[125] Compl., Dkt. no. 1, at ¶¶ 14, 16, 19, 28, 29, 30, 34, 36, 39–42.
[126] *See Luken v. Christensen Grp. Inc.*, 247 F. Supp. 3d 1158, 1164 (W.D. Wash. 2017).
[127] Defs.' Mot. To Dismiss, Dkt. no. 17, at 23.

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-19**
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

not necessary until the court is deciding whether to grant a petition for an order of protection.[128] Here, the issue of the petition for order of protection has not yet been submitted to the Court for a decision. Moreover, because of the First Amendment limitations of RCW 10.14, the defamation and civil harassment claims are intertwined such that the civil harassment claim cannot be decided without first deciding whether Defendants' statements were defamatory.[129]

Second, Defendants speciously argue that their harassing conduct of creating at least 40 videos and more than a hundred internet posts with defamatory statements about Plaintiffs over the course of 19 months somehow is not directed at Tati and James.[130] Defendants' argument is non-sensical and is contrary to Washington law.  RCW 10.14.010 states the statute's legislative intent:

> The legislature finds that serious, <u>personal harassment through repeated invasions of a person's privacy by acts and words showing a pattern of harassment designed to coerce, intimidate, or humiliate the victim is increasing</u>. The legislature further finds that the prevention of such harassment is an important governmental objective.[131]

"Contact" between the harasser and the harassed person is not a necessary component of unlawful harassment under Washington law.[132] In fact, the definition of "course of conduct" means harassment that takes "any…form of communication, contact, or conduct," which does not preclude internet postings.[133] In addition, the personal jurisdiction provision of RCW 10.14 expressly includes "indirect" communications, such as a posting on an electronic medium "that is generally available to any individual residing in the state."[134] Moreover, the Western District of Washington previously held that defamatory statements posted on the internet meet the definitions of "course of conduct" and "unlawful harassment" under RCW 10.14.020, which

---

[128] *See* RCW 10.14.080 ("An ex parte temporary antiharassment protection order may be granted with or without notice upon the filing of an affidavit"); *see also*, *e.g.*, *Ferguson*, C17-1685RSM, 2018 WL 2933400, at *2.
[129] *See* RCW 10.14.020;
[130] Compl., Dkt. no. 1, at ¶¶ 23, 28–29.
[131] RCW 10.14.010 (emphasis added).
[132] *See* RCW 10.14.020.
[133] RCW 10.14.020(1).
[134] RCW 10.14.155(2).

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-20
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

1   decisions were affirmed by the Ninth Circuit.[135] Defendants' interpretation of the statute would

2   exclude a vast swath of harassing conduct and would be contrary to the Washington

3   Legislature's stated purpose in enacting RCW 10.14.

4          Third, in a similar argument, Defendants erroneously assert that there are insufficient

5   factual allegations regarding "continuity of purpose" and "knowing and willful" conduct under

6   RCW 10.14.020(1). However, the Complaint contains ample facts regarding Defendants' stated

7   goal of "expos[ing]" Plaintiffs as well as her persistent actions of making numerous defamatory

8   statements on social media about Plaintiffs over the course of 19 months.[136] For example, the

9   Complaint specifically alleges "PAULSON has openly stated on her various platforms that she

10  will not stop going after Plaintiffs and she has otherwise openly dared Plaintiffs to sue

11  Defendants so that PAULSON can misuse the discovery process to inflict more damage upon

12  Plaintiffs."[137] Similarly, the Complaint states "Defendants stated publicly…that they intended to

13  target Plaintiff TATI, her family, and her business, and do an "exposé" on TATI as retribution

14  for what Defendants perceived as TATI's alleged mistreatment of another internet personality.[138]

15  Such facts are sufficient to establish both the targeting of Tati and James and the "knowing and

16  willful" conduct and continuity of purpose elements under RCW 10.14.020. Plaintiffs have

17  alleged a civil harassment claim under RCW 10.14 that is plausible on its face.

18  **D. THE COURT SHOULD DENY DEFENDANTS 12(b)(7) MOTION BECAUSE
    DEFENDANTS FAIL TO DEMONSTRATE JOINDER UNDER RULE 19.**

19
20         The application of Rule 19 involves a three-part inquiry, which Defendants have failed to

21  address;[139] thus, Defendants have failed to meet their burden of proving that social media

22  personalities, Shane Dawson and Jeffree Star, should be joined.[140] However, even if Defendants

---

23  [135] *See Ferguson v. Waid*, C17-1685RSM, 2018 WL 2933400, at *2–*3 (W.D. Wash. June 12, 2018), *aff'd*, 798 Fed.
24  Appx. 986 (9th Cir. 2020); *Ferguson v. Waid*, C17-1685RSM, 2018 WL 6040174, at *9 (W.D. Wash. Nov. 19,
    2018), *aff'd*, 798 Fed. Appx. 986 (9th Cir. 2020).
    [136] *See, e.g.*, Compl., Dkt. no. 1, at ¶¶ 20–21, 23, 28–29, 111.
25  [137] Compl., Dkt. no. 1, at ¶ 18.
    [138] *Id.* at ¶ 21.
    [139] *See* Rule 19.
26  [140] *See A. H. R. v. Washington State Health Care Auth.*, 469 F. Supp. 3d 1018, 1032–33 (W.D. Wash. 2016) (citing
    *Nev. Eighty-Eight, Inc. v. Title Ins. Co. of Minn.*, 753 F. Supp. 1516, 1522 (D. Nev. 1990) ("[T]he burden of proving

---

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-21
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

had attempted to meet their burden, they could not prove that this action should be dismissed for not joining Dawson and Star under Rule 19(a) because the Court may accord complete relief between Plaintiffs and Defendants absent joinder of Dawson and Star.[141] Plaintiffs seek monetary damages and injunctive relief against Defendants.[142] Defendants do not assert that Plaintiffs' requested relief requires any injunctive relief against Dawson or Star. Moreover, the basis of Plaintiffs' claims in this case are the numerous defamatory statements made by Defendants, not Dawson or Star,[143] about Plaintiffs. In fact, Defendants acknowledge that Dawson and Star's alleged conduct is separate and unrelated to the claims asserted by Plaintiff against Defendants.[144] An absent party need not be joined simply because it may be required to provide contribution or indemnity for damages.[145]

Additionally, Dawson and Star have not claimed an interest relating to the instant case. An existing party may not obtain joinder simply by championing the interest of an absentee party.[146] Joinder under Rule 19(a)(1)(B) is "contingent…upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action."[147] Finally, Defendants have failed to establish that resolution of this action without Dawson and

---

that joinder is necessary rests with the party asserting it."); *see also Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992) ("The moving party has the burden of persuasion in arguing for dismissal [in a Rule 19motion.]").

[141] *See Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm.,* 662 F.2d 534, 537 (9th Cir.1981) (finding that "complete relief" refers only to "relief as between those who are already parties, not as between a party and the absent person whose joinder is sought."); *see also Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1043 (9th Cir.1983) (The "complete relief" element is "concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the <u>same cause of action</u>." (emphasis added)).

[142] *See* Compl., Dkt. no. 1, at 33.

[143] Plaintiffs have made no factual allegations that Dawson and Star made and/or published the false statements alleged in Plaintiffs' Complaint.

[144] *See* Defs.' Mot. to Dismiss, Dkt. no. 17, at 18.

[145] *Tinoco v. San Diego Gas & Elec. Co.,* 327 F.R.D. 651, 658–59 (S.D. Cal. 2018) (citing *Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial* § 7:73 (9th ed. 2018)); *see also SASCO v. Byers,* No. C 08-5641 JF (RS), 2009 WL 1010513, at *2 (N.D. Cal. Apr. 14, 2009) ("[A] defendant's possible right of reimbursement, indemnity, or contribution against an absent party is not sufficient to make the absent party indispensable to the litigation.")

[146] *Reichert v. Keefe Commissary Network, L.L.C.,* 331 F.R.D. 541, 557–58 (W.D. Wash. 2019) (citing *In re Cty. of Orange,* 262 F.3d 1014, 1023 (9th Cir. 2001)).

[147] *Ward v. Apple Inc.,* 791 F.3d 1041, 1051 (9th Cir. 2015) (quoting *United States v. Bowen,* 172 F.3d 682, 689 (9th Cir. 1999)).

---

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**-22
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

1   Star would subject any party to the danger of inconsistent obligations.[148] As Plaintiffs' claims are

2   based on Defendants' numerous false statements about Plaintiffs, there is no risk of inconsistent

3   court orders because no common cause of action exists between the parties. Likewise,

4   Defendants fail to identify any factors that would prohibit this case from proceeding in Dawson's

5   and Star's absence.[149] Therefore, Defendants' 12(b)(7) Motion should be denied.

6   **E.  REQUEST TO STRIKE EVIDENCE SUBMITTED BY DEFENDANTS**

7           Pursuant to Local Rule CR 7(g) and the Federal Rules of Evidence, Plaintiffs object and

8   move to strike the declaration submitted by Michael P. Brown in its entirety as it lacks personal

9   knowledge, lacks foundation, and includes inadmissible hearsay.[150] First, Mr. Brown's statement

10   referencing Zillow.com in the second paragraph of his declaration is inadmissible because it

11   lacks foundation and personal knowledge regarding Plaintiffs' real estate acquisitions.[151]

12   Defendants use Mr. Brown's statement and the Zillow.com listing to "prove" that "the

13   Westbrooks did not list their Los Angeles home for sale until September 2020."[152] However, the

14   screenshot fails to actually identify the Westbrooks anywhere in the image.[153] In addition, the

15   entire statement is hearsay as the screenshot does not actually show a purchase or sale of the

16   property, but instead shows that Zillow, a third-party website, shares information that has been

17   obtained from a real estate broker.[154] Third, Mr. Brown failed to provide any evidence that the

18   Westbrooks lived in the house after they purchased it, which they never did.[155]

19           Second, the remainder of Mr. Brown's statements,[156] which are about @GlamLifeGuru's

20   social media accounts, also are inadmissible because Mr. Brown lacks the foundation and

21   personal knowledge to attest to who "used" the Twitter and Instagram accounts on those days.

---

[148] Under Rule 19, a person also may be a necessary party if the person has an interest in the action and resolving the action in the person's absence may leave an existing party subject to inconsistent obligations because of that interest. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).
[149] *See* Rule 19(b).
[150] *See* Fed. R. Evid. 602, 701, 801, 802, and 901.
[151] Brown Decl. ¶ 2.
[152] *See* Defs.' Mot. to Dismiss, Dkt. no. 17, at 15.
[153] *See* Brown Decl. ¶ 2.
[154] *Id.*
[155] *See id.*; *see also* Decl. J. Westbrook ¶ 19.
[156] *See* Brown Decl. ¶¶ 3-8.

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

Ms. Westbrook does not solely manage, or post on, the @GlamLifeGuru Twitter and Instagram accounts.[157] Additionally, Ms. Westbrook is a highly recognizable person and, for personal safety reasons, does not want the general public to know where she is at all times, so her posts are not evidence of her location.[158] Mr. Brown's declaration improperly offers these posts to "establish,…that Los Angeles—not Washington—was her home at that time[.]"[159] Relying on these @GlamLifeGuru social media posts as "evidence," Defendants spend over a page in their Motion offering pure speculation and various conjecture about where Ms. Westbrook was living based on the date and location of each post.[160] As Mr. Brown lacks the personal knowledge to attest to the publisher, timing, and location of the @GlamLifeGuru social media posts, his declaration must be stricken.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants Motion to Dismiss. In addition, to the extent the Court wishes to see additional evidence, which is Plaintiffs also request the opportunity to conduct jurisdictional discovery to obtain relevant evidence in Defendants' custody and control.

Dated: December 23, 2020

CARROLL, BIDDLE, & BILANKO, PLLC

By:    */s/ Jeffrey E. Bilanko*
        Jeffrey E. Bilanko, WSBA 38829

*/s/ Susan K. Kaplan*
Susan K. Kaplan, WSBA 40985

Carroll, Biddle, & Bilanko, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA 98104

---

[157] *See* T. Westbrook Decl. ¶ 4.
[158] *Id.* at ¶ 5.
[159] Defs.' Mot. to Dismiss, Dkt. no. 17, at 15.
[160] Defs.' Mot. to Dismiss, Dkt. no. 17, at 15.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-24
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

Phone: (206) 338-1496
Tel.: (206) 338-1518
Email: jbilanko@cbblegal.com
Email: skaplan@cbblegal.com
Attorneys for Plaintiffs

JACOBSON, RUSSELL, SALTZ, &
NASSIM & DE LA TORRE LLP

By:   */s/ Michael J. Saltz*
      Michael J. Saltz

By:   */s/ Elana R. Levine*
      Elana R. Levine

JACOBSON, RUSSELL, SALTZ, &
NASSIM & DE LA TORRE LLP
1880 Century Park East, Suite 900
Los Angeles, CA  90067
Telephone: (310) 446-9900
Facsimile: (310) 446-9909
Email: msaltz@jrsnd.com
Email: lani@jrsnd.com
Attorneys for Plaintiffs
*Admitted pro hac vice*

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-25
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  9810

1

## <u>CERTIFICATE OF SERVICE</u>

2

The undersigned declares under penalty of perjury under the laws of the State of

3

Washington that on this day a true and accurate copy of the document to which this declaration is

4

affixed was filed with the above-entitled Court through CM/ECF and was sent as indicated

5

below on this day, to:

6

7

**Attorneys for Defendants**:
Michael P. Brown

8

Gordon Tilden Thomas & Cordell LLP
600 University Street, Suite 2915

9

Seattle, WA 98101
Tel.: (206) 467-6477

10

☐ U.S. Mail Postage Prepaid
☒ CM/ECF
☐ Hand Delivery
☐ Email: mbrown@gordontilden.com

cc: cswanson@gordontilden.com

11

12

DATED this 23rd day of December, 2020.

13

14

*/s/ Elana R. Levine*

15

16

17

18

19

20

21

22

23

24

25

26

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS-26**
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  9810