THE HONORABLE BARBARA JACOBS ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TATIANA WESTBROOK, an individual; JAMES WESTBROOK, an individual; HALO BEAUTY PARTNERS, LLC, a Nevada Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>KATIE JOY PAULSON, an individual; WITHOUT A CRYSTAL BALL, LLC, a Minnesota Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>Defendants. | NO. 2:20-cv-01606-BJR<br><br>**DECLARATION OF MICHAEL J. SALTZ IN OPPOSITION TO MOTION TO DISMISS** |

**DECLARATION OF MICHAEL J. SALTZ -1**
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

I, MICHAEL J. SALTZ, hereby state as follows:

1. I am an attorney admitted *pro hac vice* to appear before the U.S. District Court for the Western District of Washington in the above-captioned matter, and am a partner of Jacobson, Russell, Saltz, Nassim & De la Torre, LLP, counsel for Plaintiffs Tatiana Westbrook, James Westbrook, and Halo Beauty Partners, LLC in this matter. I am over the age of eighteen and am competent to testify to the facts stated herein.

2. I submit this declaration in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss. I did not previously submit this declaration along with Docket numbers 27-29 [Plaintiffs' Opposition and Supporting Declarations ("Plaintiffs' Opposition")], as new facts have recently come to light that Plaintiffs could not have reasonably discovered prior to the filing of the Opposition.

3. Specifically, since the filing of Plaintiffs' Opposition, Defendants have disclosed additional evidence confirming that: Contrary to the statements made in Defendant Katherine Paulson's ("Defendant Paulson") declaration [Dkt. 19] filed in support of Defendants' Motion to Dismiss [Dkt. 17], Defendants have knowledge that they derive income from residents of the state of Washington. Such evidence confirms that said income is derived through Super Chats and paid channel memberships, in which they have entered into contracts to provide in exchange for a fee, exclusive content and services to people Defendants have reason to know are Washington residents.

4. Because Defendants failed to disclose that they derive income from the performance of their contractual obligations to provide exclusive content to known Washington residents through paid memberships to their YouTube channels, this evidence of Defendants deriving an income from known Washington residents did not present itself until a week after the filing of Plaintiff's Opposition. What is more, said evidence was made more difficult to find, and otherwise comprehend, due to the fact that there has been a concerted effort to obfuscate and/or destroy such evidence.

DECLARATION OF MICHAEL J. SALTZ -2
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

5.     By way of example, and not limitation, I watched and simultaneously recorded a video entitled "All of this NEEDS to STOP" that was streamed live on December 29, 2020 on Defendants' Katie Joy Live YouTube channel.[1] During the December 29, 2020 video, Defendants attempted to downplay their otherwise previously public connection to a member of their YouTube channel, Lori Ann Barnhart, who is now known to me to be a Washington resident. This member named "Lori Ann" is identified by her YouTube-assigned Author ID UC8fS63rCyrhhyfuJWFgoNA as her personal identifier on YouTube. Regardless of what published name she uses on YouTube, the Author ID remains the same. She is also the same person known as "Lori Ann" with the account names of @bloodtall, @lab05059 and @lab050505 on Twitter, and is the same person assigned Profile ID Number 100055592960041 on Facebook for an account that has used the names "Lori Ann Barnhart," and more recently "Lori Ann Pirone." This same "Lori Ann" is identified to be the person that is referenced in the declaration of Kim Fulmer, submitted by Plaintiffs in conjunction with their opposition. [Dkt. 29.]

6.     During the "All of this NEEDS to STOP" video, a person using said Lori Ann YouTube account sent Defendants multiple "Super Chats" evidencing direct commerce between a Washington resident and Defendants. As stated in the Declaration of James Westbrook, a Super Chat is a payment of funds from a viewer to a YouTube channel during a live stream video that is paid through a live stream chat. [*See* Decl. J. Westbrook, ¶ 10, Dkt. 27-2]. Below is a true and correct copy of a screenshot of a Super Chat sent by said Lori Ann YouTube account to Defendants that I had obtained while watching said video at approximately 32 minutes therein.

---

[1] The Katie Joy Live YouTube channel is a subsidiary of the Without A Crystal Ball YouTube channel wherein Defendant Paulson now streams live content that is apparently of a more personal nature.

**DECLARATION OF MICHAEL J. SALTZ -3**
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA 98104



7. Additionally, below is a true and correct copy of a screenshot of another Super Chat sent from said Lori Ann YouTube account to Defendants that Defendants rebroadcasted in the video portion of the live stream that I had obtained while watching said video at approximately 72 minutes therein.




8. This development is significant because, as stated above, this person that I know as "Lori Ann" is also now known to me to be a resident of the state of Washington: a fact that has been presented in Plaintiffs' Opposition, and which "Lori Ann" has effectively admitted herself in unsolicited messages sent from her Twitter account to me shortly after the filing of said Opposition papers. To be certain, said messages expressly stated that Plaintiffs, and especially

1  myself, "doxed"[2] her. By stating that she had been "doxed," Lori Ann appears to have admitted
2  that her personal identifying information is true, as one cannot be "doxed" with information that
3  is not their own personal identifying information. Said messages were sent to me on December
4  24, 2020. A true and correct copy of a screenshot of said message I had obtained from my private
5  Twitter direct messages is below:



I did not respond to said messages, nor have I sent her any direct messages, let alone any messages of a harassing or threatening nature.

9. Said super chat payments from said Lori Ann YouTube account to Defendants through Defendants' YouTube channel establish that **Defendants do earn an income derived**

---

[2]"Doxed" means: to publicly identify or publish private information about (someone) especially as a form of punishment or revenge. See https://www.merriam-webster.com/dictionary/dox

**DECLARATION OF MICHAEL J. SALTZ -6**
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1  **from the state of Washington**. A true and correct copy of said video without the live chat[3] or Comments I had downloaded from Defendants' YouTube channel and placed into a Dropbox for the Court's convenience, and can be viewed at: https://www.dropbox.com/s/a5dcssd8fte5e4v/2020.12.29%20All%20of%20this%20NEEDS%20to%20STOP%20%28KJ%20Live%29.mp4?dl=0

10. Said Super Chat screenshots show at the bottom of each respectively that said live stream limited the participants of the ongoing live chat for said video to "**Members-only**." Membership to a YouTube channel involves a monthly fee to a channel owner by an individual.[4]

11. Upon seeing that said livestream video chat was reserved exclusively for Defendants' paid members, I investigated the membership information published on Defendants' "Katie Joy Live" YouTube channel. I learned that Defendants charge recurring monthly membership fees for members on an increasing scale related to the level of "perks" (i.e., contractual services and content to be provided by Defendants) for which a particular paying member wishes to contract with Defendants. Specifically, Defendants sell recurring monthly memberships to the Katie Joy Live YouTube Channel as follows: a "Stan"[5] pays Defendants a $1.99 recurring monthly fee; a "Vlogging Queen" pays Defendants a $4.99 recurring monthly fee; a "KJ Ultimate Stan" pays Defendants a $9.99 recurring monthly fee; and an "Ultimate Member" pays Defendants a $24.99 recurring monthly fee.[6] Below are true and correct copies of screenshots of Defendants' Katie Joy Live YouTube Channel's membership information I had obtained from said channel at https://www.youtube.com/c/KatieJoyVlogs/community, and wherein the services and content Defendants are offering to be contractually bound to provide said members are set forth:

---

[3] Unfortunately, although YouTube allows users to download videos from its platform, said downloads do not include Live Chats or Comments.
[4] YouTube's published instructions regarding becoming a member to a YouTube channel, which is available at: https://support.google.com/youtube/answer/6304294?co=GENIE.Platform%3DDesktop&hl=en
[5] A "Stan" is social media vernacular for a person who is both a "stalker" and "fan" of a particular personality.
[6] It appears that a perk for "Ultimate Members" includes double portions of "Rough cuts and bloopers."

**DECLARATION OF MICHAEL J. SALTZ -7**
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104







DECLARATION OF MICHAEL J. SALTZ -8
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

12. I then also investigated the membership information published on Defendants' "Without A Crystal Ball" ("WOACB") YouTube channel. I learned that Defendants charge recurring monthly membership fees for members on an increasing scale related to the level of "perks" (i.e., contractual services and content to be provided by Defendants) for which a particular paying member wishes to contract with Defendants. Specifically, Defendants sell recurring monthly memberships to the WOACB YouTube channel as follows: a "Super Fan" pays Defendants a $3.99 recurring monthly fee; a "Stanning" pays Defendants a $9.99 recurring monthly fee; and a "Next Level" pays Defendants a $24.99 recurring monthly fee. Below are true and correct copies of screenshots of Defendants' WOACB YouTube channel's membership information I had obtained from said channel at https://www.youtube.com/c/WithoutACrystalBall/community, and wherein the services and content Defendants are offering to be contractually bound to provide said members are set forth:






**DECLARATION OF MICHAEL J. SALTZ -9**
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA 98104



13.    As explained by YouTube, there are six different loyalty badges that can be assigned to a paid member to a YouTube channel, and each one highlights how long a viewer has been a member of a particular channel. The color of the badge indicates how long each member has cumulatively paid for a membership. For example, if an active member joined a channel a year ago, but only paid for a total of 9 months out of the past 12 months, their badge will show that they have been a member for 9 months. The durations associated with each of the 6 badges shown above in the first membership screenshot are as follows: 1) New; 2) 1 month; 3) 2 months; 4) 6 months; 5) 1 year; and 6) 2 years. Information regarding YouTube channel membership badges can be found at: https://support.google.com/youtube/answer/7544492?hl=en

14.    After I had determined through the evidence cited above that said Lori Ann YouTube account was a paid member of Defendants' YouTube channel, I then attempted to

DECLARATION OF MICHAEL J. SALTZ -10
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1   determine if said Lori Ann YouTube account had been a paid member of Defendants' YouTube
2   channels prior to the filing of this lawsuit on October 30, 2020. This required that my staff and I
3   research and review the 65 videos remaining[7] on Defendants' Katie Joy Live YouTube channel
4   and approximately 1,540 videos remaining on Defendants' Without a Crystal Ball YouTube
5   channel, with said videos ranging in length from approximately 1 hour to over 3 hours each.

    15.    In the performance of our investigation into tracking down any prior interactions between said Lori Ann YouTube account and Defendants' remaining videos, I found it odd that we could not readily find any. Rather, it had appeared to me that all of said interactions had been scrubbed from all of the visible live chats from said videos. However, on or about December 30, 2020, my attention was brought to a video on Defendants' WOACB YouTube channel entitled "100K Celebration Stream - Join the Conversation," which was uploaded to said channel **on June 9, 2020**. In watching said video, I personally witnessed, at approximately 35 minutes therein, a person I know to be Defendant Paulson display on her video screen a message from Lori Ann's YouTube account along with a picture of a person I have verified through Google's face recognition search feature to be Lori Ann Barnhart. I then heard Defendant Paulson simultaneously say: "Oh, this one. Lori. Don't ever get into it with Lori. Lori remembers your names. Lori is the catalog. Lori didn't like me at one point and now **she is my best friend**." A true and correct copy of a screenshot I had obtained from said video displaying Lori Ann's YouTube name and picture (which corresponds to the pictures of Lori Ann's Twitter @bloodtall account in the declaration of Kim Fulmer and Lori Ann's Facebook account) is below.

---

[7] The reason why I describe the videos as those "remaining" on said channels is because Defendants appear to have deleted and/or privated numerous videos on their YouTube channels since the filing of this lawsuit. See Declaration of Michael J. Saltz in Support of Plaintiffs' Motion to Preserve Evidence [Dkt. 9] and accompanying Exhibit "C" [Dkt. 9-3].

**DECLARATION OF MICHAEL J. SALTZ -11**
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104



I had downloaded this YouTube video directly from YouTube without the live chat to a Dropbox for the Court's convenience, which is available for viewing at:

https://www.dropbox.com/s/tgc1s7m65nw0njo/2020.06.09%20100K%20Celebration%20Stream%20-%20Join%20the%20Conversation.mp4?dl=0 .

Said screenshot verifies that the Lori Ann YouTube account name had a paid membership loyalty badge next to it that is only available to members of Defendants' YouTube channel that pays Defendants a recurring monthly fee.



DECLARATION OF MICHAEL J. SALTZ -12
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

Generally, the presence of that loyalty badge next to the name "Lori Ann" on said video screen means Defendants have entered into a membership contract to provide "Lori Ann" said loyalty badge, plus other exclusive content and services, in exchange for "Lori Ann" paying Defendants a recurring monthly fee. As such, I had newly discovered this evidence indicating Defendants were receiving an income pursuant to a contractual relationship they entered into with a resident of the state of Washington, and who coincidentally Defendant Paulson publicly stated was her "best friend."

16. The reason this evidence was not discovered before the filing of Plaintiffs' Opposition was that I did not have any knowledge that Lori Ann existed prior to the filing of this lawsuit or her connection to Washington, and the videos that establish her membership had innocuous titles unrelated to my clients. Defendants have so many YouTube videos, many of which are more than an hour long, that it would take an outsider like me – who is naturally unfamiliar with the contents of said videos – years to view and catalogue them all in their entirety. The knowledge that Lori Ann is/was potentially a paying member of Defendants' YouTube channels only came to my attention through Defendants' broadcasting of the video about this lawsuit on December 29, 2020 with the members' only chat turned on.

17. At this point in my investigation, I was able to determine that there had been a concerted effort to hide, and therefore make it difficult to find, evidence of a known connection between Defendants and the person known to me as Lori Ann Barnhart. Specifically, I discovered that the aforementioned Lori Ann comment that was rebroadcasted on the video screen in said June 9, 2020 video, along with all other Lori Ann comments in said video's live chat, have now been deleted. I thoroughly scanned the entire live chat for said video, and could neither find the subject rebroadcasted Lori Ann comment, nor any other Lori Ann comment, anywhere in said live chat. However, I did find indications that multiple comments from Lori Ann's YouTube account did previously exist in said live chat. By way of example, and not limitation: I personally observed that other participants of said live chat during said June 9, 2020

livestream video were directly conversing with a person using Lori Ann's YouTube account in said live chat, but all of the statements and/or responses from the side of Lori Ann's YouTube account in said live chat conversations were deleted and are now missing. Below are true and correct copies of screenshots I had obtained from a current replay of said live chat demonstrating this irregularity, and in which I have highlighted in the screenshots to draw the Court's attention to the relevant sections.



18.     Thereafter, I discovered that all of the previously-identified Lori Ann live chat comments from Defendants' aforementioned livestream video on December 29, 2020 were also deleted.

DECLARATION OF MICHAEL J. SALTZ -14
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

19. In addition to the deletion of all of said Lori Ann comments as stated above, I discovered that the aforementioned Lori Ann YouTube account had been permanently deleted sometime after Defendants' broadcast of said December 29, 2020 livestream. Furthermore, I also discovered that said Lori Ann Facebook account and said Lori Ann Twitter account (@bloodtall) were also deleted within close proximity of the time that said Lori Ann YouTube account was deleted.

20. The deletion of the social media accounts that I know to belong to Lori Ann occurred after her connection to Defendants was disclosed in Plaintiffs' Opposition, including, but not limited to the existence of direct messages between Lori Ann and Defendants. [*See* Declaration of Kim Fulmer, Dkt. 29, at paragraph 14.] It is my belief that the deletion of Lori Ann's social media accounts was in response to the presentation of evidence of a close relationship between Defendants and Lori Ann Barnhart. [*See id.*]

21. Further, on January 2, 2021, I observed yet another livestream on Defendants' Katie Joy Live YouTube channel in which additional relevant information regarding even more known paid Washington members was disclosed. I had downloaded from YouTube a true and correct copy of said video without the live chat or comments from Defendants' YouTube channel and placed into a Dropbox for the Court's convenience, and can be viewed at:

https://www.dropbox.com/s/ye5met64a08wcn5/2021.01.03%20PREGAME%20STREAM%20%28KJ%20Live%29.mp4?dl=0. At around 35 minutes into said January 2, 2021 livestream, a person using the name "Addi – Talking Trials & Stuff," which is the YouTube handle of a paying member that is identified as having a contract with Defendants to receive exclusive content and services from Defendants, states in the Member Only live chat that **she lives in Washington State**, and then later apologizes for mentioning her state. A true and correct copy of said screenshots that I had obtained from this livestream of Addi's statements, which also display Addi's paid member loyalty badge, are below:



22.     At around 38 minutes into said January 2, 2021 livestream, Defendant Paulson tells her members not to share where they live. Defendant Paulson said, "Please don't ask people where they live. Don't talk about where you live… in general... If you live somewhere, that's fine…" Then, at around 40 minutes into the livestream, Defendant Paulson stated that the live chat was being monitored. It is apparent that this statement from Defendant Paulson was a response to Addi, who had since apologized in the live chat for sharing that she was from Washington, and thus providing further evidence of the fact that Defendants not only have actual knowledge that they have a contractual relationship with another resident of Washington, but that Defendants have actual knowledge they continue to derive additional income from the state of Washington through recurring monthly membership fees paid from residents within the state of Washington to Defendants through their YouTube channels.

23. The newly discovered evidence identified herein is additional evidence that Defendants have not been forthright in their Motion to Dismiss with regard to their contacts in, and income derived from, the state of Washington. Not only should Defendants have known at the time Defendant Paulson signed her Declaration that they had contractual relationships with Washington residents from which they derived an income, but also Defendants most certainly know now that they have contractual relationships with Washington residents from which they most certainly are deriving an income.

24. All of the evidence set forth above conflicts with Defendant Paulson's statements in her Declaration [Dkt. 19] at paragraph 4 that: "To my knowledge, neither I nor WOACB has any sponsors or subscribers in Washington. To my knowledge, neither I nor WOACB derives any income from the state of Washington."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

SIGNED on January 4, 2021

/s/ Michael J. Saltz
Michael J. Saltz