THE HONORABLE BARBARA JACOBS ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TATIANA WESTBROOK, an individual; JAMES WESTBROOK, an individual; HALO BEAUTY PARTNERS, LLC, a Nevada Limited Liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> KATIE JOY PAULSON, an individual; WITHOUT A CRYSTAL BALL, LLC, a Minnesota Limited Liability Company; and DOES 1 through 100, inclusive, <br><br> Defendants. | NO. 2:20-cv-01606-BJR <br><br> **DECLARATION OF LORI ANN BARNHART IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

**DECLARATION OF LORI ANN BARNHART**-1
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA 98104

I, LORI ANN BARNHART, hereby state as follows:

1. I am over the age of eighteen and am competent to testify to the facts alleged herein.

2. I am a resident of the State of Washington.

3. In the past two years, I have used the following Twitter accounts: @bloodtall, @lab05059, and @lab050505.

4. I initially found Ms. Paulson on Facebook in late 2019, wherein my account expressly stated that I am a resident of a city in Snohomish County, Washington. Ms. Paulson and I were official Facebook "Friends" through our personal Facebook accounts.

5. I was a paying member of Katie Joy Paulson's "Without A Crystal Ball" YouTube channel from approximately January 2020 through August 2020. As a member of the "Without A Crystal Ball Channel," I paid $3.99 per month, not including tax. During the time period that I was a paid member of Ms. Paulson's channel from Washington, Ms. Paulson published numerous videos and other content maligning Plaintiffs in this case.

6. Throughout a large portion of 2020, I was communicating with Ms. Paulson on Twitter on an extremely frequent basis, and otherwise not less than several times a week. I also communicated with Ms. Paulson via email and direct messages. I was not only a staunch supporter of Katie Joy Paulson and her "Without A Crystal Ball" YouTube channel, I also developed the reputation of being her fierce protector. Katie Joy would brag about me being one of her ride or dies, and said that if anyone came after her, she knew that I, as one of her "ride or dies" would shut them down. Below is a true and correct copy of a screenshot from my twitter account of a conversation I had with Ms. Paulson wherein Ms. Paulson makes such a statement:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19  7.  As a further example of Defendants expressly using me as their "bulldog" to go
20 after Ms. Paulson's detractors and competitors that would speak negatively about Defendants, in
21 or about July 2020, Defendants found themselves to the be the focus of significant negative
22 attention when Defendants falsely published that a very large YouTube creator was being
23 investigated by the Los Angeles Sherriff's Department for potential sex-related crimes involving
24 children. Apparently there never was such an investigation. As such, Ms. Paulson publicly stated
25 to another one of Defendants' "bulldogs" that there was nothing to worry about with regard to
26

**DECLARATION OF LORI ANN BARNHART**-3
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1  the negative attention Defendants were receiving because: "you and **Lori will be on the hunt**".
2  A true and correct copy of a screenshot of said conversation from July 7, 2020 that I had
3  obtained from Twitter is below:



8. I have reviewed Ms. Paulson's supplemental declaration in support of her Motion to Dismiss. At paragraph 6, she states that she had been in contact over social media with me on only a few occasions. This is false. It is also false that she did not know that I was a resident of Washington. We were Facebook friends, and my state of residence was displayed on my profile. In addition, there had been instances over the course of our communications wherein I had specifically stated to Ms. Paulson that I lived in Washington.

9. On several occasions, Ms. Paulson asked me to do certain things for Defendants, such as mass flagging[1] content of other detractors' and competitors' YouTube channels. Defendants would ask me and others to help mass flag competitors' YouTube channel that made negative comments about Defendants in order to have their platform demonetized or taken away. Sometimes the orders to mass flag someone's channel or content were made by Ms. Paulson publicly, and sometimes the orders were sent by Ms. Paulson to me in private messages on Twitter. One such account I was told to flag was Lil Red, a YouTube creator and competitor of Defendants, who was publishing negative comments regarding Ms. Paulson. On one occasion, I received a private message from Ms. Paulson instructing me to also flag a YouTube creator and competitor's YouTube channel named Sharell's World. As her agent, I followed her directions as requested and reported the channels to YouTube for having inappropriate content.

10. Defendants would also use me as their agent to perform other tasks, such as deliver messages to people on Twitter that Defendants had blocked. Below is a true and correct copy of a screenshot of a Twitter conversation wherein Ms. Paulson gave me such an instruction to perform on her behalf:

---

[1] Flagging content means reporting violations of Terms of Service or inappropriate content to YouTube. See: https://support.google.com/youtube/answer/2802027?hl=en&ref_topic=9387085 .

**DECLARATION OF LORI ANN BARNHART-5**
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104



11. Each and every time I was asked to do something or did something on behalf of, for, or at the request of Defendants, I was physically located in Washington. Again, this was a fact I did not hide from Defendants, and to the best of my recollection, frequently disclosed to Defendants.

12. In August 2020, I began to disagree with the toxic environment Ms. Paulson was creating with her content. As such, I began to distance myself from being Defendants' agent that would do Defendants' bidding and defending, and I cancelled my paid membership to Defendants' YouTube channel. Ms. Paulson was disappointed in the separation, and said that she adores me no matter what happens. It is my understanding that this statement establishes that the connection that I had with Defendants in general, and Ms. Paulson in particular, was far more

1  significant than what Ms. Paulson represented in her declaration to the Court. Below is a true and correct copy of a screenshot of a tweet from my Twitter account showing said interaction with Ms. Paulson wherein she says she adores me:



13. Though I cancelled my membership, I still remained friendly with Ms. Paulson after this lawsuit was filed in October 2020. As a result of my continued friendship with Ms. Paulson and my prior reputation of being a staunch protector "bulldog" of Ms. Paulson, I started to receive messages from people on Twitter who were trying to discredit me. In their efforts to discredit me, on or about November 5, 2020, people had stated not only that I lived in the State of Washington, but because I had previously made it generally known that I previously worked for the government, that I was the person publicly listed on the internet as Lori Ann Barnhart that worked at the Department of Transportation. Although that person listed on the website for the Washington Department of Transportation has the same exact name as me, and is a government employee from the same state as me, that is not me. However, I did not publicly correct these

**DECLARATION OF LORI ANN BARNHART-7**
(2:20-CV-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1 people twitter who published this information on or about November 5, 2020 as if it were fact
2 and otherwise allowed them to continue to believe that I worked for the Department of
3 Transportation. Instead, I am a retired administrator for a federal agency. As such, I take
4 responsibility for my part in allowing this misunderstanding to be accepted as fact, and for that I
5 apologize. Below is a true and correct redacted screenshot I had obtained and republished on my
6 Twitter page showing that other people on Twitter were misstating as fact that I was the same
7 Lori Ann Barnhart that worked for the Washington Department of Transportation:



14. Throughout 2020, I had communicated with Ms. Paulson through email, social media, direct messages, and live chats. As stated above, and while I was a paying member, we regularly communicated multiple times per week. In fact, Ms. Paulson and I were Facebook

friends, wherein my account expressly stated that I am a resident of a city in Snohomish County, Washington. I have shared some of my most intimate secrets via email with Ms. Paulson, including personal information about mental health issues, which is something I would not have done with someone that was merely an acquaintance.

15. On or about December 2, 2020, after Defendants filed the Motion to Dismiss, Ms. Paulson became distant and it appeared to me that Ms. Paulson was attempting to minimize our connection to one another. I have reviewed Ms. Paulson's declaration that she filed along with the Motion to Dismiss, and paragraph 6 of her declaration appears to be false. Specifically, perhaps we were not "best friends" as she stated we were in her June 9, 2020 video, but we were significantly closer than the average fan or paid member. This is especially so, given that she had reached out to me in the State of Washington to perform tasks on Defendants' behalf such as flag other competitors' YouTube accounts and had publicly endorsed my being her "bulldog" against her detractors. Ms. Paulson knew that she had subscribers and paying members, including me, in the State of Washington.

16. I began to see Ms. Paulson's propensity for dishonesty while at the same time observing that she was creating distance for what I can only imagine was to conceal a close relationship with a member/subscriber from the State of Washington, and to falsely inform the Court that she is unaware of any connection with the State of Washington.

17. I have reviewed the Declarations of Kim Fulmer and Michael J. Saltz filed in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss. I can hereby certify that, except for the statement at paragraph 10 of Kim Fulmer's declaration regarding me working at the Department of Transportation, the statements in the declarations appear to be accurate. That said, I have done and said many things in my past that I regret and have previously contacted Ms. Fulmer to make amends, and Ms. Fulmer publicly acknowledged my apology. The criminal charges referenced in Ms. Fulmer's declaration were ultimately dismissed pursuant to an

agreement I made with the Prosecutors. Aside from the events surrounding the incident discussed in the criminal complaint, I have no criminal record.

18. I am profoundly sorry to Ms. Fulmer and to anyone else for anything they may have perceived that I posted online as a threat to their safety. I have already apologized to her and other creators for my actions. Below is a true and correct copy of a screenshot of a tweet from my @bloodtall Twitter account, showing I tried to apologize for my actions, which were perceived as threats to Ms. Fulmer.



19. Shortly after reading the declaration of Kim Fulmer that contained the wrong information about my employment, I was concerned that a person who was not me was going to be contacted to be a witness in this lawsuit. I therefore contacted Ms. Paulson through Twitter direct messages on or about December 24, 2020 and informed her of my concern. Ms. Paulson informed me that she was not able to speak about the case. I then responded that it was my intention to call Plaintiffs' attorneys to notify them about the issue and to see if they could do anything to correct it. Ms. Paulson told me expressly to not contact Plaintiffs' Counsel, but to contact her attorney, Michael P. Brown, instead.

20. From the very first interaction I had with Mr. Brown, I felt he was being misleading. He led me to believe that Plaintiffs filed their opposition right before Christmas to intentionally mess with me, and not because that was a court imposed deadline.

21. On December 30, 2020 Mr. Brown informed me[2] that Plaintiffs' Counsel was planning to subpoena my Twitter account, which caused me concern. He stated, "they think there may be evidence there about your connection to Katie. I did not disclose that you and I are in touch. Saltz even complained to me that you 'threatened' him via DM."

22. Mr. Brown thereafter sought to have me sign a declaration on behalf of Defendants that did nothing more than attack and malign Plaintiffs' counsel, which I thought to be inappropriate and ultimately did not do. By way of example, Mr. Brown, in an email dated December 24, 2020 at 3:38 p.m., tried to encourage me to file state bar complaints against one of Plaintiffs' attorneys and otherwise suggest that I should perceive Plaintiffs' Counsel's private attempts to informally obtain information from me as a threat. The fact is, Plaintiff's counsel's attempts to communicate with me privately to informally obtain information contained no threats.

23. Mr. Brown stated that he would assist me with the filing of a declaration on my behalf in this case. On January 6, 2021, at 6:18 p.m. Mr. Brown sent me an email stating that he made a signature page separate from the rest of the declaration so that he could make changes and I would not have to re-sign the declaration if he made tweaks. I was uncomfortable with signing an unfinished declaration that could potentially be altered after I signed it. Mr. Brown also informed me that Plaintiffs' Counsel was going to serve me with a subpoena to preserve my social media accounts that I had deleted and to provide Plaintiffs with access to any remaining

---

[2] I am willing to provide emails that I have exchanged with Mr. Brown to the Court for a private review, if necessary. However, as Mr. Brown has indicated that he would represent me, I do not wish to make these emails public. In addition, said emails contain private information about my mental health issues that I disclosed to Mr. Brown. The emails have been provided to Plaintiffs' Counsel in order to give to the Court upon request.

**DECLARATION OF LORI ANN BARNHART-11**
(2:20-CV-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1  communications that I may have had with Ms. Paulson. I said that I was going to go to Legal Aid
2  to get legal assistance with responding to the subpoena. On January 8, 2021, I informed Mr.
3  Brown that I was willing to turn over my accounts to Plaintiffs' Counsel in order to resolve this
4  issue. Mr. Brown suggested to me via email on January 8, 2021 that I should object to the
5  subpoena for the purpose of delaying my response to the subpoena, which upset me because I did
6  not want to delay my exit from this case for any reason.

7  24. Mr. Brown stated in an email to me dated January 10, 2021 at 6:13 p.m., "I am
8  preparing something to file tomorrow that addresses what they did to you, but does not require
9  you to file any statement if you don't want to. I want the court to know what he's doing to harass
10 you. I can't guarantee that the judge will do anything about it, but I want to try. His behavior is
11 disgusting. I recommend that you sit tight, accept service if they come to your door, and then we
12 can take it form (sic) there. You are not in any trouble." Such statement confirmed to me that I
13 apparently was a client of Mr. Brown's, in that I understood his statement to mean that he was
14 inserting himself into my situation of having to respond to a subpoena.

15 25. On January 11, 2021, Mr. Brown thereafter offered to represent me at no charge
16 in responding to said subpoena, stating, "You don't need to spend money or hire a lawyer to
17 respond to the subpoena or file a declaration. I'd like to stand up for you by filing your
18 declaration if you'd let me. It costs you nothing." This statement made me very suspicious of Mr.
19 Brown's motives, as it was my understanding that a truthful and honest response to the subpoena
20 would not be in Defendants' best interests, but would otherwise be in mine. Specifically, I was
21 not comfortable with having Mr. Brown controlling the production of my documents and/or
22 other evidence that would likely be detrimental to Defendants' pending motion attacking
23 jurisdiction and ultimately Defendants' defenses to Plaintiffs' claims.

24 26. I did not feel comfortable with Mr. Brown's offer of representation and stated
25 intent to file objections solely for the purposes of delay of the subpoena. I also did not feel
26

comfortable that Mr. Brown proceeded to give me legal advice in this case regarding how to respond to discovery and what I should say in the state bar complaints that he was encouraging me to file against Plaintiffs' counsel. I was concerned that there would be a conflict of interest in representing me and Ms. Paulson because the information that I would be providing would contradict the statements Ms. Paulson made in her declarations and therefore would be contrary to her interests. At no time prior to giving me legal advice did Mr. Brown advise me of any potential or actual conflicts of interest with regard to his representation of the Defendants and myself as a potential witness against Defendants. All I wanted to do was to make sure that everyone knew the person with my name working at the Washington Department of Transportation was not me after the declaration of Kim Fulmer was filed. I wholeheartedly did not expect that Defendants' Counsel would attempt to use me so blatantly as a pawn in such an inappropriate way.

27.     I also did not feel comfortable with Mr. Brown wanting me to sign a declaration stating that I was threatened by Mr. Saltz, when Mr. Saltz has not threatened me. Nor have I ever told Mr. Brown that Mr. Saltz threatened me. Specifically, Mr. Brown. stated: "We are filing something today that addresses the threat Saltz recently made to you… It would be great if you would state that you took it as a threat and felt intimidated."

28.     Based on the overall impression that Mr. Brown left with me during my interactions with him during the past few weeks, I cut off all communications with Defendants and Defendants' attorneys. To be certain, I was shocked and horrified that Defendants and their attorneys who were apparently supposed to be looking out for my best interests, especially since they said they were representing me in this matter, ignored my express requests to speedily take action to correct the record in regard to the false attribution of my employment (which was my fault), and instead hide the error from Plaintiffs for their tactical advantage. Despite that Mr. Brown knew about the error since December 24, 2020, Defendants and Defendants' Counsel

have apparently done nothing to inform Plaintiffs' counsel to correct the error, which is expressly against my wishes. I therefore reached out to Plaintiffs' Counsel by telephone for the first time on January 12, 2021 to give them the foregoing information for the purposes of setting the record straight, and to inform them for the first time about the existence of the facts contained in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

SIGNED, on January 13, 2021.

*Lori Ann Barnhart*
Lori Ann Barnhart

DECLARATION OF LORI ANN
BARNHART-14
(2:20-CV-01606-BJR)

CARROLL, LE, & BILANKO, PLLC
1000 ___ venue, Suite 3100
Seattle, WA 98104