The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TATIANA WESTBROOK, an individual; JAMES WESTBROOK, an individual; HALO BEAUTY PARTNERS, LLC, a Nevada Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>KATIE JOY PAULSON, an individual; WITHOUT A CRYSTAL BALL, LLC, a Minnesota Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>Defendants. | NO.  2:20-cv-01606 BJR<br><br>DEFENDANTS' REPLY REGARDING MOTION FOR STATUS CONFERENCE |

DEFENDANTS' REPLY ISO MOTION FOR
STATUS CONFERENCE

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

# I. ARGUMENT

**A.    The Court may govern counsel's conduct without a "gag order."**

Plaintiffs argue Defendants' motion for a status conference does not meet the requirements for issuance of a "gag order." However, Defendants did not intend their motion alone to establish the basis for such an order. Rather, Defendants' intention was to invoke this Court's supervisory power to "manage its own proceedings and to control the conduct of the parties and attorneys before it." *See Doyle v. Gonzales*, 2011 WL 2607167 at 3 (E.D. Wash. July 1, 2011) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)); *see also Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322, 1324-25 (9th Cir. 1976) ("It is the duty of the court to examine" allegations of improper lawyer conduct because "[t]he courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession.").

Plaintiffs' counsel Mr. Saltz has engaged in abusive conduct both in the social media harassment campaign he has waged against Defendant Paulson, and in his unfounded recent email threats of criminal prosecution. This violates the rule forbidding attorneys to act for the purpose of harassing or intimidating opponents, opposing counsel, or witnesses. *See* RPC Preamble [5]. Counsel's threats of criminal prosecution also violate the rules of professional conduct of his own state. *See* Cal. RPC 3.10(a) ("A lawyer shall not threaten to present criminal . . . charges to obtain an advantage in a civil dispute."). Defendants hope that bringing this to the Court's attention will moderate counsel's behavior. Indeed, Mr. Saltz's Twitter activity has already dropped dramatically since this Court set a hearing on this motion.

**B.    Mr. Saltz has tweeted about Ms. Paulson at least 375 times in less than three months to an audience of thousands of his "followers."**

The first fact the Court should be aware of, in evaluating Plaintiffs' use of Twitter in this case, is the sheer volume of Mr. Saltz's tweets regarding Defendant Paulson. Since this lawsuit was filed on October 31, 2020, Mr. Saltz has posted ***375*** tweets regarding Ms. Paulson and this case. *See* Supplemental Declaration of Michael Brown, Ex. A. The majority of Mr. Saltz's

DEFENDANTS' REPLY ISO MOTION FOR STATUS
CONFERENCE - 1

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

Twitter activity, since this case was filed, has been directed at Ms. Paulson. This campaign has won him a following of some 6,200 Twitter users. Plaintiffs argue that they themselves have not publicly commented on this case. Dkt. 46 at 2 n.3. Of course, *they* do not have to do that work, when they pay their attorneys to publicly harass, taunt, and defame Ms. Paulson.

**C.    Mr. Saltz's tweets have *not* been limited to the safe harbor but have instead been used for the purpose of abusing and harassing Ms. Paulson.**

Plaintiffs argue that Mr. Saltz's 375 tweets in a three-month period all fall within RPC 3.6's safe harbor for attorneys' use of publicity to advance their clients' interests. Those provisions permit an attorney to resort to the media for the *limited* purposes of: (1) a request for assistance in collecting "necessary" evidence; and (2) responding with "such information as is necessary to mitigate . . . recent adverse publicity"—not initiated by the lawyer or his or her client—that would otherwise have "substantial undue prejudicial effect" on his or her client. RPC 3.6(b)(5) & (c). It is not plausible that 375 tweets in less than three months' time can be justified under those safe harbor provisions. And, as explained below, Plaintiffs' social media bombardment is in fact intended to harass Ms. Paulson and damage her business.

**1.    Mr. Saltz's false accusations of criminal hacking and witness tampering.**

Defendants made their request for a status conference on shortened time in part because of a January 16, 2021 tweet from Mr. Saltz plainly suggesting that Ms. Paulson attempted to commit the crime of hacking into his Twitter and Gmail accounts. Mr. Saltz wrote:

> Well, well well. What do we have here? There appears to have been several hacking attempts on my Google and Twitter accounts (and possibly others). This is not the first time. And whomever it was used a familiar email address in their efforts.

Supp. Brown Decl., Ex B. He then pasted a screenshot in which Ms. Paulson's (publicly-known) email address appeared, and he highlighted her email address with red marker. *Id.* There is no question Mr. Saltz intended his more-than-6,000 Twitter "followers" to take this as an accusation that Ms. Paulson made this criminal hacking attempt:

DEFENDANTS' REPLY ISO MOTION FOR STATUS
CONFERENCE - 2

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

- Mr. Saltz followed the initial tweet with another on the same day, suggesting that a tweet from Ms. Paulson earlier in January was "an admission of hacking." *Id.*, Ex. C.[1]

- He followed with another tweet the same day, blaming Ms. Paulson's "bulldogs" for an attempted hack of one of his witnesses. *Id.*, Ex D.

- One of Mr. Saltz's followers responded to his tweet by baselessly accusing Ms. Paulson of fabricating an attempted hack on her account, to hide her own guilt of that crime. Mr. Saltz publicly and uncritically took this as evidence of Ms. Paulson's guilt, replying: "I will need that for our report to the authorities and the Court." *Id.*, Ex E.

- Mr. Saltz's "followers" took his tweets, as he intended, as accusations levelled at Ms. Paulson. *Id.*, Ex. F.

Remarkably, Plaintiffs have responded to Defendants' motion by attempting to *justify* these public accusations of criminal wrongdoing, by offering three declarations with what purports to be, but is not, evidence that Ms. Paulson did in fact commit this crime. Dkt. 46-1, 46-1, 46-3. One of those declarations is from a UK resident named Natalie Kennett, who testified that she is "autistic and suffer[s] from *several mental health disorders*, including anxiety and depression." Dkt. 46-3 at ¶ 5 (emphasis added). The Kennett "declaration" contains purported screenshots of communications with Ms. Paulson, which have been fabricated. *See* Supplemental Declaration of Katherine Paulson. Remarkably, on the morning of January 29, Plaintiffs' counsel began receiving emails from their "witness" Ms. Kennett, forwarding what *Plaintiffs' counsel admitted* were fake "emails" from the undersigned counsel and Ms. Paulson to Ms. Kennett, making threats to her to coerce her to change her testimony. Supp. Brown Decl., Ex G. Despite the *obvious* serious questions surrounding Ms. Kennett's credibility, Plaintiffs' counsel refused to withdraw her declaration. *Id.*

---

[1] Mr. Saltz phrases most of his harassing tweets in the form of questions, apparently under the belief that this will allow him to later deny that he was making an assertion of fact. But his intent apparent.

DEFENDANTS' REPLY ISO MOTION FOR STATUS
CONFERENCE - 3

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

## 2. Other tweets posted for the sole purpose of harassment and taunting.

Defendants pointed out that, on New Year's Day, Mr. Saltz posted a tweet criticizing Ms. Paulson for working instead of spending time with her family (and friends and "life"). *Id.*, Ex A; Dkt. 41 at ¶ 3. But there are many more tweets that are indisputably outside the safe harbor Mr. Saltz invokes, and are clearly meant to harass. Examples include:

- Mr. Saltz inserted himself into an entirely unrelated dispute between Ms. Paulson and a man she had accused of sexual harassment and retaliation in 2019. Knowing *nothing* about that matter except what he heard from the defendant, Mr. Saltz posted a tweet speculating that that Ms. Paulson had perjured herself in her application for a restraining order against that defendant. Brown Decl., Ex H.

- Mr. Saltz falsely accused Ms. Paulson of paying people to "subscribe" to her YouTube channel, to make it appear she has more subscribers than she does. He even offered supposed "evidence" to support this accusation. Paying for subscribers is a violation of YouTube's terms of service. It has *nothing* to do with the claims in this lawsuit, and was clearly intended to harass and defame Ms. Paulson and her business. *Id.,* Ex. I.

- Mr. Saltz accused Ms. Paulson of lying about her prior relationship with an internet publisher of online content. Again, this has *nothing* to do with this lawsuit. *Id.*, Ex. J.

- Mr. Saltz sent two tweets, early in the morning on New Year's Day, in which he responded to tweets from two of his regular fans and committed "haters" of Ms. Paulson. These tweets had referred to Ms. Paulson as a "POS" (piece of shit) and a "Biatch," in reference to a video she had published. Mr. Saltz joined in on the public attack, responding: "Is [Ms. Paulson] always like that on her [Instagram] account?" and "Why would someone watch [her videos]?" *Id.*, Ex. K.

- The previous day, on New Year's Eve, Mr. Saltz responded to another tweet from one of his fans directed at Ms. Paulson, in which she referred to Ms. Paulson as "Hey stupid"

DEFENDANTS' REPLY ISO MOTION FOR STATUS CONFERENCE - 4

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

and ended her tweet with "F.U." Rather than suggest that his fans avoid this kind of abuse, Mr. Saltz responded by asking for *more* submissions from other fans.[2] Ex. L.

- Responding to a tweet from someone who claimed to have a video in which Ms. Paulson contradicted something she had said in another video, Mr. Saltz wrote: "Most people are advised to keep quiet after being sued. I present to you 'Exhibit A' as to why such is sound advise [sic]." *Id.*, Ex. N.

- Mr. Saltz regularly accuses Ms. Paulson of destroying evidence. He posted this tweet, responding to nothing, obviously targeting her: "While working at the District Attorney's office after law school a wise detective once told me: 'You can judge a person's level of guilt by the amount of evidence they attempt to delete once charges are filed.' I believe this applies more so in the context of civil suits." *Id.*, Ex. O.

- Mr. Saltz posted a tweet alleging that Ms. Paulson's supporters must also be "Trump supporters." *Id.*, Ex. Q.

### D. The Court should disregard Plaintiffs' distractions.

Defendants brought this motion to address Plaintiffs' counsel's abuse of social media and improper threats to bring criminal charges against Defendants. Plaintiffs' response is to attempt to distract the Court with entirely unfounded accusations that *Defendants* have engaged in a campaign to abuse Plaintiffs' "witness" (for whom Plaintiffs' counsel filed falsified evidence). And even Mr. Saltz's now claims to be the victim of online abuse himself. But the facts are that: (1) there is *no* credible evidence that Defendants are responsible for *any* alleged online harassment of anyone; and (2) there is indisputable evidence that Plaintiffs' counsel has repeatedly used social media to harass Ms. Paulson.[3]

---

[2] At the very outset of this case, Mr. Saltz publicly stated: "I don't care where we get evidence: Supporters, haters, or trolls." Brown Decl., Ex M.

[3] Plaintiffs also argue: (1) Mr. Saltz's emails of January 18 did not accuse Ms. Paulson of criminal hacking or demand to know the undersigned's involvement in that crime; (2) Mr. Saltz did not "promote" the YouTube channel of Emily D. Baker; and (3) Defendants failed to satisfy the conference requirement in this Court's Standing Order. Each of these is addressed in the Supplemental Declaration of Michael Brown, filed herewith.

DEFENDANTS' REPLY ISO MOTION FOR STATUS
CONFERENCE - 5

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

DATED this 29th day of January, 2021.

**GORDON TILDEN THOMAS & CORDELL LLP**
Attorneys for Defendants

By   s/ *Michael P. Brown*
    Michael P. Brown, WSBA #45618
    600 University Street, Suite 2915
    Seattle, Washington 98101
    206.467.6477
    mbrown@gordontilden.com