1
2
3
4
5
6
7
8
9
10
11

The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TATIANA WESTBROOK, an individual;<br>JAMES WESTBROOK, an individual;<br>HALO BEAUTY PARTNERS, LLC, a<br>Nevada Limited Liability Company,<br><br>      Plaintiffs,<br><br>   v.<br><br>KATIE JOY PAULSON, an individual;<br>WITHOUT A CRYSTAL BALL, LLC, a<br>Minnesota Limited Liability Company; and<br>DOES 1 through 100, inclusive,<br><br>      Defendants. | NO.  2:20-cv-01606 BJR<br><br>**DEFENDANTS' MOTION FOR<br>SANCTIONS UNDER 28 U.S.C. § 1927<br>AND THIS COURT'S INHERENT<br>POWER**<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANTS' MOTION FOR SANCTIONS

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

## I.  INTRODUCTION

On January 13, 2021, Plaintiffs filed a declaration of non-party witness Lori Barnhart (the "Second Barnhart Declaration"). Dkt. 38-1. That declaration was full of salacious testimony aimed at publicly accusing Defendant Katherine Paulson of perjury, and accusing the undersigned counsel of very serious ethics violations, including attempting to procure false testimony from Ms. Barnhart. By Plaintiffs' design, the Second Barnhart Declaration was almost immediately broadcasted to a massive social media audience.

But Ms. Barnhart's testimony is demonstrably false in every material respect. Indeed, Plaintiffs' preparation, filing, and public promotion of it was defamation thinly cloaked as legal advocacy. When they prepared and filed this declaration, Plaintiffs' counsel knew the "testimony" was directly contradicted by a long series of recent emails between Ms. Barnhart and the undersigned, but they proceeded undeterred, and withheld from this Court the very emails that proved the falsity of the testimony they had prepared. Further, they knew the testimony they prepared was directly contradicted by a separate declaration she had helped prepare and was eager to sign on behalf of *Defendants*, just one week earlier (the "First Barnhart Declaration"). Further still, they knew—because Ms. Barnhart told them—that she was suffering from confusion, "foggy" thought, poor memory, and anxiety.

Plaintiffs' counsel's preparation and filing of false testimony clearly meets the "bad faith" standard and is sanctionable in itself. But the events leading to that preparation and filing are likewise abusive and improper, and underscore the need for sanctions to punish and deter such conduct. The Second Barnhart Declaration came after Plaintiffs' weeks-long effort to intimidate, threaten, and harass Ms. Barnhart:

- On December 24, 2020, they filed a declaration (Dkt. 27-3) that included totally irrelevant but extremely sensitive and damaging information about Ms. Barnhart's past, which was, by Plaintiffs' design, broadcasted to a massive social media audience, causing Ms. Barnhart extreme embarrassment and anxiety.

DEFENDANTS' MOTION FOR SANCTIONS - 1

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

- On January 1, 2021, Plaintiffs' counsel Michael Saltz sent private messages to Ms. Barnhart, threatening that she could "get in trouble" for removing herself from social media in response to the public blowback from the December 24 filing, but offering to "let her go" *if* she agreed to "cooperate with [him] privately and voluntarily."

- On January 4, 2021, Mr. Saltz filed a declaration in which he swore under oath that he personally conducted an "investigation" and "determined" that Ms. Barnhart had conspired with Ms. Paulson to "hide evidence" relevant to this lawsuit; these unfounded allegations also were amplified to a huge social media audience.

Ms. Barnhart finally relented to this assault on January 12 and contacted Plaintiffs' counsel in an attempt to make the harassment stop. She told Plaintiffs' counsel she was represented by the undersigned in relation to this lawsuit.[1] Nevertheless, they proceeded to interview her for *11 hours*, review her emails with the undersigned as well as her social media accounts, and then publish the results of those efforts. This was in clear violation of what RPC 4.2 required them to do the moment she told them she was represented by the undersigned.

This Court should not tolerate this pattern of bad faith and abuse. Sanctions are warranted under 28 U.S.C. § 1927 and this Court's inherent power to impose them.[2]

## II.  FACT STATEMENT

### A.   Mr. Saltz and Ms. Barnhart engaged in a Twitter spat in November 2020.

In November 2020, Mr. Saltz engaged in a Twitter spat with Ms. Barnhart. In response to Mr. Saltz's many tweets about this case and about Defendant Paulson, Ms. Barnhart posted a tweet questioning whether Mr. Saltz really was Plaintiffs' attorney in this case. She asked because she did not believe "real" attorneys try their cases on Twitter. Dkt. 43-1 at 61. Mr. Saltz responded by challenging Ms. Barnhart to meet him in his office in person to discuss her tweet,

---

[1] Defendants deny such a relationship was formed.

[2] Defendants will also seek sanctions under Rule 11, based on the same conduct. That filing is delayed by Rule 11's "safe harbor," permitting Plaintiffs to withdraw the offending filings before the motion is filed. Defendants are filing, herewith, a motion to shorten time on that safe harbor. They are filing this motion now because of Defendants' pending personal jurisdiction challenge which, if granted, will result in the dismissal of this case.

DEFENDANTS' MOTION FOR SANCTIONS - 2

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

and threatening that he would sue her over it. *Id.* at 211.[3] He has engaged in similar attacks on other women who questioned his Twitter activity related to this case, including threatening one that he would turn his "prosecutorial attention" to her because she had asked whether he was in fact the Westbrooks' attorney. *Id.* at 217.

**B.   Plaintiffs filed the Fulmer Declaration for the purpose of harassing Ms. Barnhart.**

On December 24, 2020, Plaintiffs filed their opposition to Defendants' motion to dismiss. Dkt. 27. They took that opportunity to harass Ms. Barnhart by revealing highly sensitive information about her—information that has no relevance whatsoever to this lawsuit or to Defendants' motion. They used the Declaration of Kim Fulmer as the vehicle for this harassment. *See* Dkt. 27-3. The ostensible purpose of that declaration was to support Plaintiffs' contention that Defendant Paulson knew she had a "Washington subscriber" to her YouTube channel, such that this Court could exercise personal jurisdiction over her. However, the actual purpose is revealed by the abusive, but otherwise irrelevant, contents of that declaration.

First, and most egregiously, Plaintiffs used the Fulmer declaration to expose an *eight-year-old* criminal charge that was brought against Ms. Barnhart, in an entirely unrelated matter. Dkt. 27-3 at ¶ 15. That charge was dismissed by the prosecutor, but Plaintiffs omitted that fact from the declaration. Second, Ms. Fulmer included a detailed account of *her* side of an eight-month-old Twitter fight she had with Ms. Barnhart. Ms. Fulmer told only her side of that story, and included a tweet from Ms. Barnhart in which she stated that she knew people in "biker gangs" who would defend her if she were attacked. Ms. Fulmer did not mention the abusive tweets to which Ms. Barnhart was responding. She "testified," with no credibility, that because of that tweet and the eight-year-old criminal charge, she was "afraid" that Ms. Barnhart—*and* Ms. Paulson—would physically harm her or her family. *Id.* at ¶ 15.[4] Finally, the Fulmer

---

[3] He posted that threat to her once, and then posted it again later that day, "tagging" other Twitter accounts to that posting, apparently to ensure it was widely read. *Id.* Mr. Saltz then repeated that taunting (and arguably threatening) invitation *again* in a tweet addressed to her on November 6, 2020. Dkt. 43-1 at 54.

[4] This testimony is not believable. *See* Dkt. 43-1 at 5 n.14.

DEFENDANTS' MOTION FOR SANCTIONS - 3

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1
2
Declaration exposed the entire work email address and direct phone number of the person
3
Plaintiffs believed to be Ms. Barnhart. Dkt. 27-3 at ¶ 10.[5]
4
5       Neither the eight-year-old, later-dismissed, criminal charge, nor the twitter exchange, has
6
7  *anything* to do with personal jurisdiction or this lawsuit. These could only have been included to
8
9  harass, intimidate, and punish Ms. Barnhart. Likewise, the inclusion of Ms. Barnhart's contact
10
11 information—not even partially redacted—was unnecessary to the ostensible purpose of the
12
13 Fulmer Declaration. It could only have been done to expose Ms. Barnhart to unwanted public
14
15 contact and to expose the inflammatory contents of the Fulmer Declaration to her employer.[6]

**C.      As Plaintiffs intended, the abusive Fulmer Declaration was broadcasted to a huge
         social media audience, causing Ms. Barnhart extreme embarrassment and anxiety.**

16
17       With respect to Plaintiffs' goal of harassing, threatening, and punishing Ms. Barnhart, the
18
19 Fulmer Declaration was a great success. As soon as it was filed, Mr. Saltz's social media friend
20
21 and ally Emily Baker "covered" it, line-by-line, on her YouTube channel.[7] She observed that
22
23 Plaintiffs had exposed embarrassing information about Ms. Barnhart in part because she had
24
25 "riled" Mr. Saltz in their November Twitter exchange.[8] That video has been viewed more than
26
27 150,000 times.
28
29       As Plaintiffs intended, this social media assault on Ms. Barnhart—which required only
30
31 the public broadcasting of Ms. Fulmer's abusive and irrelevant "testimony"—was extremely
32
33 upsetting to Ms. Barnhart. With respect to the exposure of the eight-year-old criminal charge, she
34
35 lamented: "The only thing I wanted to keep private they have spread all over the internet." Dkt.
36
37 43-1 at 47. In another email she explained despairingly: "Thousands of people hate me. There
38
39 are videos that will never go away and documents spread over the entire internet that will never
40
41 go away." Dkt. 52, Ex. C at 165. In yet another, she explained: "I've had personal information

---

[5] Plaintiffs had taken great care to protect *their* privacy by redacting contact information for themselves, and
42  even the names of their pets, from their public filings. Dkt. 27-2 at 26.
43     [6] It turned out that Plaintiffs were reckless in this aspect of their effort to harass Ms. Barnhart. The "Lori
   Barnhart" whose work contact information was publicly exposed is a different Lori Barnhart.
44     [7]  The video may be viewed at https://www.youtube.com/watch?v=FHiorAfp0oE (at 1:21:40 – 1:30).
45     [8]  *Id.* at 1:29:00 – 1:30:00.

DEFENDANTS' MOTION FOR SANCTIONS - 4

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

shared about me, videos made berating me, fearful for my kids and my grandkids safety, my

safety . . . had to deal with issues of incidents that happened 8 years ago . . ." *Id.* at 129.

**D.**    **Ms. Barnhart contacted the undersigned on December 24, 2020 to express her concern regarding the Fulmer Declaration, and an exchange of 150 emails and two phone calls ensued over the subsequent 18 days.**

Ms. Barnhart made contact with the undersigned via email on December 24, 2020. Dkt.

43-1 at 30. She explained she understood the undersigned was Ms. Paulson's attorney, and

stated: "I am writing to you because the opposing counsel [Michael Saltz] has been harassing

people including me on twitter and has brought me up in the recent filings." *Id.* She went on to

explain: "I have done nothing illegal here and this attorney [Mr. Saltz] took it upon himself to

dox me . . . in his latest filing which has been reviewed on YouTube by numerous people." *Id.*

That email began an extended conversation between Ms. Barnhart and the undersigned that

would span 18 days and include some 150 emails and two phone calls. *See generally* Dkt. 43-1,

Ex. B.

**E.**    **On January 1, 2021, Mr. Saltz sent a private message to Ms. Barnhart, threatening that she could be "in trouble" if she did not "cooperate" with him, but that he would "let her go" if she did as he instructed.**

In an attempt to escape the public harassment that ensued from the Fulmer Declaration,

Ms. Barnhart took steps to remove herself from social media. Mr. Saltz learned that Ms. Barnhart

had done this. On January 1, 2021, he also learned from a friend of Ms. Barnhart that Ms.

Barnhart was suffering health problems due to the filing of the Fulmer Declaration and ensuing

harassment. Dkt. 43-1 at 219. That friend pleaded with him to leave her alone: "You are causing

harm to her health. Please, I beg you, leave her out of this." *Id.* Instead of backing off, Mr. Saltz

responded by *intensifying* the intimidation. The same day he learned about her compromised

health, he sent several direct messages via Twitter to that same friend of Ms. Barnhart, asking

that she deliver to Ms. Barnhart, on his behalf, the following threat: Ms. Barnhart could "get into

trouble" if she did not "cooperate with us and tell us what she knows privately and voluntarily,"

but Mr. Saltz "wanted to avoid all that, find out what she knows, and *let her go*." Dkt. 43-1 at

DEFENDANTS' MOTION FOR SANCTIONS - 5

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

150-53. (emphasis added). On January 4—three days after sending this—Mr. Saltz filed a declaration in this Court, swearing that he had *not* sent Ms. Barnhart "any direct messages, let alone any messages of a harassing or threatening nature." Dkt. 30-1 at ¶ 8.

Not surprisingly, Ms. Barnhart took the January 1 messages the way they were intended, that is, as a threat. Dkt. 43-1 at 153, 146. She had removed herself from social media in an attempt to shield herself from the harassment Plaintiffs had instigated with the Fulmer Declaration. But now she was being threatened—by the architects of that very harassment—with legal liability for having done so. Plaintiffs had her in a vise, and were not yet finished closing it.

**F.     On January 4, 2021, Mr. Saltz filed his own declaration, asserting *as a fact* that Ms. Barnhart conspired with Ms. Paulson to "hide evidence."**

Mr. Saltz intensified his attack on Ms. Barnhart even more on January 4, 2021 when he filed his own declaration. The purpose of that declaration was to swear, under oath, that he had *personally* conducted an "investigation" and "was able to *determine*" that Ms. Barnhart had engaged in a "concerted effort" with Ms. Paulson to "hide . . . evidence of a known connection between Defendants and the person known to me as Lori Ann Barnhart." Dkt. 30-1 at ¶ 17 (emphasis added). Plaintiffs must have known that Mr. Saltz's "determination" had zero evidentiary value and would do nothing to advance their personal jurisdiction argument with this Court. But this Court was not the intended audience for Mr. Saltz's declaration. As Plaintiffs intended, his unfounded sworn determination of Ms. Barnhart's (and Ms. Paulson's) guilt was broadcasted to a huge social media audience.[9] And once again, the attack on Ms. Barnhart had its intended effect. She was angry, but also despondent over being targeted for such brutal attacks that she had done nothing to deserve. She explained in an email: "Everyone believes what he [Mr. Saltz] is saying about me. Over a million people know all about me." Dkt. 43-1 at 177. In another, she wrote: "I've already been tried and convicted." Dkt. 52, Ex. C at 167. Ms. Barnhart was convinced that she was going to be sued and thrown in jail simply because she exercised her

---

[9] The video can be found at: https://www.youtube.com/watch?v=YDmAcXloPpo.

DEFENDANTS' MOTION FOR SANCTIONS - 6

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

right to remove her information from social media. Dkt. 52, Ex. C at 145, 165. She wrote to the undersigned on January 5: "I hope a judge sees what they do to innocent people." Dkt. 43-1 at 53.

**G.      On January 6, 2021, Ms. Barnhart and the undersigned prepared the First Barnhart Declaration which, after two revisions, she was eager to sign before the undersigned decided to delay that filing.**

Ms. Barnhart and the undersigned had discussed the possibility of submitting a declaration from her describing the abusiveness of the Fulmer Declaration, Mr. Saltz's threatening messages, his baseless accusations in his "declaration," and the very limited nature of her relationship with Ms. Paulson. She was understandably of two minds about this. On the one hand, she feared it could provoke even more abuse from Plaintiffs. On the other, she wanted to do *something* to defend herself and make it stop. Declaration of Michael Brown In Support of Motion for Sanctions ("Brown Decl."), ¶ 6. On January 5, 2021, she agreed to proceed with the First Barnhart Declaration. Dkt. 43-1 at 55.

That day, *entirely on her own*, she prepared and sent to the undersigned a lengthy "statement" describing her involvement (non-involvement) in this lawsuit, her very limited relationship with Ms. Paulson, her Twitter exchange with Mr. Saltz in November 2020, and the abuse she had received after the Fulmer Declaration was filed. *Id.* at 56-62. The undersigned used that to prepare a draft declaration, which he sent to Ms. Barnhart at 1:30 p.m. on the morning of January 6, 2021, cautioning her to review it carefully and *not* to assume it was accurate. *Id.* at 83-87. Ms. Barnhart reviewed and suggested edits to that draft. *Id.* at 88. After an exchange of several more emails, the undersigned prepared a second draft to include her edits and additional changes and sent it to Ms. Barnhart, again cautioning her to read it carefully and propose changes. *Id.* at 89-97, 98-103. Ms. Barnhart reviewed and suggested a correction to this version, and then at 6:16 p.m. she emailed the undersigned to ask if he had sent the final version for her to sign. *Id.* at 116, 204. Two minutes later, the undersigned emailed the final version to Ms. Barnhart. *Id.* at 117. Because she did not have a scanner at her home, she proposed different

DEFENDANTS' MOTION FOR SANCTIONS - 7

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

ways she could sign and return a signature page. She offered to drive to a local store where they had a scanner. She proposed having a friend of hers email it to the undersigned. She proposed using a signature app on her phone, but realized it required her to print the signature page and her printer was out of ink, so she offered to drive to a store to purchase an ink refill that evening. *Id.* at 107-110, 124-28.

At 6:29 p.m. the undersigned emailed Ms. Barnhart to explain that he thought it best not to file her declaration that evening. *Id.* at 126. Her response was: "Okay whatever you want to do. Walmart is just 10 minutes from me and I don't work so I'm up all night." *Id.* at 129. She then asked if she would need legal sized paper for the print/scan. *Id.* at 130. Over the next 24 hours, Ms. Barnhart continued to offer additional information for the First Barnhart Declaration and answer the undersigned's questions. *Id.* at 132-44.

**H.    Beginning on the evening of January 7, Ms. Barnhart's anxiety seemed to worsen as her emails began to focus on Plaintiffs' effort to subpoena her.**

On the evening of January 7, the focus of the emails between the undersigned and Ms. Barnhart shifted to the topic of Plaintiffs' effort to subpoena her emails and social media records. Ms. Barnhart's anger and anxiety worsened at the prospect of responding to a subpoena. *See* Dkt. 52, Ex. C at 129. She was very worried that, as Mr. Saltz had explicitly threatened, she would "get in trouble" for having removed information about herself from social media. She was convinced that Mr. Saltz's abusive conduct towards her "won't stop," and she became convinced that what he was doing to her must be "legal" because he is "a successful high powered attorney that wins all his cases." Dkt. 43-1 at *Id.* at 155, 177-78. She became concerned that she would be added as a defendant to this lawsuit because of the "biker gang" tweet referenced in the Fulmer Declaration: "They have used me to be the violent one. Since I lashed out and said those comments." *Id.* at 183-84. By January 11, Ms. Barnhart's emails began to seem somewhat confused, and her tone more despairing. Dkt. 52, Ex. C. She even worried she would be put in jail over this, but stated that jail would be better than the torment she had been subjected to. *Id.*

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

**I.   On January 12, 2021, Ms. Barnhart contacted Plaintiffs' counsel, who proceeded to interview her for 11 hours and review her emails with the undersigned, despite her telling them she was represented by the undersigned.**

Ms. Barnhart called Plaintiffs' counsel on January 12, 2021. By Plaintiffs' counsel's own admission, when she called them, she explained that she believed she was represented by the undersigned in connection with this lawsuit. Brown Decl., ¶ 3. Nevertheless, Plaintiffs' counsel did not contact the undersigned. Instead, by their own admission (indeed, their *boasting* on Twitter), they immediately proceeded to: (1) "interview" Ms. Barnhart for "11 hours" with respect to her involvement in this case, and her communications with the undersigned; and (2) review all of her emails with the undersigned, as well as her social media accounts. *See* Dkt. 43-1 at 28; Brown Decl., ¶ 3.

**J.   Plaintiffs' counsel proceeded to prepare and procure Ms. Barnhart's signature to a Second Declaration, which contradicts almost *every* material aspect of the story she told the undersigned and the First Barnhart Declaration.**

After their 11-hour interview with a person they understood to be represented by opposing counsel, Plaintiffs' counsel hurriedly prepared and procured Ms. Barnhart's signature to the Second Declaration. Remarkably, they later explained that Ms. Barnhart told them she was often "confused," had "foggy" thinking and poor memory, was taking medication for a mental health issue that interfered with her memory and thinking, and was experiencing a great deal of anxiety, which exacerbated these symptoms. Brown Decl., ¶ 4. Indeed, Plaintiffs' counsel explained that they had to rush to complete the interview and secure her signature to the declaration *because* she had told them she had taken medication for anxiety that interfered with her ability to think and remember clearly. *Id.* ¶ 5. The Second Barnhart Declaration directly contradicts the First Barnhart Declaration, and the emails between Ms. Barnhart and the undersigned, in almost every material respect. Having secured what he wanted from Ms. Barnhart, that evening Mr. Saltz took to Twitter to "thank" Ms. Barnhart and call her—the same woman he had eight days earlier publicly accused of conspiring to hide evidence—a "class act." Dkt. 43-1 at 221.

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

### III.  ARGUMENT

**A.   Standards Governing Sanctions Section 1927 and Court's Inherent Power.**

"28 U.S.C. § 1927 provides that the Court may order '[a]ny attorney or other person admitted to conduct cases ... who so multiplies the proceedings in any case unreasonably and vexatiously ... to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Personalize, Inc. v. Magnetize Consultants Ltd.*, 2020 WL 2512906 at *2 (W.D. Wash. May 15, 2020) (Rothstein, J.). Where ordered, "these sanctions must be accompanied by a finding that the sanctioned attorney 'acted recklessly or in bad faith' or committed intentional misconduct." *Id.* (quoting *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir. 1982); *see also Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) ("recklessness suffices for § 1927"); *In re Girardi*, 611 F.3d 1127, 1061 (9th Cir. 2010) ("[W]hat is clear from our case law is that a finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927.").[10]

This Court's "inherent power" to sanction misconduct "extends to a full range of litigation abuses" and "willful improper conduct," and is not limited to abusive court filings. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (citations omitted). An award of sanctions under the Court's inherent power requires that the litigant have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Id.* "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous." *Id.* at 992-93. Rather, "sanctions are justified when a party acts *for an improper purpose*-even if the act consists of making a truthful statement or a non-frivolous argument or objection." *Id.* (citing *In re Itel Securities Litigation,* 791 F.2d 672 (9th Cir.1986) (emphasis in original). Reckless conduct, undertaken for an improper purpose, satisfies the "bad faith" requirement under the Court's inherent power. *Id.* at 993.

---

[10]   Ninth Circuit panel adopting recommendation of Judge Wallace Tashima, acting as Special Master.

DEFENDANTS' MOTION FOR SANCTIONS - 10

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

**B.**     **The course of conduct outlined above warrants sanctions.**

  **1.**     **The Fulmer Declaration was filed "for an improper purpose."**

  As explained above, Plaintiffs decided to publicly expose extremely sensitive and highly embarrassing information regarding Ms. Barnhart in the Fulmer Declaration without any legitimate need to support their personal jurisdiction argument. First, Ms. Barnhart's May 2020 Twitter exchange with Ms. Fulmer has *nothing* to do with personal jurisdiction or with the merits of this lawsuit. Second, the fact that Ms. Barnhart was charged with a crime in Washington in 2012, ***seven years*** before the events giving rise to this lawsuit took place, in a matter totally unrelated to this dispute, does *nothing* to establish personal jurisdiction over defendants. Third, while the "fact" that Ms. Barnhart works for the Washington Department of Transportation may help prove she resides in Washington, there was no need to include full email and direct telephone contact information in order to establish that "fact."

  **2.**     **Mr. Saltz's threats to Ms. Barnhart warrant sanctions, as does his subsequent sworn denial.**

  Mr. Saltz acted "for oppressive reasons" and an "improper purpose" when, on January 1, he delivered to Ms. Barnhart the message that she could be "in trouble" for removing her own information from social media, but that she could "avoid all that" and he would "let her go" if she would cooperate and speak with him "privately and voluntarily." *See Somers v. Digital Realty Trust Inc.*, 2017 WL 3623728, at *2 (N.D. Cal. July 13, 2017) (court's inherent powers authorize it to sanction a party for sending an email to a witness threatening to sue her but stating that "[t]hings will only get better when you are honest about your guilt").[11] Also sanctionable is Mr. Saltz's January 4, 2021 sworn testimony that he never "sent [Ms. Barnhart] any direct messages, let alone any messages of a harassing or threatening nature." Dkt. 30-1 ¶ 8. The first part of the statement is misleading: Mr. Saltz sent his message through an intermediary. The

---

[11] The abusive nature of this threat is compounded by the fact that: (1) there was no legitimate basis to suggest Ms. Barnhart had done *anything* to get "in trouble"; (2) Mr. Saltz delivered this threat immediately *after* learning that Ms. Barnhart was in an especially vulnerable condition.

DEFENDANTS' MOTION FOR SANCTIONS - 11

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

second part is simply false: the messages are clearly a threat, that she could "get in trouble" if she did not do as instructed. Ms. Barnhart took them as a threat, describing them as "[m]ore threats directed at me," and as "basically telling me to cooperate or else." Dkt. 43-1 at 153, 146.

### 3. Mr. Saltz's January 4 declaration was intended to increase the harassment and intimidation of Ms. Barnhart.

Mr. Saltz's testimony—that he "determined" Ms. Barnhart and Ms. Paulson engaged in a conspiracy to "hide evidence"—was entirely baseless. He certainly knew that this Court would give no weight to his private "investigation" or his "determination" of Ms. Barnhart's and Ms. Paulson's guilt of this crime. But he also knew his social media audience would take it as strong, even conclusive, evidence, and that it would only exacerbate the public vitriol against Ms. Barnhart (and Ms. Paulson), and cause Ms. Barnhart—whom he already knew to be suffering health effects because of the social media assault he engineered—to suffer even more. *See Nieman v. Grange Mut. Ins. Co.*, 2012 WL 3779090, at *2 (C.D. Ill. Aug. 31, 2012) ("It is a very serious matter to accuse a witness of committing perjury or related crimes.").

### 4. Plaintiffs' counsel should be sanctioned for interviewing Ms. Barnhart and reviewing her emails after she told them she was represented by counsel.

RPC 4.2 is clear: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." The rule "applies even though the person represented by a lawyer initiates or consents to the communication." *Id.*, Comment [3]. "A lawyer must *immediately terminate communication* with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this Rule." *Id.* (emphasis added).[12] But by Plaintiffs' counsel's own admission, Ms. Barnhart *told them* she was represented by the undersigned in relation to this case. Yet they made no effort to contact the undersigned. Instead, in the space of one day after their initial contact with her, they proceeded to: (1) interview her for

---

[12] The California version of RPC 4.2 is nearly identical.

DEFENDANTS' MOTION FOR SANCTIONS - 12

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

11 hours; (2) review all of her 150 emails with the undersigned, and obtain from her full access to her social media accounts; (3) prepare a declaration that contradicted what they had just reviewed; (4) secure her sworn oath to it; (5) file it; and (6) promote its broadcast to a massive social media audience. Defendants disagree that the undersigned acted as Ms. Barnhart's attorney.[13] But Plaintiffs' counsel's *intent* to violate this important rule, in aggravated and dramatic fashion, will remain, whatever the Court decides on that issue.

### 5.   Plaintiffs should be sanctioned for procuring testimony that was demonstrably false, obviously unreliable, and highly prejudicial.

#### a.   Plaintiffs' counsel had clear notice that the testimony they procured was false in part and highly unreliable in the remainder.

The testimony Plaintiffs' counsel procured in the Second Barnhart Declaration reads like a mirror- image recantation of the First Barnhart Declaration. It is also clearly contradicted by the 18-day, 150- email record of communications between the undersigned and Ms. Barnhart. Plaintiffs deliberately withheld those emails when they filed the Second Barnhart Declaration, despite the fact that they purported to characterize them in that very document. Dkt. 38-1 at ¶ 21 n.2. They offered frivolous excuses for this tactic: (1) attorney-client privilege, which obviously is waived when the putative client uses the emails to attack the putative attorney; and (2) Ms. Barnhart's health-related privacy interest, when *not one* of the nine emails characterized in the declaration contains *one iota* of health information. Brown Decl., ¶ 7 & Ex. A.

The numerous contradictions between the Second Barnhart Declaration on the one hand, and the email record and First Barnhart Declaration on the other, are summarized in the table attached as Exhibit E to the Brown Declaration, and are explained in more detail in Docket 43-1 at ¶¶ 23-50. These contradictions are critical in part because they fatally undermine the credibility of the Second Barnhart Declaration. But the real damage wrought by the Barnhart Declaration—as with Plaintiffs' other abusive declarations filed before and after it—took place outside the Court. Plaintiffs' filing was *extremely* effective in accomplishing the goal of publicly

---

[13] This matter will be addressed in a separate filing.

DEFENDANTS' MOTION FOR SANCTIONS - 13

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

smearing Ms. Paulson, and in this instance the undersigned as well, with false allegations of: (1) perjury by Ms. Paulson; and (2) multiple serious ethics violations by the undersigned.

Plaintiffs' actual motivation for filing this declaration is revealed by how precisely they coordinated that filing with their social media campaign. At 5:01 p.m. on January 13, Mr. Saltz primed the social media audience by posting a tweet saying: "Thank you Lori Ann [Barnhart]. You are a class act." Dkt. 43-1 at 221. That tweet got the immediate attention Mr. Saltz wanted; his audience knew he had been publicly smearing and harassing her since at least December 24. *One minute* after that promotional tweet, Plaintiffs filed the Second Barnhart Declaration. Mr. Saltz's social media friend and ally, Emily Baker, immediately did a two-hour video "covering" that filing, with near perfect credulity, to an audience that has now reached over 110,000 views.

### b.   Plaintiffs' explanation of their conduct only highlights their bad faith.

During the parties' meet-and-confer regarding this motion, the undersigned asked Plaintiffs' counsel why they would procure testimony from a witness that was so flatly contradicted by her own emails and the declaration she was eager to sign one week earlier. Their answer was astounding. They argued that Ms. Barnhart told them she is easily "confused," has a poor memory, and suffers from "foggy" thinking, especially when she is under unusual stress and is taking a certain medication, as she had been during the prior several weeks (since the Fulmer Declaration was filed). This, they insisted, explained why she told the undersigned a false story over 18 days and 77 emails and two telephone calls, and was eager to sign a declaration on January 6 that reflected that consistent story.

The undersigned then asked the obvious question: If Ms. Barnhart told Plaintiffs' counsel she suffers from foggy thinking, poor memory, and confusion, such that she was incapable of telling an accurate story during the undersigned's 18 days of communication with her from December 24 through January 11, why would they believe the account she provided to *them* on January 12? Their answer: Ms. Barnhart seemed "clear-headed" to them (on the phone) while she was telling them the story they wanted to hear. Also, they assured the undersigned that, while

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

Ms. Barnhart told them she had taken medication that makes her unable to concentrate, think clearly and remember things, they rushed to complete their interview and get her signature on the Second Barnhart Declaration before those side effects took hold. Brown Decl., ¶ 5.

This "explanation" only confirms the recklessness and bad faith of Plaintiffs' counsel's conduct. Reasonable attorneys, acting in good faith, would not have procured such testimony from a self-described impaired witness, who contacted them after their three-week campaign of harassment and threats, was desperate for that campaign to stop, and was telling them a story that was flatly contradicted by numerous recent written communications and by a declaration that the same witness helped prepare and was eager to sign one week earlier. Nor would a reasonable attorney, acting in good faith, believe that: (1) Ms. Barnhart's condition and/or medication rendered unreliable the story she told the undersigned, during an exchange of 150 emails over an 18-day period, and was eager to swear to on January 6; but (2) she suddenly *became* reliable when she started telling them the contradictory story that suited their clients' interests.

## C.   Sanctions should include an award of attorney's fees.

In addition to any other sanction the Court deems appropriate, it should award sanctions in the form of attorney's fees under Section 1927 and its inherent power. *Fink*, 239 F.3d at 991; *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012). Defendants have been forced to incur substantial attorney's fees to respond to the false and defamatory testimony in the Second Barnhart Declaration, directed at Ms. Paulson and at the undersigned. The multiplication of these proceedings, and the driving up of Defendants' attorney's fees, is no doubt part of Plaintiffs' motivation in making these abusive filings. To date, Defendants have incurred $18,855 in attorney's fees responding to the Barnhart Declaration (see Dkts. 43, 43-1, 43-2, 52, 53) and preparing this motion. Brown Decl., ¶¶ 8, 9.

## IV.  CONCLUSION

Defendants respectfully ask the Court to sanction Plaintiffs' counsel for their abusive conduct. Counsel for the parties conferred with respect to this motion on January 27, 2021.

DEFENDANTS' MOTION FOR SANCTIONS - 15

GORDON TILDEN THOMAS CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

DATED this 10th day of February, 2021.

**GORDON TILDEN THOMAS & CORDELL** LLP
Attorneys for Defendants

By     s/ *Michael P. Brown*
Michael P.  Brown, WSBA #45618
600 University Street, Suite 2915
Seattle, Washington 98101
206.467.6477
mbrown@gordontilden.com

DEFENDANTS' MOTION FOR SANCTIONS - 16

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477