UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TATIANA WESTBROOK, an individual; JAMES WESTBROOK, an individual; HALO BEAUTY PARTNERS, LLC, a Nevada Limited Liability Company,<br><br>    Plaintiffs,<br><br>  v.<br><br>KATIE JOY PAULSON, an individual; WITHOUT A CRYSTAL BALL, LLC, a Minnesota Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>    Defendants. | NO.  2:20-cv-01606 BJR<br><br>DECLARATION OF MICHAEL P. BROWN IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS |

Michael P. Brown declares as follows:

1. I am a lawyer with Gordon Tilden Thomas & Cordell LLP, counsel for Defendants in this matter.  I make this declaration based on personal knowledge and my familiarity with the proceedings in this matter.

2. On January 27, 2021, I and my colleague, Miles Bludorn, engaged in a meet-and-confer telephone call with Plaintiffs' counsel, Mr. Saltz, Ms. Levine, and Mr. Bilanko regarding this motion and several other matters.

DECLARATION OF MICHAEL P. BROWN IN SUPPORT
OF MOTION FOR SANCTIONS - 1

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

3.     During that call, Plaintiffs' counsel confirmed that Ms. Barnhart had told them, when she called them on January 12, 2021, that she was represented by me in relation to this lawsuit.  They also confirmed that she had given them access to her social media accounts and emails with me and that they had reviewed those emails.

4.     I asked Plaintiffs' counsel why they procured sworn testimony from a witness that was so flatly contradicted by a massive written record of emails and the First Declaration Ms. Barnhart was eager to sign just one week earlier.  They explained that Ms. Barnhart told them she is easily "confused," has a poor memory, and suffers from "foggy" thinking, especially when she is under unusual stress and anxiety, and is taking a certain medication, as she had been during the prior several weeks (since the Fulmer Declaration was filed).  This, they insisted, explained why she told the undersigned a fake story over a period of 18 days and 150 exchanged emails and two telephone calls, and was eager to sign a declaration on January 6 (the First Declaration) that reflected that consistent story.

5.     The undersigned then asked the obvious question: If Ms. Barnhart told Plaintiffs' counsel she suffers from foggy thinking, poor memory, and confusion, why would they believe the *second* story she told—the testimony that suited their clients' interests—and not the first? Their answer: Ms. Barnhart seemed "clear-headed" to them (on the phone) while she was telling them the story they wanted to hear.  Also, they explained that Ms. Barnhart told them her medication makes her unable to concentrate and remember things, so after she told them she had taken her medication, they rushed to complete their interview and get her signature on the Second Declaration before those side effects took effect.  Ms. Barnhart was also in a hurry, they explained, because all she wanted was to get herself freed from the harm her involvement in this lawsuit was causing her.

6.     Ms. Barnhart and the undersigned discussed the possibility of submitting a declaration from her describing the abusiveness of the Fulmer Declaration, Mr. Saltz's threatening messages, his baseless accusations in his "declaration," and the very limited nature of

DECLARATION OF MICHAEL P. BROWN IN SUPPORT
OF MOTION FOR SANCTIONS - 2

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

her relationship with Ms. Paulson. She was of two minds about this. On the one hand, she feared it could provoke even more abuse from Plaintiffs; on the other, she wanted to do something to defend herself and make it stop. She ultimately decided she wanted to proceed with the filing.

7.     In the Second Barnhart Declaration, Plaintiffs attempt to excuse their withholding of the emails that they mischaracterize in the declaration, in part by claiming they contain "private information about [Ms. Barnhart's] mental health." Dkt. 38-1 ¶ 21 n.2. This is simply false. Attached as **Exhibit A** are true and correct copies of every one of the nine emails that are characterized (mostly *mis*characterized) in the declaration. Not one contains one word about Ms. Barnhart's mental health. As the Court is aware, Defendants have taken steps to file under seal those relatively small number of emails that *did* include such sensitive information. Dkts. 52, 53.

8.     Defendants request a fee award for 41.9 hours I spent:

(a)     responding to the Second Barnhart Declaration by preparing Dkt. 43 (Praecipe); Dkt. 43-1 (Supplemental Brown Declaration (26 pages and 195 pages of exhibits)); Dkt. 43-2 (Second Supplemental Paulson Declaration); Dkt. 52 (Stipulated Motion to Seal); Dkt. 53 (Declaration filed under seal); and

(b)     preparing this motion and supporting declaration.

The 41.9 hours includes tasks related to these filings, such as research, conference with opposing counsel, and communications with my client. It reflects my review and reduction of my entries based on billing judgment. I have also excluded time entries for associate attorneys and paralegals. For entries for communications with my client, I have included only 33% of the time because the communications pertained to several pending issues (including responding to the Natalie Kennett Declaration and counsel's public accusations of criminal hacking by

---

DECLARATION OF MICHAEL P. BROWN IN SUPPORT
OF MOTION FOR SANCTIONS - 3

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Ms. Paulson, preparing for the February 2, 2021, status conference, communications with the FBI, *etc*.). Attached as **Exhibit B** is a true and correct (redacted) copy of the relevant invoices.

9. My standard hourly rate is $450, which I believe is reasonable for an attorney of my experience and credentials in the Seattle market. I graduated Order of the Coif from U.C. Davis School of Law in 1995. I clerked for the United States District Court for the Eastern District of California from 1995 to 1996, and then for the Chief Judge of the United States Court of Appeals for the Ninth Circuit from 1996 to 1997. Since 1998 I have practiced civil and complex commercial litigation in San Francisco, California, from 1998 through 2010, and in Seattle since 2010. I am currently a partner at Gordon Tilden Thomas & Cordell LLP. Attached as **Exhibit C** is a true and correct copy of an October 9, 2020, Order of the King County Superior Court finding that the rate charged by my partner Kasey Huebner—$475 per hour—is reasonable for the Seattle market. Ms. Huebner is a 2002 law school graduate. Attached as **Exhibit D** is a true and correct copy of a July 26, 2020, Order of the Pierce County Superior Court finding that the following rates charged by my partners were reasonable based on the Seattle-area market: Jeffrey Thomas (Class of 1991 - $525 per hour) and Mark Wilner (Class of 2001 - $495 per hour).

10. Attached as **Exhibit E** is a table comparing the material testimony in Ms. Barnhart's Second Declaration—which she signed for Plaintiffs on January 13, 2021—with: (1) the First Barnhart Declaration she was eager to sign on January 6, 2021; and (2) the numerous emails and two phone calls between myself and Ms. Barnhart between December 24, 2020, and January 11, 2021.

/ / / / /

/ / / /

/ / /

/ /

/

DECLARATION OF MICHAEL P. BROWN IN SUPPORT
OF MOTION FOR SANCTIONS - 4

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

I declare pursuant to the laws of perjury of the United States of America that the foregoing factual assertions are true and correct to the best of my knowledge.

DATED this 10th day of February, 2021, at Seattle, Washington.

Michael P. Brown, WSBA #45618

DECLARATION OF MICHAEL P. BROWN IN SUPPORT
OF MOTION FOR SANCTIONS - 5

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*Exhibit A*

# Email characterized at Dkt. 38-1 ¶ 21.

## RE: Lori



**Michael P. Brown**

To ○ Sue M

↩ Reply    ↩ Reply All    → Forward    •••

Wed 12/30/2020 5:56 PM

I spoke with Saltz today. They are planning to subpoena your Twitter account because they see that you closed your account and they think there might be evidence there about your connection to Katie. I did not disclose that you and I are in touch. Saltz even complained to me that you "threatened" him via DM.

Let me know if you want to talk about this.

**Michael P. Brown**

Gordon Tilden Thomas & Cordell LLP
One Union Square
600 University Street, Suite 2915
Seattle, Washington 98101
**t:** 206.467.6477   **d:** 206.805.3162
**w:** gordontilden.com



# Email characterized at Dkt. 38-1 ¶ 22.

----- Original Message -----

From: Michael P. Brown
To:          @comcast.net
Sent: December 24, 2020 at 3:38 PM
Subject: RE: Lori Barnhart

Hello Lori. What the Westbrooks did to you with this filing is shameful. The only "legitimate" point they could have been trying to make is that Katie has some connection to a person who lives in Washington. They could have done that without exposing your full name, or email address and phone number, or other background facts – all of that is totally irrelevant. It seems clear to me that the only purpose was to harass and intimidate you and anyone else who dares to say anything in support of Katie.

Unfortunately, I don't know if there is much we can do about it, other than to bring it to the Court's attention and object to it on your behalf. There is an attorney ethics rule saying a lawyer cannot use the legal system to harass or intimidate, and this filing seems to violate that rule.  You can sign a statement that we can file, if you'd like, explaining what the filing has done to you and your family. You could also consider filing a complaint with the bar associations of Washington and California. That process moves very slowly, so it would not give you any quick relief.

Is there anything in there that is factually incorrect?

**Michael P. Brown**

Gordon Tilden Thomas & Cordell LLP
One Union Square
600 University Street, Suite 2915
Seattle, Washington 98101
**t:** 206.467.6477   **d:** 206.805.3162
**w:** gordontilden.com

# Emails characterized at Dkt. 38-1 ¶ 23.



### RE: Membership

**MP** Michael P. Brown
To ◯ B Lori

Reply | Reply All | Forward | ...
Wed 1/6/2021 6:18 PM

📄 Barnhart Decl.docx
92 KB

No. Here it is. I made the signature page a separate page so you don't need to re-sign if we need to make tweaks. Of course I will not make any changes without you reviewing them.

**Michael P. Brown**

Gordon Tilden Thomas & Cordell LLP
One Union Square
600 University Street, Suite 2915
Seattle, Washington 98101
t: 206.467.6477  d: 206.805.3162
w: gordontilden.com

GORDON TILDEN THOMAS CORDELL | GTTC



### RE: Screenshots

**MP** Michael P. Brown
To ◯ B Lori

Reply | Reply All | Forward | ...
Thu 1/7/2021 6:11 PM

Thanks.

FYI I'm told they will be serving a subpoena on you tomorrow. I assume they have figured out your address.

**Michael P. Brown**

Gordon Tilden Thomas & Cordell LLP
One Union Square
600 University Street, Suite 2915
Seattle, Washington 98101
t: 206.467.6477  d: 206.805.3162
w: gordontilden.com

GORDON TILDEN THOMAS CORDELL | GTTC

## Re: I'm so angry



**B Lo** ⬤gmail.com>
To ✅ Michael P. Brown

↩ Reply    ↩↩ Reply All    → Forward    ⋯

Fri 1/8/2021 5:35 PM

ⓘ You replied to this message on 1/8/2021 5:41 PM.

I guess I can just call him and authorize YouTube and twitter to give him all of it. I am caught in the middle. I used to volunteer for Snohomish county legal services maybe they can help me.

---

## RE: I'm so angry

**Michael P. Brown**
To ⚪ B Lori

↩ Reply    ↩↩ Reply All    → Forward    ⋯

Fri 1/8/2021 9:38 AM

FYI, here's how the process plays out once you actually get the subpoena served on you formally:

1. You have 14 days to "object" to the subpoena. I might object on behalf of Katie also.
2. After that, you have no obligation to respond to it unless or until they go to court and convince it that you should be subjected to the burden of responding. That process will take a while. If the court decides you should respond, you will not be "in trouble" for not responding earlier. It just means you have to respond within a certain time after that court ruling.

You should not destroy any evidence related to this case or Saltz etc., now that you know it is going to be subpoenaed.

**Michael P. Brown**

Gordon Tilden Thomas & Cordell LLP
One Union Square
600 University Street, Suite 2915
Seattle, Washington 98101
**t:** 206.467.6477   **d:** 206.805.3162
**w:** gordontilden.com

GORDON
TILDEN
THOMAS   GTTC
CORDELL

# Email characterized at Dkt. 38-1 ¶ 24.



## RE: Checking in

**MP** Michael P. Brown
To ○ Kara V

Reply | Reply All | Forward | ···

Sun 1/10/2021 6:13 PM

I understand. I am preparing something to file tomorrow that addresses what they did to you, but does not require you to file any statement if you don't want to. I want the court to know what he's doing to harass you. I can't guarantee that the judge will do anything about it, but I want to try. His behavior is disgusting.

Please understand that, based on what you and Katie have told me, you have done **nothing** illegal. Also, the only issue in the case that you have any connection to (personal jurisdiction) is going to be decided soon, and you will no longer need to be involved in any way in this lawsuit.

I recommend that you sit tight, accept service if they come to your door, and then we can take it form there. You are not in any trouble.

**Michael P. Brown**

Gordon Tilden Thomas & Cordell LLP
One Union Square
600 University Street, Suite 2915
Seattle, Washington 98101
**t:** 206.467.6477   **d:** 206.805.3162
**w:** gordontilden.com

GORDON
TILDEN
THOMAS   GTTC
CORDELL

# Email characterized at Dkt. 38-1 ¶ 25



### Re: Checking in

**MP** Michael P. Brown
To ○ Kara V

Reply | Reply All | Forward | •••

Mon 1/11/2021 9:10 AM

I don't see anything that would get you in legal trouble. You don't need to spend money or hire a lawyer to respond to the subpoena or file a declaration.

I'd like to stand up for you by filing your declaration if you'd let me. It costs you nothing.

Get Outlook for iOS

# Email characterized at Dkt. 38-1 ¶ 27

RE:



**Michael P. Brown**
To ○ Kara V

Reply | Reply All | Forward | ···

Mon 1/11/2021 8:02 AM

ⓘ This message was sent with High importance.

Can you please talk with me before you do anything? I think there has been some misunderstanding and I'd like to have a chance to clear it up. We will be filing an objection today to Saltz's latest "declaration" and I'd like to include a statement from you if you are on board with that.

**Michael P. Brown**

Gordon Tilden Thomas & Cordell LLP
One Union Square
600 University Street, Suite 2915
Seattle, Washington 98101
t: 206.467.6477   d: 206.805.3162
w: gordontilden.com



*Exhibit B*

February 10, 2021

Prebill#     60476     SCC
Without a Crystal Ball Our file#    003118    00001
Katherine Paulson Billing through     01/31/2021

Paulson adv. Westbrook & Halo Beauty Partners

| | | |
|---|---|---|
| 01/13/2021 | MPB | Emails with client (.5); telephone call with client (.3); review Barnhart declaration (1.2); research regarding evidentiary objections (1.2); review email correspondence with L. Barnhart (.5); |
| 01/14/2021 | MPB | Emails with client (1.0); research for response to Barnhart declaration (1.0); |
| 01/15/2021 | MPB | Emails with client (.4); emails with M. Bludorn regarding praecipe research (.3); prepare response to Barnhart declaration (4.8); |

01/16/2021     MPB                                                    emails
               with client (.4); research regarding
               filing under seal (.5); prepare
               response to Barnhart declaration
               (2.5);

01/18/2021     MPB

01/19/2021     MPB

                                              prepare response to
               Barnhart declaration (3.5); emails
               with client (.4);

01/20/2021     MPB     Prepare response to Barnhart
                       declaration (3.5); emails with client
                       (.2);

01/21/2021     MPB     Prepare/revise response to Barnhart
                       declaration (1.8);

                       emails with client (.4); emails
                       regarding meet and confer (.3);

01/22/2021     MPB     Prepare for and attend meet and
                       confer (1.2); prepare and revise
                       response to Barnhart declaration
                       (4.8);

                       emails with client (.4);

01/23/2021     MPB     Emails with client (.2);

01/25/2021   MPB     Send meet and confer demand (.1);

01/27/2021   MPB     Meet and confer regarding sanctions
                     motions (1.0); emails and telephone
                     call with M. Bludorn (.4); prepare
                     sanctions motions (1.8);

| | | |
|---|---|---|
| 01/30/2021 | MPB | Revise and file motion to seal, declaration, and praecipe (1.5); emails with client and opposing counsel (.3) |
| 01/31/2021 | MPB | Prepare sanctions motions (1.6); |

February 10, 2021

Prebill#    60478        SCC
Our file#    003118      00001
Billing through              02/09/2021

Without a Crystal Ball
Katherine Paulson
9917 Jasmine Avenue NE
Hanover, MN  55341

Paulson adv. Westbrook & Halo Beauty Partners

_____

## PROFESSIONAL SERVICES

| | | | |
|---|---|---|---|
| 02/08/2021 | MPB | Prepare sanctions motion; | 5.00 hrs |

02/09/2021    MPB    Revise sanctions motion (2.5);
                     prepare Brown Declaration (1.5);
                     emails with client regarding same (.2)

_____

*Exhibit C*

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| SEATTLE ZEPHYR INC., a Washington corporation, | NO. 19-2-24185-3 KNT |
| Plaintiff, | ORDER GRANTING SEATTLE ZEPHYR INC.'S MOTION FOR ATTORNEY FEES |
| v. | |
| TRUCK INSURANCE EXCHANGE, a foreign insurance company; JERRY HALLMAN INSURANCE AGENCY, INC., a Washington corporation; and CHRISTINA LEW, an individual residing in Washington, | |
| Defendants. | |

Seattle Zephyr requests attorneys fees and costs for successfully bringing a motion to compel. The Court GRANTS Seattle Zephyr's Motion. In ruling on this Motion, the Court considered all of the briefing and declarations provided by the parties related to this Motion.

Before addressing the merits, the Court will take a slight detour to address Truck's concern regarding "[n]ew or additional information" provided in Seattle Zephyr's Reply. While labelled as a Surreply, the Court construes Truck's reply as a motion to strike portions of Seattle Zephyr's Reply. The Court denies the motion to strike because the information provided by Seattle Zephyr

**Judge Michael K. Ryan**
Maleng Regional Justice Center
401 Fourth Avenue North
Kent, WA 98032
(206) 477-4936



was in direct response to legal and factual arguments made by Truck in its opposition. The Court

finds that nothing in Seattle Zephyr's Reply constitutes new or additional information, but rather

only a proper response to the arguments made by Truck.

In determining an award of attorneys' fee, there are two relevant inquiries: (1) whether the

prevailing party is entitled to such fees; and, (2) whether the amount requested is reasonable. *Baker*

*v. Fireman's Fund. Ins. Co.*, 5 Wn. App.2d 604, 613, 428 P.3d 155 (2018). All parties agree that

CR 37(a)(4) provides Seattle Zephyr's legal entitlement to attorneys' fees.

CR37(a)(4) provides that if a motion to compel is "granted, the court shall, after an

opportunity for a hearing, require" the non-prevailing party to pay "reasonable expenses incurred

in obtaining the order, including attorney fees, unless the court finds that the opposition to the

motion was substantially justified or that other circumstances make an award of expenses unjust."

Truck argues that given the fact-specific nature of determining whether work product privilege

applies to certain documents, and the lack of clarity in the distinction between attorney client

privilege and work product in *Cedell v. Farmers, Ins. Co.*, 176 Wn.2d 686, 698, 295 P.3d 239

(2013), the Court should determine that Truck's failure to provide these documents in discovery

is substantially justified. Secondarily, Truck argues that the amount of fees requested should be

reduced given the limited nature of Seattle Zephyr's victory (i.e., not every document for which

privilege was claimed was ordered released).

As to substantial justification, the Court finds that Truck's position with respect to those

documents that were released was not substantially justified and therefore will not deny Seattle

Zephyr's request on that basis. While it is true *Cedell* is not clear on the distinction between work

product and attorney client privilege, *Cedell* is very clear that certain documents are presumptively

ORDER GRANTING SEATTLE ZEPHYR INC.'S MOTION
FOR ATTORNEYS' FEES - 2

**Judge Michael K. Ryan**
Maleng Regional Justice Center
401 Fourth Avenue North
Kent, WA 98032
(206) 477-4936

discoverable and that no privilege shields documents prepared by lawyers engaged in quasi-fiduciary tasks. The only evidence before the Court was that attorney Ryan Hall was acting in a quasi-fiduciary role during the entirety of time he was engaged by Truck on this matter. Similarly, Truck's basic theory was that once it learned about Seattle Zephyr's reformation request litigation was reasonably anticipated. The Court rejected that theory as inconsistent with our Supreme Court's teachings on how to apply the work product doctrine. As to whether the amount requested would be unjust, the Court does not find that awarding Seattle Zephyr the amount requested would be unjust. Seattle Zephyr made but one argument in support of its motion, and did not focus its arguments on different time frames or periods. Consequently, the Court does not find that it would unjust to require Truck to pay the amount requested by Seattle Zephyr.

As to reasonableness, the Court finds the amount of fees requested and hours expended were reasonable. Court follow the lodestar method to determine whether the amount of fees was reasonable. *Baker*, 5 Wn. App.2d at 615. "Under this method, the trial court first examines the attorney's billing records and determines the number of hours that were reasonably expended in pursuing" the motion. *Id.* The reasonable number of hours is then multiplied by a reasonable hourly rate. Once completed, "the court may then consider the necessity of adjusting the rate after considering" several factors. *Id.*

As to the number of hours expended, the Court finds that, after independently reviewing the billing submissions submitted by Seattle Zephyr's counsel, that the number of hours expended in researching, drafting, and arguing the motion to compel were reasonable. As to the reasonableness of the rates requested, the Court has independently reviewed the submissions of the parties, including declarations, and finds that the hourly billing rates of the attorneys for Seattle

ORDER GRANTING SEATTLE ZEPHYR INC.'S MOTION
FOR ATTORNEYS' FEES - 3

Zephyr—Kasey Huebner and John Cadagan—and that of the paralegal, Courtney Caryl-Garth, are reasonable. Ms. Huebner's rate of $475 and Mr. Cadagan's rate of $325 are their established, standard hourly rate for clients. Ms. Caryl-Garth's rate of $155 is the established, standard hourly rate charged for her paralegal services. These rates also are commensurate with the level of skill and experience they have, their respective reputations, and rates charged in Western Washington with similar skills and experience. In making this finding, the Court does not find convincing Truck's arguments regarding whether these particular hourly rates are reasonable or whether they are properly supported.

As the Court of Appeals explained, "[w]hen attorneys have an established rate for billing clients, that rate is likely a reasonable rate." *Baker* at 623. Here, Seattle Zephyr has provided this Court with more than sufficient information to assess the reasonableness of the rates being requested. This is not a case where the Court needs to consider a myriad of other factors to determine the reasonableness of the rates requested.

For the reasons set out above, this Court GRANTS Seattle Zephyr's Motion, and orders that within ten (10) court days from the date this Order, Truck shall deliver a check, or cause a check to be delivered, to counsel for Seattle Zephyr in the amount of $14,333.00, payable to "Gordon Tilden Thomas & Cordell LLP in Trust for Seattle Zephyr."

DATED this _9_ day of _October_, 2020.

_____
The Honorable Michael K. Ryan
Superior Court Judge

ORDER GRANTING SEATTLE ZEPHYR INC.'S MOTION
FOR ATTORNEYS' FEES - 4

*Exhibit D*

FILED
DEPT 19
IN OPEN COURT

JUN 26 2020

PIERCE COUNTY, Clerk
By
DEPUTY

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR PIERCE COUNTY

PADDOCK WOOD FARM, LLC, a
Washington limited liability company,

　　　　　　　Plaintiff,

　　v.

JAMES VAMVAS and JAIMI GRAVES, and
their marital community comprised thereof,

　　　　　　　Defendants.

and

JAMES VAMVAS and JAIMI GRAVES, and
their marital community comprised thereof,

　　　　　　　Third-Party Plaintiffs,

　　v.

MARK WILNER and CATHARINE VAN
DOREN, and their marital community
comprised thereof,

　　　　　　　Third-Party Defendants.

NO. 20-2-05701-6

[PROPOSED] ORDER GRANTING
THIRD-PARTY DEFENDANTS'
MOTION FOR ATTORNEYS' FEES ON
DISMISSED THIRD-PARTY CLAIMS

ORDER GRANTING THIRD-PARTY DEFENDANTS'
MOTION FOR ATTORNEYS' FEES ON DISMISSED
THIRD-PARTY CLAIMS - 1

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

THIS MATTER came before the Court on Third-Party Defendants' Motion for Attorneys' Fees on Dismissed Third-Party Claims. The Court has duly considered the motion papers and briefing submitting by the parties, the argument of counsel therein, and the files and records herein.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. Third-Party Defendants' Motion for Attorneys' Fees on Dismissed Third-Party Claims is GRANTED.

2. Third-Party Defendants are entitled to be awarded, and are hereby awarded, their reasonable attorneys' fees pursuant to the covenants, conditions, and restrictions ("CC&Rs") that govern the Bridal Trails Estates neighborhood. Article V, Section 1 of the CC&Rs state that in any proceeding to enforce the CC&Rs, "the prevailing party shall be entitled to an award of reasonable attorneys' fees."

3. Defendants/Third-Party Plaintiffs brought third-party claims against Third-Party Defendants in this proceeding alleging a violation of the CC&Rs. The Court recently dismissed the third-party claims upon motion. The Court dismissed the third-party claims under CR 19 because Defendants failed to join indispensable parties, and under CR 14 because Defendants' claims were not proper third-party claims that could be asserted in this proceeding to begin with. Third-Party Defendants are prevailing parties in this proceeding, entitled to a fee award pursuant to the CC&Rs.

4. The Court applies the lodestar method in setting a reasonable fee.

5. The Court has reviewed the submissions of the parties, including declarations, and finds that the hourly billing rates of the attorneys working on Third-Party Defendants' defense— Jeff Thomas and Mark Wilner—are reasonable. Mr. Thomas' rate of $525 and Mr. Wilner's rate

ORDER GRANTING THIRD-PARTY DEFENDANTS'
MOTION FOR ATTORNEYS' FEES ON DISMISSED
THIRD-PARTY CLAIMS - 2

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

of $495 is their established, standard hourly rate for clients. Their rates also are commensurate with the level of skill and experience they have as attorneys, their respective reputations, and rates charged by attorneys in Western Washington with similar skills and experience.

6.      Moreover, the number of hours they spent in achieving a dismissal of the third-party claims is reasonable. Mr. Thomas only spent 3 hours. Mr. Wilner, who has the lower standard hourly rate, spent 7.3 hours. All of their time was spent conducting reasonably necessary tasks associated with researching and briefing CR 19 and CR 14 issues for the Court.

7.      Finally, the requested amount of $5,188.50 appears to the Court to represent efficient lawyering. The Court is mindful that a few months ago, the Washington Court of Appeals affirmed a $21,880.20 fee award in a case involving a party prevailing on a similar type of early procedural motion to dismiss (improper venue). *SE Boise Boat & RV Storage, LLC v. Graham*, 2020 WL 1917475, at *3 (Wash. Ct. App. Apr. 20, 2020). The requested fees herein are approximately a quarter of that amount.

8.      Based on the foregoing, the Court hereby awards Third-Party Defendants their reasonable attorneys' fees in the amount of $5,188.50.

9.      Within ten (10) court days from the date this Order is entered, Defendants shall deliver a check, or cause a check to be delivered, to counsel for Third-Party Defendants in the amount of $5,188, payable to "Gordon Tilden Thomas & Cordell LLP in Trust for Wilner & Van Doren".

DATED this _26th_ day of _June_____, 2020.

FILED
DEPT 19
IN OPEN COURT

JUN 26 2020

PIERCE COUNTY, Clerk
By_____
DEPUTY

_____
The Honorable Philip K. Sorensen
Superior Court Judge

ORDER GRANTING THIRD-PARTY DEFENDANTS'
MOTION FOR ATTORNEYS' FEES ON DISMISSED
THIRD-PARTY CLAIMS - 3

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

Presented by:

**GORDON TILDEN THOMAS & CORDELL LLP**
Attorneys for Third-Party Defendants Wilner and Van Doren

By: *s/ Jeffrey M. Thomas*
    Jeffrey M. Thomas, WSBA #21175
    600 University Street, Suite 2915
    Seattle, WA  98101
    206.467.6477 ·
    jthomas@gordontilden.com

ORDER GRANTING THIRD-PARTY DEFENDANTS'
MOTION FOR ATTORNEYS' FEES ON DISMISSED
THIRD-PARTY CLAIMS - 4

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

*Exhibit E*

| **Second Declaration** | **First Declaration/Email Record** |
|---|---|
| 1. Ms. Barnhart was reluctant to sign the First Declaration and she "ultimately" did not sign it. Dkt. 38-1 ¶ 22. | 1(a). The First declaration began with Ms. Barnhart's own, independently prepared, 1,500-word personal statement that she sent to the undersigned on January 5, 2021. Dkt. 43-1 at 56-62. *Nothing* in the First Declaration is inconsistent with that statement.

1(b). Ms. Barnhart reviewed and approved each draft of the First Declaration and suggested edits. *See* Motion, Section II-G.

1I. Ms. Barnhart's conduct on January 6, 2021 leaves no room for the argument that she was anything but *eager* to sign the final version of the First Declaration, and only failed to do so because the undersigned called off the filing. *See id.* |
| 2. Ms. Barnhart objected to the fact that the First Declaration "maligned" Mr. Saltz. *Id.* | 2(a). Ms. Barnhart *never* objected to *anything* in the First Declaration, and was eager to sign it in its final form. *See id.*

2(b). Ms. Barnhart's emails to me described Mr. Saltz in *far* more malignant terms than those contained in the First Declaration. Examples include: "that slimy lawyer," "harass[ing]," "pompous," "arrogant," "the creep," and that "creepy, stalking attorney." *See* Dkt. 43-1 ¶ 29. |
| 3. "Mr. Saltz has not threatened me. Nor have I ever told Mr. Brown that Mr. Saltz threatened me." *Id.* ¶¶ 27, 22. | 3(a). Ms. Barnhart's immediate reaction when her friend forwarded Mr. Saltz's threatening January 1, 2021 messages was: "More threats directed at me!" Dkt. 43-1 at 150-53.

3(b). In a January 7, 2021 email, Ms. Barnhart characterized Mr. Saltz's January 1 messages as "basically telling me to cooperate or else." *Id.* at 146.

3(c). "Nobody has the right to threaten me with legal action as this man [Mr. Saltz] has done with his pompous and arrogant attitude." Dkt. 52, Ex. C at 129 (Jan. 8, 2021 email).

3(d). "I can't believe this world we live in where we can't even tell people to leave us alone, where people |

| | |
|---|---|
| | can threaten you and you just have to shut up and take it." *Id.* at165 (Jan. 11, 2021 email). |
| 4. Ms. Barnhart acted as Ms. Paulson's "agent" and "bulldog" who followed her instructions to carry out improper attacks on Ms. Paulson's perceived rivals and enemies. *Id.* ¶¶ 6-11. | 4(a). "[Ms. Paulson] has never asked me to do anything for her! We tweeted on occasion but she never instructed me to do anything nor would I." Dkt. 43-1 at 33.<br><br>4(b). "Katie has never, ever, asked me to do anything for her." *Id.* at 62.<br><br>4(c). "My interactions with Ms. Paulson have been limited to: (I) a few brief online conversations unrelated to this matter; (2) the fact that I was a subscriber to her channel . . . and (3) the fact that last week I sent her a few "chats" after the filing of the Fulmer Declaration. Ms. Paulson and I have never been friends and have had very little direct contact." *Id.* at 121 ¶ 12 (First Declaration). |
| 5. Ms. Paulson always knew Ms. Barnhart resided in Washington and Ms. Barnhart repeatedly told her that she lived in Washington. *Id.* ¶¶ 8, 11. | 5(a). "I have no reason to believe Ms. Paulson knew which state I lived in until very recently." Dkt. 43-1 at 122 (First Declaration).<br><br>5(b). Ms. Barnhart explicitly confirmed to the undersigned that she had no reason to believe Ms. Paulson knew she lived in Washington until very recently. Dkt. 43-1 ¶ 36. |
| 6. Ms. Paulson "told [Ms. Barnhart] expressly not to contact Plaintiffs' Counsel but to contact her attorney, Michael Brown, instead." *Id.* ¶ 19. | 6. Ms. Paulson's *actual* message to Ms. Barnhart: "You can speak to my attorney if you'd like. He isn't sure if he can help. Dkt. 43-2 at ¶ 3. |
| 7. Ms. Barnhart stopped supporting Ms. Paulson's YouTube channel in the fall of 2020 because she disapproved of Ms. Paulson's behavior on that channel. *Id.* ¶ 12. | 7(a). "There are so many Twitter and YouTube trolls and sock accounts that would just follow me around *because I supported [Ms. Paulson] . . . It got so bad that I stopped supporting [Ms. Paulson]* and then all the trolls were my best friends. They wanted me to join their hate groups and troll [Ms. Paulson]." Dkt. 43-1 at 59-60 (emphasis added). |

| | |
|---|---|
| | 7(b) "She [Ms. Paulson] has done nothing wrong . . . I was standing up for what was right I was against bullying and harassment and I know [Ms. Paulson] is too. *I stopped supporting her because of them and their harassment.*" *Id.* at 47 (emphasis added). |
| 8. Ms. Barnhart "also communicated with Ms. Paulson via email and direct messages." *Id.* ¶ 6 | 8. "We have never spoke on the phone and *she's never emailed me.*" Dkt. 43-1 at 62 (emphasis added). |
| 9. Ms. Barnhart mistrusted the undersigned "from the very first interaction" with him on December 24, 2020. *Id.* ¶ 20. | 9. After that first interaction, Ms. Barnhart would go on to send the undersigned 77 emails, and have two telephone conversations, over a period of 18 days, in which she shared the most intimate details of her life history, her family, *etc. See, e.g.*, Dkt. 43-1 at 39. |
| 10. Ms. Barnhart was "uncomfortable" with the undersigned's suggestion that she sign the signature page of the First Declaration even though we might need to make "tweaks" to it later in the evening. *Id.* ¶ 23. | 10(a). The Second Declaration omits the critical assurance the undersigned provided Ms. Barnhart: "Of course I will not make any changes without you reviewing them." Dkt. 43-1 at 117.<br><br>10(b). Ms. Barnhart was unmistakably *eager* to sign the First Declaration *after* I made that suggestion, and never suggested it made her "uncomfortable." *See* Motion, Section II-G. |
| 11. In a December 24, 2020 email, the undersigned "tried to encourage [Ms. Barnhart] to file state bar complaints against" Mr. Saltz and instructed her on how to do it. *Id.* ¶¶ 22, 26. | 11. The undersigned's *actual* email proves this to be a lie. In response to Ms. Barnhart's question as to how she could respond to Mr. Saltz's abusive behavior, the undersigned first explained she could file a declaration with this Court. He then wrote: "You could also consider filing a complaint with the bar associations of Washington and California. That process moves very slowly, so it would not give you any quick relief." Dkt. 43-1 at 31. This is neither "encouragement" not is it "instruction" on how to do it. |
| 12. Ms. Barnhart did not tell Mr. Saltz he had "doxed" the wrong Lori Barnhart in the Fulmer Declaration until their phone call on January 12, 2021. *Id.* ¶ 28. | 12(a). "*Even though I notified him he had the wrong information [about the other Lori Barnhart]* he has continued with this an even filed the 17-page document. *He has not corrected his error since.*" Dkt. 43-1 at 95. (January 6, 2021 email) (emphasis added).<br><br>12(b) "I sent him [Mr. Saltz] a [direct message on Twitter] *and told him that he doxed the wrong person* hoping to do damage control and protect this person as |

| | much as I could. *I posted on twitter that they had the wrong Lori* and to not harass the woman but that seemed to add fuel to the fire. Instead of removing her information they just spread it around even more . . ." Dkt. 43-1 at 61 (emphasis added). |
|---|---|
| | 112(c). "So before [Mr. Saltz] filed that declaration I said that was not me and he filed it anyway." *Id.* at 141 (January 7, 2021 email). |
| 13. Ms. Barnhart was distressed that the undersigned did not tell Mr. Saltz that he had "doxed" the wrong Lori Barnhart. *Id.* ¶ 38. | 13. In addition to the fact that Ms. Barnhart had already repeatedly informed Mr. Saltz that he had "doxed" the wrong Lori Barnhart, Ms. Barnhart knew about, and agreed to, the undersigned's strategy to protect her by *not* disclosing to Plaintiffs' counsel that she was working with Ms. Paulson's attorney. Dkt. 43-1 ¶¶ 45 – 48. |