The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TATIANA WESTBROOK, an individual; JAMES WESTBROOK, an individual; HALO BEAUTY PARTNERS, LLC, a Nevada Limited Liability Company,

Plaintiffs,

v.

KATIE JOY PAULSON, an individual; WITHOUT A CRYSTAL BALL, LLC, a Minnesota Limited Liability Company; and DOES 1 through 100, inclusive,

Defendants.

NO. 2:20-cv-01606 BJR

DEFENDANTS' MOTION TO QUALIFY COUNSEL TO CONTINUE REPRESENTATION

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

## I. INTRODUCTION

### A. Conference of Counsel

On January 13, 2021, Plaintiffs filed the Declaration of non-party witness Lori Ann Barnhart (Dkt. 38-1). In that declaration Ms. Barnhart: (1) testified that on or about January 10, 2021, the undersigned offered to represent her as her attorney for purposes of her response to a subpoena from Plaintiffs; (2) suggested that such an attorney-client relationship was formed at around that time; and (3) testified that she had some "interest" with regard to this lawsuit that was in conflict with the interests of the undersigned's client, Defendant Ms. Paulson. Defendants were concerned that Plaintiffs included this testimony in the declaration to set up an argument to disqualify the undersigned and his firm from continuing to represent Defendants in this matter. Declaration of Michael Brown ("Brown Decl."), ¶ 4. Accordingly, the undersigned arranged a meet-and-confer with Plaintiffs' counsel on January 27, 2021 to discuss the matter and his plan to bring a "motion to qualify" to request that this Court enter an order finding that no disqualifying attorney-client relationship was formed. *Id.*

To the undersigned's surprise, in that call, Plaintiffs' counsel assured the undersigned that, despite having included the above testimony in Ms. Barnhart's declaration, they did not see a potential conflict issue and had no intention of arguing for disqualification based on any such alleged attorney-client relationship. *Id.* Based on that representation, the undersigned sought further guidance on the ethics issue, and determined that the motion to qualify could be obviated if Plaintiffs would simply confirm in writing what they represented during the meet-and-confer. *Id.*

The undersigned proceeded to repeatedly ask Plaintiffs for that confirmation, but they repeatedly refused. *Id.*, ¶ 5 & Ex. A. Initially they explained that they wanted to reserve the right to move to disqualify if "it *becomes* an issue *later on*" and "if and when [they] *learn more*" information. *Id.*, Ex. A at 2, 4 (emphasis added). The undersigned responded that: (1) the stipulation need only repeat what Plaintiffs represented during the call—that they have no

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*current* concerns that would cause them to ask for disqualification; and (2) they could reserve the right to move in the extremely unlikely event they learned new information that would give rise to such a concern. *Id.* at 5. Plaintiffs then shifted their position, stating that they "do have concerns" *currently* about a potential conflict, based on what they knew at the time of the meet and confer, and therefore would not sign a stipulation. *Id.* at 6.

Defendants should not be forced to proceed under the constant threat that Plaintiffs will choose some strategic time in the future to make the disqualification motion that they clearly hinted at in the Barnhart Declaration, then clearly disclaimed on January 27, and then hinted at once again when asked to commit to that position in writing. As such, Defendants ask the Court to rule now on the disqualification issue, to give them some certainty that their defense in these proceedings, or future proceedings in another forum, will not be disrupted by a motion to disqualify that Plaintiffs are keeping in their back pocket.

**B. Summary of Argument**

As explained in Dockets 43-1and 52, the circumstances surrounding Plaintiffs' procurement of Ms. Barnhart's testimony were highly unusual and highly concerning, and there is reason to believe Ms. Barnhart was not in a position to swear an oath to any testimony on January 13. However, even taking her testimony regarding an alleged attorney-client relationship at face value, the undersigned remains qualified to continue to represent Defendants, for the following reasons:

*First*, "disqualification is a drastic measure" and "the Court must consider the danger of a motion to disqualify opposing counsel as a litigation tactic." *FMC Technologies, Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1157 (W.D. Wash. 2006). Plaintiffs' shifting positions on this motion only underscore this concern here.

*Second*, the emails on which the declaration relies do not support a *reasonable* belief on the part of Ms. Barnhart that the undersigned offered to act as her attorney.

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*Third*, even if the emails could reasonably be construed as an offer of representation, Ms. Barnhart's own testimony establishes that she rejected that putative offer; indeed she testified that she was "suspicious" and "not comfortable" with the undersigned acting as her attorney, and she therefore "cut off all communications with" the undersigned, and proceeded to speak with Plaintiffs' counsel the following day.

*Fourth*, even assuming an attorney-client relationship was formed, Ms. Barnhart does not have any identifiable "interest" with respect to this lawsuit, let alone any interest that might be prejudiced by the undersigned continuing to represent Defendants. Indeed, as she herself expressly and repeatedly recognized, her *only* connection to this litigation is as a fact witness with information that is relevant—if at all—only to the issue of this Court's personal jurisdiction over Defendants.

*Fifth*, any confidentiality that would have attached to Ms. Barnhart's communications with the undersigned was waived by virtue of the declaration's express reliance on and characterization (and mischaracterization) of those communications, for the purpose of impugning the undersigned.

## II. FACTUAL BACKGROUND

### A. The communications between the undersigned and Ms. Barnhart.

Ms. Barnhart initially made contact with the undersigned via email on December 24, 2020. Dkt. 43-1 ¶ 9. She explained that she understood the undersigned was Ms. Paulson's attorney, and expressed concerns about being harassed by Plaintiffs' counsel and abusively "outed" in the Fulmer Declaration filed by Plaintiffs (Dkt. 27-3) in which they exposed irrelevant but very damaging personal information about her. *Id*. The undersigned responded to Ms. Barnhart as a potential witness (not a potential client), and that began a series of email exchanges, and two telephone calls, over the subsequent 18 days. *See generally* Dkt. 43-1, Ex. B. The majority of the email conversation centered on Ms. Barnhart's agreement to sign a declaration (the "First Barnhart Declaration"), which would be filed by Defendants. The purpose

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

of the First Barnhart Declaration was twofold: (1) to explain the abusiveness of the Fulmer Declaration and specifically Ms. Barnhart's belief that she was deliberately "outed" in retaliation over a spat she had with Plaintiffs' counsel, Michael Saltz, in November 2020; and (2) to confirm Defendants' statements, that they did not know Ms. Barnhart resided in Washington until that fact was disclosed in this lawsuit. *Id.*, Ex. B at 117-123. Ms. Barnhart helped prepare and edit that First Barnhart Declaration, and was eager to sign it on the evening of January 6, 2021, before the undersigned informed her we needed to delay that filing. Dkt. 43-1 ¶¶ 23-26.

The undersigned and Ms. Barnhart also exchanged emails, and spoke about, Plaintiffs' subpoena to Ms. Barnhart (which was never served). It is the emails regarding this latter subject that form the basis for the suggestion in Ms. Barnhart's declaration that she and the undersigned formed an attorney-client relationship. *See* Dkt. 38-1 at ¶¶ 24-26. The undersigned and Ms. Barnhart spoke on the phone on January 5, 2021 about the declaration and the subpoena; the undersigned explained that he was Defendants' attorney, and not hers. She told the undersigned that she already recognized this. Declaration of Michael Brown In Support of Motion to Qualify ("Brown Decl."), ¶ 2.

Ms. Barnhart now relies on emails the undersigned sent subsequent to this call, to suggest that at some point he became "her" lawyer for purposes of responding to the subpoena. In those emails, the undersigned provided general information and admonitions to Ms. Barnhart regarding responding to subpoenas, and responded to some of her concerns, including her concern that she did not have money or technical expertise to comply with a demand for electronic data from her social media and email accounts. The emails pertaining to the subpoena (among other topics) can be found at Dkt. 43-1, pp. 145-200 and Dkt. 52, Ex. B at 125, 145, 165, 167.

**B. Ms. Barnhart suddenly changed sides and completely changed her story on January 13, 2021.**

Ms. Barnhart's emails to the undersigned late on January 10 and continuing into January 11 began to sound confusing, and appeared to reflect an increasing level of anxiety and even

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

despair over the harassment and intimidation she had been subjected to at the hands of Plaintiffs' counsel. Dkt. 43-1 at 186-203; Dkt 52 at 125, 145, 165, 167. On January 12, 2021—after 18 days of frequent communications with the undersigned—Ms. Barnhart "flipped" and contacted Plaintiffs' counsel. Dkt. 38-1 ¶ 28.

The next day, Plaintiffs' counsel interviewed Ms. Barnhart for 11 hours, prepared a different declaration for her to sign (the "Second Barnhart Declaration"), and procured her sworn signature to it. They did this with the knowledge that: (1) Ms. Barnhart believed she was represented by the undersigned; (2) she was eager to swear under oath a week earlier to an *entirely different* and nearly perfectly contradictory version of events; (3) the 150 emails exchanged between the undersigned and Ms. Barnhart over the previous 18 days were perfectly consistent with the First Barnhart Declaration, which she was eager to sign under oath, and contradicted the testimony they were putting in front of her in the Second Barnhart Declaration; and (4) she admitted to them to being confused and unable to remember things well because of medication and anxiety. *See* Dkt. 60 ¶¶ 2-5. After the Second Barnhart Declaration was filed, the undersigned came into possession of information strongly suggesting that Ms. Barnhart was not aware of what she was signing when she signed it. *See* Dkt. 52, Exs. A, B.

In this second declaration Ms. Barnhart states that the undersigned became her attorney at some point, with respect to her response to Plaintiffs' subpoena. Dkt. 38-1 ¶¶ 24-28. The circumstances surrounding the preparation of that declaration and Ms. Barnhart's state of mind when she signed it, provide strong grounds for this Court to disregard that "testimony." *See* Dkt. 43-1 ¶¶ 9-22. However, as explained below, even taking the Second Barnhart Declaration at face value, the undersigned is not subject to disqualification from this matter.

## III. ARGUMENT

### A. Disqualification is an extraordinary and disfavored remedy.

"Disqualification of counsel is a drastic measure that should be imposed only when necessary. The Court must consider the danger of a motion to disqualify opposing counsel as a

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

litigation tactic." *FMC Technologies, Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1157 (W.D. Wash. 2006); *see also Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) ("Because of this potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny.") (quotations omitted). Here, the odd circumstances surrounding Plaintiffs' procurement of the Second Barnhart Declaration and Plaintiffs' shifting positions regarding disqualification should only heighten the Court's suspicion of their motives.

**B. An attorney-client relationship never formed between the undersigned and Ms. Barnhart.**

**1. The existence of an attorney-client relationship turns on the putative client's *reasonable* subjective belief that such a relationship was formed.**

"An attorney-client relationship is deemed to exist if the conduct between an individual and an attorney is such that the individual subjectively believes such a relationship exists." *Dietz v. Doe*, 131 Wn.2d 835, 843 (1997) (quoting *In the Matter of the Disciplinary Proceeding Against McGlothlen*, 99 Wn.2d 515, 522 (1983)). However, the belief of the putative client will control only if it "is reasonably formed based on the attending circumstances, including the attorney's words or actions." *Id.* (quoting *State v. Hansen*, 122 Wn.2d 712, 720 (1993)). The determination of whether an attorney-client relationship exists is a question of fact. *Id.* The burden of proving the existence of an attorney-client relationship falls on the party asserting it. *Id.*

As explained below, the facts do not support a finding that Ms. Barnhart and the undersigned entered into an attorney-client relationship. Indeed, Ms. Barnhart's own testimony demonstrates that no such relationship was formed.

**2. The emails between the undersigned and Ms. Barnhart do not convey an offer to form an attorney-client relationship with respect to Ms. Barnhart's subpoena response.**

The suggestion that an attorney-client relationship was formed is premised on two particular emails, one on January 10 and another on January 11 of 2021. Dkt. 38-1 at ¶¶ 24-26.

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Neither of them, taken alone or along with the other emails pertaining to the subpoena, support a conclusion that the undersigned was acting as Ms. Barnhart's attorney with respect to responding to that subpoena.

**a. The January 10, 2021 email.**

Ms. Barnhart wrote to the undersigned on January 8, 2021, explaining that Plaintiffs' counsel's harassing conduct had already caused her severe anxiety and that she "may just ignore [the subpoena] altogether." Dkt. 52, Ex. C at 145. The undersigned attempted to respond in a manner that would calm Ms. Barnhart's fears and dissuade her from simply "ignoring" the subpoena. This is what led the undersigned, on January 10, 2021, to write the sentences on which Ms. Barnhart's declaration now relies:

> I recommend that you sit tight, accept service if they come to your door, and then we can take it form [sic] there. You are not in any trouble.

Dkt. 38-1 at ¶ 24. In her declaration, Ms. Barnhart states: "Such statement confirmed to me that I apparently was a client of Mr. Brown's, in that I understood his statement to mean that he was inserting himself into my situation of having to respond to a subpoena." *Id.*

It is difficult to know what it means to say that an email "confirmed" that something was "apparently" the case.[1] The question is whether Ms. Barnhart subjectively believed the undersigned was her attorney, not whether it was "apparently" the case that the undersigned was. Further, even if this were read to assert such a subjective belief, that belief must be "reasonably formed based on the attending circumstances, including the attorney's words or actions." *Dietz*, 131 Wn.2d at 843. Ms. Barnhart explained that the undersigned's email apparently confirmed an attorney-client relationship *because* she "understood Mr. Brown's statement to mean that he was inserting himself into my situation of having to respond to a subpoena." Dkt. 38-1 at ¶ 24. To

[1] Plaintiffs' counsel prepared this declaration, presumably with the knowledge of the applicable test under Washington law governing the existence of an attorney-client relationship. Yet for some reason they decided to include this vague and ambiguous testimony.

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

the extent any meaning can reliably be discerned from that odd phrase, it is not a fact or circumstance from which a person could plausibly conclude that an *attorney-client* relationship had been formed. Indeed, it is perfectly consistent with Defendants' position, that the undersigned "involved himself" simply by providing and offering general information and assistance regarding responding to a subpoena.

**b. The January 11, 2021 email.**

The second email from the undersigned on which Ms. Barnhart relies is dated January 11, 2021. That email was in direct response to Ms. Barnhart emailing the undersigned the following message, regarding responding to the subpoena:

> I'm not going to go to court I have no money. I don't know how to download everything on my phone so it won't be done.

Dkt. 52, Ex. C at 165. The undersigned responded shortly thereafter. The portion of that response on which the declaration relies states as follows:

> You don't need to spend money or hire a lawyer to respond to the subpoena or file a declaration. I'd like to stand up for you by filing your declaration if you'd let me. It costs you nothing.

Dkt. 38-1 at ¶ 25. Ms. Barnhart characterizes this as an "offer[] to represent me at no charge in responding to said subpoena." *Id.* However, in context, this is clearly *not* an offer to represent Ms. Barnhart as her lawyer for free.

The undersigned's intent in writing these sentences in response to Ms. Barnhart's concerns was to reassure her of two things. First, the undersigned wanted Ms. Barnhart to understand that she did not need to spend money to respond to the subpoena, for example, by paying to have data retrieved (because she did not know how to do it). Offering to provide general information to a witness regarding the logistics of gathering electronic data from a smartphone or personal computer, is not the sort of assistance that constitutes legal advice or supports that witness' subjective belief that an attorney-client relationship has been formed. Second, the undersigned wanted Ms. Barnhart to understand that, based on what she had told me,

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

she did not need to be represented by a lawyer *at all* in the process of responding. Brown Decl., ¶ 3.

**3. Even if Ms. Barnhart had a reasonable subjective belief that the undersigned offered to be her attorney, Ms. Barnhart's own testimony proves she responded by *rejecting* that offer.**

After describing the above email passages as forming an "offer" to represent her, Ms. Barnhart testified that she in effect rejected that offer. She explained that: (1) she was "very suspicious of Mr. Brown's motives" in offering to assist with the subpoena response; (2) she "*was not comfortable* with having Mr. Brown controlling the production of[her] documents and/or other evidence," (3) she "*did not feel comfortable with Mr. Brown's offer of representation*; and (4) "was concerned that there would be a conflict of interest in representing [her] and [Defendants]." Dkt. 38-1 at ¶¶ 25-26 (emphasis added). Indeed, Ms. Barnhart testified that she was so "uncomfortable" with the undersigned's alleged offer, that she responded to it by "cut[ting] off all communications with" the undersigned, and then proceeded to contact Plaintiffs' counsel. *Id.* at ¶ 28. And, in fact, Ms. Barnhart did cease communicating with the undersigned on January 11, 2021.

**C. Even assuming an attorney-client relationship was formed, RPC 1.9 is not implicated here.**

**1. Ms. Barnhart has no interests materially adverse to Defendants (RPC 1.9(a)).**

Ms. Barnhart's suggestion of the formation of an attorney-client relationship potentially implicates RPC 1.9(a). That rule provides that

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter *in which that person's interests are materially adverse to the interests of the former client* unless the former client gives informed consent, confirmed in writing.

R.P.C. 19(a) (emphasis added). For the following reasons, Ms. Barnhart has no interests that are materially adverse to Defendants' interests.

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

First, the only indication of an adverse interest is in the form of vague assertions in the Second Barnhart Declaration. As set forth in detail in Dockets 43-1, 52 and 59 at 10, that declaration lacks any evidentiary value, because of the circumstances surrounding its drafting.

Second, the only "interest" even hinted at in the Second Barnhart Declaration is Ms. Barnhart's alleged possession of *information* that contradicted testimony Ms. Paulson provided in support of Defendants' Motion to Dismiss. As explained at length in Docket 43-1, that "information" is contradicted by what Ms. Barnhart repeatedly said and wrote to the undersigned over the 18-day period they were in communication, and the testimony in the First Barnhart Declaration. *See* Dkt. 43-1 at ¶¶ 33-40. Ms. Barnhart's "first" story was plainly consistent with Defendants' interests. It would be unfair to Defendants and the undersigned to permit Plaintiffs and/or Ms. Barnhart to *create* a disqualifying conflict by suddenly changing that story 180 degrees.

Third, even if Ms. Barnhart was in possession of information that would be somehow damaging to Defendants, that would not give her a material "interest" that could be jeopardized by the undersigned continuing to represent Defendants in this matter. Indeed, Ms. Barnhart repeatedly told the undersigned that she had *no* position with respect to the claims in this litigation; she explained she was just "caught in the middle." Dkt. 43-1 at 171 ("I am caught in the middle."); *see also id.* at 99-100 ("I have no basis to judge those legal claims [in this lawsuit] and I have had no interest in the Westbrooks before or after this lawsuit began."); 35 ("I have never had any interactions with Tati [Westbrook] or her family. I have never tweeted anything at or about Tati. Isn't this about Tati and her harassment?"); 15 ("Katie [Paulson] knows I have nothing to do with this."). Moreover, to the extent Ms. Barnhart actually had such damaging information, and had an interest in disclosing it, she has already done that, when she gave Plaintiffs' counsel access to her emails and social media accounts, allowing them to review *everything* therein, apparently with no constraints and no supervision.

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

**2. Ms. Barnhart clearly waived any confidentiality with respect to her communications with the undersigned (RPC 1.9(c)).**

Ms. Barnhart's assertions regarding an attorney-client relationship also potentially implicate RPC 1.9(c). That rule provides:

> A lawyer who has formerly represented a client in a matter . . . shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

RPC 1.9(c). The key concern behind RPC 1.9(c) is "that confidential factual information as would normally have been obtained in the prior representation would materially advance the [current] client's position in the subsequent matter." RPC 1.9, Comment [3].

There is no risk of that here. Assuming for the sake of argument that Ms. Barnhart had a reasonable expectation of attorney-client confidentiality during her discussions with the undersigned, she clearly waived it by explicitly relying on those very communications in the Second Barnhart Declaration, and by doing so for the purpose of impugning the undersigned's professional integrity. Dkt. 38-1 ¶¶ 19-28; *see Rock River Communications, Inc. v. Universal Music Group, Inc.*, 745 F.3d 343, 353 (9th Cir. 2014) (waiver by reliance on privileged communications under "sword-shield doctrine"); *Pappas v. Holloway*, 114 Wn.2d 198, 207 (1990) (same); RPC 1.6(b)(5) (attorney may rely on otherwise confidential communications to respond to allegations concerning representation of the client). Further, to the extent the information Ms. Barnhart provided to the undersigned benefits Ms. Paulson, Rule 1.9(c) is not implicated because the information in no way harms any interest of Ms. Barnhart.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order finding that no grounds exist to disqualify the undersigned or the law firm Gordon Tilden Thomas & Cordell LLP.

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

DATED this 18th day of February, 2020.

**GORDON TILDEN THOMAS & CORDELL LLP**
Attorneys for Defendants

By   s/ *Michael P. Brown*
Michael P. Brown, WSBA #45618
600 University Street, Suite 2915
Seattle, Washington 98101
206.467.6477
mbrown@gordontilden.com

DEFENDANTS' MOTION TO QUALIFY - 12

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477