THE HONORABLE BARBARA J. ROTHSTEIN

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TATIANA WESTBROOK, an individual; JAMES WESTBROOK, an individual; HALO BEAUTY PARTNERS, LLC, a Nevada Limited Liability Company, | NO. 2:20-cv-01606-BJR |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS** |
| v. | **ORAL ARGUMENT REQUESTED** |
| KATIE JOY PAULSON, an individual; WITHOUT A CRYSTAL BALL, LLC, a Minnesota Limited Liability Company; and DOES 1 through 100, inclusive, | |
| Defendants. | |

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SANCTIONS
(2:20-cv-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

## I.   INTRODUCTION

Defendants' Motion to Dismiss is pending, yet Defendants are driving up litigation costs by accusing Plaintiffs' counsel of misconduct, failing to observe the local rules,[1] and filing needless and duplicative motions irrelevant to the Motion to Dismiss. Since filing the Motion to Dismiss, Defendants have filed <u>five</u> additional motions[2]—three of which require a written response from Plaintiffs[3] and one of which was struck by the Court as improper under the local court rules.[4] All five of these motions were filed within a 30-day period from January 18, 2021 to February 18, 2021.[5]

In the pending Motion, Defendants seek to distract the Court with accusations of improper conduct and declarations filed "for an improper purpose" because the proffered testimony: 1) shows that Defendant Katie Joy Paulson misrepresented the nature and scope of Defendants' Washington contacts[6] in her declarations filed in support of the Motion to Dismiss; and 2) establishes Defendants have sufficient minimum contacts with Washington for this Court to exercise personal jurisdiction over them.[7] Moreover, Defendants' Motion for Sanctions contains numerous misrepresentations, which is not the first time Defendants have misrepresented and/or misconstrued facts to the Court.[8] For example, at the February 2, 2021 status conference concerning the Natalie Kennett declaration, Mr. Brown represented to the Court that he was reading from Ms. Kennett's declaration verbatim, yet the actual language of

---

[1] *See* Defendants' Motion to Shorten Time, Dkt. 61.
[2] This is the <u>third of five</u> motions Defendants have filed since filing their Motion to Dismiss on December 2, 2020, which directly contradicts Defendants' position that this Court has no jurisdiction over this matter. *See* Dkts. 39, 51, 59, 61, 63.
[3] Defendants' Motion for Status Conference, Dkt. 39; Defendants' Motions for Sanctions, Dkt. 59; Defendants' Motion to Qualify Counsel to Continue Representations, Dkt. 63.
[4] *See* this Court's Minute Order striking Defendants' Motion to Shorten Time, Dkt. 62.
[5] *See* Dkts. 39, 51, 59, 61, 63. Moreover, rather than filing a single motion for sanctions, Defendants filed the instant motion and served Plaintiffs with a second, duplicative motion for sanctions under Rule 11, which presumably will be filed after the 21-day "safe harbor" period expires.
[6] Declaration of Katherine Paulson in Support of Defendants' Motion to Dismiss ("Paulson Decl."), Dkt. 19, ¶ 4.
[7] *See* Declaration of Kim Fulmer ("Fulmer Decl."), Dkt. 29, ¶¶ 10–15; Declaration of Michael J. Saltz in support of Response to Motion to Dismiss ("January 4 Declaration"), Dkt. 30-1; Declaration of Lori Ann Barnhart ("Signed Barnhart Decl."), Dkt. 38-1, ¶¶ 8–11.
[8] *Compare* Declaration of Jeffrey Bilanko ("Bilanko Decl."), Ex. 1 at 23:4–6, with Dkt. 46-3 at ¶ 14.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SANCTIONS - 1
(2:20-cv-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

Ms. Kennett's declaration reveals that Mr. Brown recited words that were not in fact therein:

| Mr. Brown's February 2, 2021 Statement | Natalie Kennett Declaration |
|---|---|
| "I knew Ms. Paulson was not being honest with me when she denied that she was behind the hacks." | "I knew she was not being honest with me about her statements that she did not tell anyone to go after me or that she does not 'tell anyone to do anything period.'" |

In addition, Defendants' claims of bad faith conduct regarding Ms. Barnhart are based almost exclusively on hearsay evidence:[9] 1) the Unsigned Barnhart Declaration[10] drafted by Mr. Brown; and 2) an incomplete set of emails exchanged between Mr. Brown and Ms. Barnhart prior to Ms. Barnhart contacting Plaintiffs' counsel.[11] Defendants assert that the Signed Barnhart Declaration, which was signed by Ms. Barnhart under penalty of perjury, is false while the Unsigned Barnhart Declaration—a series of three documents drafted by Defendants' counsel and not signed under penalty of perjury—is factually correct. Ironically, this completely contradicts Mr. Brown's own email to Ms. Barnhart in early January, in which he indicates that the signing of a "sworn declaration" is "generally a solid indication someone is telling the truth."[12] Further, Defendants' assertion that Ms. Barnhart was "eager" to sign the Unsigned Barnhart Declaration is belied by the fact that Ms. Barnhart ultimately chose not to sign it and instead cut off communications with Mr. Brown on January 11, 2021.[13]

Even more puzzling are Defendants' attacks of Ms. Barnhart's credibility based on her

---

[9] Defendants cannot submit admissible testimony from Ms. Barnhart for the first time in support of their reply. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (finding that district court should not consider new evidence presented in a reply without giving the non-movant an opportunity to respond).

[10] Defendants have repeatedly referred to the unsigned, unsworn, and undated declaration of Lori Ann Barnhart as the "First Barnhart Declaration" and the Declaration of Lori Ann Barnhart, filed on January 13, 2021, as the "Second Barnhart Declaration." For purposes of clarity and accuracy, Plaintiffs refer to the signed January 13, 2021 Declaration of Lori Ann Barnhart (Dkt. 38-1), as the "Signed Barnhart Declaration," and the unsigned, undated declarations drafted by Defendants collectively as the "Unsigned Barnhart Declaration."

[11] Declaration of Elana Levine ("Levine Decl.") ¶ 7; see also Levine Decl., Ex. 2.

[12] Supplemental Declaration of Michael Brown in Support of Defendants' Motion to Dismiss ("Brown Suppl. Decl."), Dkt. 43-1, Ex. C, p. 166.

[13] Signed Barnhart Decl., Dkt. 38-1, ¶ 28.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS - 2
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1  personal health issues, which Mr. Brown himself was fully aware of as early as December 27,

2  2020.[14] Yet Mr. Brown had no concerns—<u>as recently as two days before the Signed Barnhart

3  Declaration was filed</u>—about using Ms. Barnhart to testify favorably for Defendants.[15]

4  Plaintiffs' counsel's conduct was not in bad faith, the filings were not frivolous, and

5  therefore sanctions are not warranted.

6  ## II.   CLARIFICATION OF FACTS

   ### A.  Lori Ann Barnhart

7  On December 30, during a meet and confer call to discuss the joint status report and

8  discovery plan, Plaintiffs' counsel told Mr. Brown that Ms. Barnhart had deleted her Twitter

9  account the night before and that Twitter would permanently delete the data from her account

10 within thirty (30) days of the account's deletion.[16] The parties agreed to carve out an exception to

11 the discovery stay to allow Plaintiffs to subpoena Ms. Barnhart's social media account

12 information.[17] At no time during the call did Mr. Brown disclose that he had been in direct,

13 regular contact with Ms. Barnhart for approximately a week.[18] In fact, in an email to Ms.

14 Barnhart later that evening, Mr. Brown indicated that he deliberately withheld his

15 communications with her, "I spoke with Saltz today. They are planning to subpoena your Twitter

16 account because they see that you closed your account and they think there might be evidence

17 there about your connection to Katie. <u>I did not disclose that you and I are in touch</u>."[19] In

18 response, Ms. Barnhart wrote, "Figures. What are your thoughts?"[20]

19

20 [14] *See* Second Supplemental Declaration of Michael Brown in support of Defendants' Motion to Dismiss ("Second Suppl. Brown Decl."), Dkt. 52, (Filed Under Seal), Ex. C, pp. 31 and 36 of 39.

21 [15] *See* Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 193 of 221 (January 11 at 8:02 am: "We will be filing an object today…and I'd like to include a statement from you if you are on board with that."); p. 195 of 221 (January 11 at

22 9:10am: "I'd like to stand up for you by filing your declaration if you'd let me."); p. 198 of 221 (January 11 at 3:16pm:"We're filing something today that addresses the threat Saltz recently made to you….It would be great if

23 you would state that you took it as a threat and felt intimidated, etc.").
   [16] Levine Decl., ¶ 20; Saltz Decl. ¶ 17.

24 [17] Levine Decl., ¶ 20; Saltz Decl. ¶ 17.
   [18] *See* Brown Suppl. Decl. Dkt. 43-1, ¶ 9.

25 [19] *See* Brown Suppl. Decl., Dkt. 43-1, Ex. B p. 42 (emphasis added.)
   [20] This email at 6:18 pm was not included with Mr. Brown's declaration.  *See* Levine Decl. ¶ 7, Ex. 2.

26

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

On January 10, Ms. Barnhart sent a direct message to Plaintiffs' counsel, Michael Saltz, though Mr. Saltz did not see her message until January 12, 2021.[21] Mr. Saltz and co-counsel Elana Levine spoke to Ms. Barnhart in a series of phone calls on January 12 and January 13 that lasted approximately 16 hours total.[22] During the first call on January 12, Ms. Barnhart forwarded certain email chains that were later determined to be only a portion of her correspondence with Mr. Brown.[23] Plaintiffs' counsel reviewed the emails while on the phone with Ms. Barnhart and realized that the contents revealed a potential attorney-client relationship between Ms. Barnhart and Mr. Brown.[24] When asked about Mr. Brown, Ms. Barnhart confirmed that she believed that Mr. Brown was acting as her attorney because she repeatedly asked him for legal advice, which he provided,[25] and he offered on multiple occasions to help her respond to the subpoena at no cost.[26] However, Ms. Barnhart advised Plaintiffs' counsel that she had terminated her relationship with Mr. Brown.[27] She also had told Mr. Brown that she was going to call Plaintiff's counsel directly.[28] Plaintiffs' counsel then proceeded with interview.[29]

---

[21] Saltz Decl. ¶¶ 21–22.
[22] Saltz Decl. ¶ 23; Levine Decl. ¶¶ 6, 13.
[23] Saltz Decl. ¶ 24; Levine Decl. ¶ 7.
[24] Saltz Decl. ¶ 28; Levine Decl. ¶ 7.
[25] *See* Levine Decl. ¶ 7; *see* e.g., Brown Suppl. Decl., Dkt. 43-1, Ex. B p. 30 of 221 (Ms. Barnhart: "[I]s there anything I can do, or should I try to ignore it?"); p. 43 of 221 (Mr. Brown: "I'll have to think about this.  For the time being, it's best for you not to make any contact with Katie (and vice-versa).  They are working hard to try to paint you two as a 'team' and that's not good for either of you."); p. 44 of 221 (Ms. Barnhart: "Don't worry I will not say nor do anything without telling you first."); p. 159 of 221 (Mr. Brown: "You have a right to object to the subpoena. At a minimum that would delay everything and the judge might just say you don't have to respond."); p. 182 of 221 (Mr. Brown: "[Y]ou have done nothing illegal…..I recommend that you sit tight, accept service if they come to your door, and then we can take it form [sic] there.").
[26] *See* Levine Decl. ¶ 7; *see, e.g.*, Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 45 of 221 (Mr. Brown: "Do you have the ability to pay for your own lawyer if they do issue a subpoena?"); p. 159 of 221 (Mr. Brown: "I can help with that."); p. 195 of 221 (Mr. Brown: "You don't need to spend money or hire a lawyer to respond to the subpoena"); p. 198 of 221 (Mr. Brown: "I can give you some assistance with respect to responding to the subpoena."); p. 205 of 221 (Mr. Brown: "I think I can help you with the response, for no charge.  It's very simple.").
[27] *See* Saltz Decl., ¶ 29; Levine Decl. ¶ 6; *see also* Second Suppl. Brown Decl., Dkt. 52, Ex. C, p. 38 of 39 ("Good luck with your case."); Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 189 of 221 ("Unfortunately I see who the slime ball is now."); *see also* Defendants' Motion to Qualify Counsel, Dkt. 63, p. 4.
[28] *See* Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 188 of 221 ("I will call him tomorrow."). Ms. Barnhart's explanation that she had terminated any potential attorney-client relationship with Mr. Brown is corroborated by the record.  See also Dkt. 63, p. 4.
[29] *See* Levine Decl. ¶ 8; Saltz Decl. ¶¶ 30.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SANCTIONS - 4
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

Because Ms. Barnhart had closed her Twitter account, Ms. Barnhart reinstated the account and provided Mr. Saltz with access.[30] While on the phone with Ms. Barnhart, Mr. Saltz reviewed her account and asked her detailed questions about her numerous communications with Ms. Paulson.[31] After nearly 11 hours on the phone, Ms. Barnhart advised Plaintiffs' counsel that she just took medication to address her personal health issues.[32] Accordingly, Plaintiffs' counsel immediately adjourned the interview.[33] On January 13, Plaintiffs' counsel and Ms. Barnhart resumed their call, and after approximately five hours, completed the interview process.[34] Time was of the essence because Ms. Barnhart was eager to correct the mistaken identification of the "other" Lori Ann Barnhart.[35]

Ms. Levine transmitted the declaration to Ms. Barnhart via email on January 13, and Mr. Saltz and Ms. Levine then called her again to go over it with her.[36] Mr. Saltz carefully recited the declaration aloud, while Ms. Barnhart reviewed the written version to ensure accuracy.[37] After Ms. Barnhart made certain changes to her declaration, Ms. Barnhart subsequently signed the declaration—without any difficulty[38]—which was filed on January 13.[39]

**B. Meet and Confer Phone Conference**

Mr. Brown either was confused during the January 27, 2021 meet and confer with Plaintiffs' counsel, or he purposely misconstrued what occurred. Plaintiffs' counsel never stated, among other things, that they "rushed to complete their interview of Ms. Barnhart and get her

---

[30] Saltz Decl. ¶ 30.
[31] Saltz Decl. ¶ 30, Ex. 1.
[32] Saltz Decl. ¶ 47; Levine Decl. ¶ 10.
[33] Saltz Decl. ¶ 47; Levine Decl. ¶ 10.
[34] Saltz Decl. ¶¶ 47–48, Levine Decl. ¶¶ 12–13.
[35] Levine Decl. ¶ 14.
[36] Saltz Decl. ¶ 50; Levine Decl. ¶ 12.
[37] Saltz Decl. ¶ 50; Levine Decl. ¶ 12.
[38] Ms. Barnhart advised Plaintiffs' counsel that she used technical difficulties with downloading as an excuse to not sign the Unsigned Barnhart Declaration. *See* Levine Decl. ¶ 8; *see also* Second Suppl. Brown Decl., Dkt. 52, Ex. C., p. 37 of 39 ("I don't know how to download everything on my phone so it won't be done.").
[39] Saltz Decl. ¶ 50; Levine Decl. ¶ 12.

signature" on the Signed Barnhart Declaration before her medication took effect.[40] The record shows that Plaintiffs' counsel made every effort to protect Ms. Barnhart and preserve her testimony, including pausing the interview after she took her medication and waiting until the following day when Ms. Barnhart was clear-headed and alert to continue the interview.[41]

In addition, during the meet and confer, Mr. Brown never raised the following substantive issues on which the Motion for Sanctions is based: a) the Kim Fulmer Declaration, including whether any of Ms. Fulmer's testimony was submitted for an "improper purpose"; b) whether Mr. Saltz's direct messages to a friend of Lori Ann Barnhart were for "oppressive reasons" and an "improper purpose"; c) whether any testimony in Mr. Saltz's January 4, 2021 declaration was submitted for an "improper purpose"; and d) whether Plaintiffs' counsel violated RPC 4.2 by communicating with Ms. Barnhart.[42]

## III.   ARGUMENT

## A.   DEFENDANTS FAILED TO MAKE A MEANINGFUL EFFORT TO CONFER WITH PLAINTIFFS' COUNSEL PRIOR TO FILING THE MOTION.

This Court's Standing Order for All Civil Cases ("Standing Order") requires that the parties "make a meaningful effort to confer prior to filing a motion," and motions that do not comply may be summarily denied."[43] Here, Mr. Brown failed to make a meaningful effort to confer with Plaintiffs' counsel prior to filing the instant Motion for Sanctions. In fact, Defendants' Motion for Sanctions could have been entirely avoided had Defendants' counsel conducted a meaningful meet and confer with Plaintiffs' counsel. In addition to explaining their interactions with Ms. Barnhart, Plaintiffs' counsel offered to provide Mr. Brown with correspondence and documents from Ms. Barnhart.[44] Mr. Brown not only ignored the offer, but

---

[40] Saltz Decl. ¶ 53; Levine Decl. ¶¶ 32–33.
[41] Saltz Decl. ¶¶ 27, 47, 52–53; Levine Decl. ¶¶ 10, 32–33.
[42] Bilanko Decl. ¶ 4.
[43] *See* Standing Order for All Civil Cases, Dkt. 20, Section II(C).
[44] Levine Decl. ¶ 34; Saltz Decl. ¶ 52.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SANCTIONS - 6
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

he also cut the meet and confer short.[45] Plaintiffs' counsel was deprived the opportunity to address, or clarify many, if not all, of the issues identified in the instant Motion.[46]

## B.   PLAINTIFFS MOVE TO STRIKE PORTIONS OF MR. BROWN'S DECLARATIONS AND EXHIBITS ATTACHED THERETO.

Pursuant to Local Civil Rule 7(g), the Federal Rules of Evidence 801 and 802, the Local Electronic Filing Procedures at Section L, and 28 U.S.C. § 1746, Plaintiffs object to and move to strike the following evidence submitted by Mr. Brown:

1) Supplemental Declaration of Michael P. Brown in support of Defendants' Motion to Dismiss ("Brown Suppl. Decl."), Dkt. 43-1 at ¶¶ 2–11, 13–17, 20, 22–32, 34–47, 50, including Ex. B (pp. 30–205 of 221)—which contains copies of three Unsigned Declarations of Lori Ann Barnhart prepared by Mr. Brown [collectively hereinafter, "Unsigned Barnhart Declaration"] at pp. 55–58, 70–74, 89–93—and Ex. I (pp.219–21 of 221);

2) Sealed Second Supplemental Declaration of Michael P. Brown in support of Defendants' Motion to Dismiss ("Second Suppl. Brown Decl."), Dkt. 52, at ¶¶ 3–7, 9–12, 14, including Exs. A–C; and

3) Declaration of Michael P. Brown in support of Defendants' Motion for Sanctions ["Brown Decl."], Dkt. 60, at ¶¶ 6–7, including excerpts of Ex. E that contain verbatim hearsay statements from the Unsigned Barnhart Declaration.

"In the absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804 or 807."[47] The above-referenced evidence should be stricken because it consists almost entirely of inadmissible hearsay. The out-of-court statements in these paragraphs are submitted for the truth of the matter asserted and are relied upon by Defendants in their Motion for Sanctions.[48]

In addition, 28 U.S.C. § 1746 requires that a witness declare, under penalty of perjury, that the facts contained in the witness' declaration are "true" and that the witness sign and date

---

[45] Levine Decl. ¶ 35; Saltz Decl. ¶¶ 52, 55.
[46] *See* Levine Decl. ¶¶ 4, 5, 11, 31–36; Bilanko Decl. ¶ 4.
[47] *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 (9th Cir. 2002); *see also* FRE 802.
[48] *See* Motion for Sanctions, Dkt. 59.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SANCTIONS - 7
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

the declaration.[49] Compliance with 28 U.S.C. § 1746 is mandatory, and declarations that do not

comply are inadmissible and cannot support a motion.[50] The Unsigned Barnhart Declaration and

excerpts thereto do not comply with the mandatory requirements of 28 U.S.C. § 1746 and are

therefore inadmissible and cannot be used to support the Motion for Sanctions.

Because Defendants have filed a Motion for Sanctions that relies on the inadmissible

hearsay and on the Unsigned Declaration that fails to comply with 28 U.S.C. § 1746, Plaintiffs

move for such inadmissible evidence to be stricken from the record.

**C.   PLAINTIFFS' COUNSELS' CONDUCT DOES NOT WARRANT SANCTIONS UNDER SECTION 1927 OR THE INHERENT POWER OF THE COURT.**

28 U.S.C. § 1927 "sets a very high threshold before an attorney will be required to

reimburse the opposing party for a portion of its attorney's fees…given the likelihood that fee

shifting could chill advocacy." As such, the Court must begin its analysis "with the presumption

that an award of fees is not appropriate and that counsels' conduct falls within the acceptable

realm of zealous advocacy, untainted by bad faith."[51] "This standard is similar to the standard the

Ninth Circuit applies to requests for fees under the court's inherent authority."[52] "Because of

their very potency, [the Court's] inherent powers must be exercised with restraint and

discretion."[53] "If conduct can be sanctioned adequately under existing rules, a court ordinarily

should rely on the rules rather than on inherent power to impose sanctions."[54]

---

[49] *Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, 2012 WL 3260418, at *7 (E.D. Cal. Aug. 8, 2012); *see also Goldmanis v. Insinger*, 2014 WL 3739430, at *7 n.7 (W.D. Wash. July 29, 2014).

[50] *Link Treasure Ltd. v. Baby Trend, Inc.*, 809 F. Supp. 2d 1191, 1195 (C.D. Cal. 2011); *see also Kocar v. City of Vader*, 534 Fed. Appx. 627, 627 (9th Cir. 2013) ("Because the statements failed to meet the requirements of 28 U.S.C. § 1746, the district court did not abuse its discretion when it ruled the statements inadmissible."); *Aviles v. Quik Pick Express, LLC*, 2015 WL 5601824, at *1–*2 (C.D. Cal. Sept. 23, 2015).

[51] *Ortego v. Lummi Island Scenic Estates Cmty. Club, Inc.*, Case No. C14-1840RSL, 2017 WL 1210065, at *2 (W.D. Wash. Apr. 3, 2017), *aff'd*, 738 F. App'x 912 (9th Cir. 2018).

[52] *Edifecs, Inc. v. Welltok, Inc.*, Case No. C18-1086JLR, 2020 WL 1914911, at *4 (W.D. Wash. Apr. 20, 2020) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir.2002)).

[53] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123 (1991).

[54] *Edifecs, Inc.*, 2020 WL 1914911, at *4; *Herrera v. Singh*, 103 F. Supp. 2d 1244, 1256 (E.D. Wash. 2000) (citing *Chambers*, 501 U.S. at 50 ("[I]f in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power.")).

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS - 8**
(2:20-cv-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1      In this case, there is no basis for an imposition of sanctions against Plaintiffs' counsel

2   under the high thresholds of 28 U.S.C. § 1927 or the Court's inherent power. Plaintiffs' counsel

3   did not advance frivolous and reckless arguments or unreasonably and vexatiously multiply these

4   proceedings by filing the declarations at issue or communicating with Ms. Barnhart.[55] Nor were

5   these declarations filed for an improper purpose.

6      **1. Plaintiffs' counsel did not multiply the proceedings as required by § 1927**.

7      To be sanctionable under § 1927, counsel's conduct must "multipl[y] the proceedings" in

8   both an "unreasonable and vexatious manner."[56] Even where filings are meritless and

9   unnecessary, which is not the case here, sanctions under § 1927 are not appropriate if the other

10  party is not required to respond.[57] Here, Defendants allege that the sanctionable conduct is the

11  filing of three declarations in support of Plaintiffs' Response to Defendants' Motion to Dismiss.

12  However, the three declarations, unlike motions, cannot "multiply the proceedings" as

13  declarations are not moving papers containing legal argument; rather, they simply set forth facts

14  as would be admissible in evidence. As the declarations did not require Defendants to respond,

15  sanctions under § 1927 are not appropriate here.

16     **2. Plaintiffs' counsel did not act in bad faith**.

17     Defendants fail to provide any evidence showing that Plaintiffs' counsel acted in

18  subjective bad faith under § 1927, which is present only if they "knowingly or recklessly raise[d]

19  a frivolous argument, or argue[d] a meritorious claim for the purpose of harassing an

20

21

22  [55] *See B.K.B.*, 276 F.3d at 1107, 1108 (finding that, for "[28 U.S.C. § 1927] sanctions to apply, if a filing is submitted recklessly, it must be frivolous" and that "[s]anctions [under the court's inherent power] are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." (internal citations and quotations omitted)).

23  [56] *Id. at* 1107.

24  [57] *See Rygg v. Hulbert*, Case No. C11–1827JLR, 2013 WL 3782169, at *4 (W.D. Wash. July 18, 2013), *aff'd*, 611 F. App'x 900 (9th Cir. 2015) (J. Robart) (finding that 28 U.S.C. § 1927 sanctions were not appropriate against party who filed 35 motions—even though many were "meritless and unnecessary"—because the defendants did not need to respond to the vast majority of the filings).

25

26

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SANCTIONS - 9
(2:20-cv-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1    opponent,"[58] or under the Court's inherent power, which is present only if they "acted in bad

2    faith, vexatiously, wantonly, or for oppressive reasons…by delaying or disrupting the litigation

3    or by hampering enforcement of a court order."[59]

4            Here, none of the three declarations at issue in Defendants' Motion for Sanction were

5    reckless or frivolous filings; nor did the declarations delay or disrupt the litigation. Each of the

6    three witnesses proffered testimony that sets forth, in detail, the necessary facts relating to the

7    pending question of personal jurisdiction. Plaintiffs' counsel also thoroughly and carefully

8    interviewed Ms. Barnhart as well as reviewed the available documentation, including hundreds

9    of interactions on Twitter, to ensure that her proposed testimony was truthful, in good faith, and

10   supported by evidence. Defendants are simply attempting to besmirch Plaintiffs' counsel and Ms.

11   Barnhart to discredit her testimony, which was provided under penalty of perjury.

12            a.  *Ms. Barnhart's testimony was properly obtained and vetted and was filed in
                 response to Ms. Paulson's two declarations[60] for the proper purpose of providing
13               evidence of Defendants' Washington contacts.*

14           Defendants speciously assert that, due to purported harassment by Plaintiffs' counsel, Ms.

15   Barnhart finally relented on January 12 and reached out to Mr. Saltz. However, as evidenced by

16   the record, Ms. Barnhart's primary goal in her involvement in this case was to clarify that she

17   was not the "other" Lori Barnhart identified in the Fulmer Declaration.[61] In her correspondence

18   with Mr. Brown, Ms. Barnhart repeatedly requested that he tell Plaintiffs' counsel to correct the

19   record so that the government employee with Ms. Barnhart's same name would not be at risk of

20   potential harassment[62] or of receiving a subpoena meant for Ms. Barnhart.[63] Ms. Barnhart also

21   ─────────────────────
     [58] *B.K.B.,* 276 F.3d at 1107 (quoting *Keegan,* 78 F.3d at 436) ("[R]eckless nonfrivolous filings, without more, may
22   not be sanctioned.").
     [59] *Chambers,* 501 U.S. at 45–46 (internal citations omitted).
     [60] *See* Paulson Decl., Dkt. 19; Suppl. Declaration of Katherine Paulson in Support of Motion to Dismiss, Dkt. 34.
23   [61] *See* Levine Decl. ¶ 15; Saltz Decl. ¶ 53; *see also* Brown Suppl. Decl., Dkt. 43-1, p. 75 of 221 ("I contacted you
     because of the doxing of the wrong Lori.").
24   [62] *See* Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 33 of 221 ("I hope that other Lori isn't being harassed.") p. 47 of
     221 ("Look what they have done to me and the other Lori"); p.53 of 221 ("Will anything be put out so this woman's
25   information will stop spreading[?]"); p. 146 of 221 ("Do they know I am not the other Lori yet?"); p. 160 of 221 ("I
     think they still believe that I am the other Lori."); p. 165 of 221 ("Do they know I am not the other Lori?"); p. 177 of
26

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

told Mr. Brown numerous times that she voluntarily wanted to provide Plaintiffs' counsel with full access to her social media accounts.[64]

Despite Mr. Brown's assertion that he never represented Ms. Barnhart, Mr. Brown repeatedly talked Ms. Barnhart out of contacting Mr. Saltz directly.[65] Had Mr. Brown simply followed Ms. Barnhart's requests to clear up the mix-up with the other Lori Barnhart as soon as possible, Ms. Barnhart likely would not have contacted Plaintiffs' counsel.[66] Yet, instead of doing as Ms. Barnhart asked, Mr. Brown delayed discovery that Ms. Barnhart was willing to turn over without Court involvement, forcing Ms. Barnhart to approach Plaintiffs' counsel directly.[67]

Additionally, Plaintiffs' counsel spent more than 16 collective hours over the course of two days on the telephone with Ms. Barnhart; reviewed Ms. Barnhart's extensive Twitter communications with Ms. Paulson; and reviewed certain of Ms. Barnhart's correspondence with Mr. Brown.[68] Plaintiffs' counsel confirmed that the Twitter communications corroborated Ms. Barnhart's testimony relating to Ms. Paulson.[69] Unsurprisingly, the Unsigned Barnhart Declaration is based on substantive misrepresentations of fact. For example, the Unsigned Barnhart Declaration states: 1) that Plaintiffs' counsel threatened her on Twitter to make her a party to the lawsuit, yet no such communication exists;[70] 2) Ms. Barnhart told Plaintiffs' counsel

---

221 ("They can show up at Lori's house or work, harass her and her family now too"); and p. 186 of 221 ("Can you tell me what is going on with the other Lori?").

[63] *Id.* at p. 160 of 221 ("I think she is going to get served.").

[64] *See* Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 44 of 221 ("Maybe it would just be easier if I went and met with him myself….I have nothing to hide."); p. 47 of 221 ("For all I care they can look at all my internet activities.); p. 171 of 221 ("I guess I can just call [Mr. Saltz] and authorize YouTube and twitter [sic] to give him all of it.") and p. 188 of 221 ("I will call [Mr. Saltz] tomorrow.").

[65] *See id.* at p. 45 of 221("I understand that impulse but you need to understand the type of person he is."); p. 164 of 221 ("Can you please talk with me before you do anything?"); and p. 200 of 221 ("I understand this is very stressful. You should at least speak with me about it.").

[66] Signed Barnhart Decl., Dkt. 38-1, ¶¶ 19, 26.

[67] Signed Barnhart Decl., Dkt. 38-1, ¶ 23.

[68] Saltz Decl. ¶¶ 23, 24, 30; Levine Decl. ¶¶ 5–13.

[69] Saltz Decl. ¶ 37.

[70] Levine Decl., ¶ 22c (citing Brown Suppl. Decl, Dkt. 43-1, p. 83 of 221, stating, "he threatened to add you to this lawsuit."); Brown Suppl. Decl,, Dkt. 43-1, ¶ 30(a)-(e); Saltz Decl., ¶¶ 3–4.

---

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SANCTIONS - 11
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

that they identified the wrong Lori Barnhart, when no such communication exists;[71] and 3) Ms. Paulson and Ms. Barnhart's communications were limited to "a few brief online conversations unrelated to this matter," when Ms. Barnhart's Twitter account reveals hundreds of interactions.[72] Unlike Mr. Brown, Plaintiffs' counsel spent hours reviewing external documents, including Ms. Barnhart's Twitter account, to verify the accuracy of Ms. Barnhart's statements in the Signed Barnhart Declaration.[73]

Moreover, Ms. Barnhart's declaration is directly related to the personal jurisdiction defense raised by Defendants in the Motion to Dismiss and was filed to refute misstatements by Ms. Paulson regarding Defendants' contacts with Washington.[74] The filing of Ms. Barnhart's declaration was not in bad faith.

> b. *The Fulmer and Saltz Declarations were filed only to address the misrepresentations made in the Paulson Declarations as to the nature and scope of Defendants' Washington contacts.*

Defendants argue that certain references to Ms. Barnhart in the Declaration of Kim Fulmer are irrelevant and harmful to Ms. Barnhart, yet it is Defendants who repeatedly have publicized these references since Ms. Fulmer's Declaration was filed, as well as repeatedly publicized Ms. Barnhart's personal health issues.[75] Furthermore, Ms. Fulmer's inclusion of the reference to Ms. Barnhart's previous criminal charge was proper to show that: 1) Ms. Barnhart is a Washington resident and has been for several years; and 2) Ms. Fulmer reasonably feared for her safety following Ms. Barnhart's threats based upon Ms. Barnhart's history.[76] In addition, Defendants' implication that the charge was dismissed on the merits is not accurate—the charge

---

[71] Levine Decl., ¶ 22a (citing Brown Suppl. Decl., Dkt. 43-1, p. 61 of 221), ¶ 22k; Saltz Decl., ¶¶ 10–11, 14.
[72] Levine Decl., ¶ 27; Suppl. Decl., Dkt 43-1, pp. 102–03, 121 of 221; Saltz Decl. ¶¶ 30, 49(a).
[73] Saltz Decl. ¶¶ 23–49; Levine Decl., ¶¶ 22d, 29.
[74] *See* Signed Barnhart Decl., Dkt. 38-1, ¶¶ 4–16; *see* Paulson Decl., Dkt. 19, ¶ 4; Dkt. 34, ¶ 6.
[75] *See, e.g.*, Brown Suppl. Decl., Dkt. 43-1, p. 10; Defs. Mot. for Sanctions, Dkt. 59, pp. 9–10, Brown Decl., Dkt. 60, p. 2.
[76] *See* Fulmer Decl., Dkt. 27-3 ¶ 15 ("this caused me to be in reasonable fear of this person").

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SANCTIONS - 12
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

was dismissed after Ms. Barnhart completed a diversion program.[77] The Fulmer Declaration also intentionally omitted the affidavit of probable cause in the charging document, which contained the details of the acts charged, including that they involved actual physical harm to a person.[78] Notably, Ms. Barnhart, under penalty of perjury, testified that, except for the statement regarding Ms. Barnhart being a government employee, Ms. Fulmer's declaration was entirely accurate.[79] Moreover, all of the exhibits to Ms. Fulmer's Declaration are public records—including the list of public employees—and readily accessible by a simple internet search.[80]

Defendants erroneously accuse Mr. Saltz of stating in his January 4 Declaration that "Ms. Barnhart and Ms. Paulson engaged in a conspiracy to 'hide evidence.'"[81] Mr. Saltz made no such statement in his January 4 Declaration. Instead, Mr. Saltz testified that, after reviewing hundreds of hours of Defendants' vast social media content, he discovered that numerous social media interactions between Ms. Barnhart and Ms. Paulson had been deleted shortly after Ms. Fulmer's Declaration—which identified a relationship between Ms. Barnhart and Ms. Paulson for purposes of personal jurisdiction—was filed.[82] Mr. Saltz also discovered that, after Defendants' Motion to Dismiss for lack of personal jurisdiction was filed, Ms. Paulson told her viewers on a YouTube livestream not to share where they live.[83] Therefore, Mr. Saltz reasonably concluded that evidence relating to personal jurisdiction intentionally was deleted or obfuscated, and as a result, was more difficult to find.[84] There is no mention of a "conspiracy" between Ms. Barnhart and Ms. Paulson.

---

[77] Saltz Decl. ¶ 9; Signed Barnhart Decl., Dkt. 38-1, ¶ 17.
[78] Saltz Decl. ¶ 9, fn. 2.
[79] *See* Signed Barnhart Decl., Dkt. 38-1, ¶ 17. Ms. Barnhart also testified that she did not correct other persons' statements on Twitter that Ms. Barnhart worked for a Washington state government agency. *See id.* at ¶ 13.
[80] Plaintiffs' Counsel followed the redaction rules contained in LCR 5.2. There was no private information filed within the purview of L.R. 5.2.
[81] Motion for Sanctions Dkt. 59, p. 13.
[82] Saltz January 4 Decl. Dkt. 30-1, ¶¶ 14–20.
[83] Saltz January 4 Decl. Dkt. 30-1, ¶ 22.
[84] Saltz January 4 Decl. Dkt. 30-1, ¶ 4 ("[E]vidence was made more difficult to find, and otherwise comprehend, due to the fact that there has been a concerted effort to obfuscate and/or destroy…evidence.").

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SANCTIONS - 13
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

*c. Mr. Saltz's messages with "Ms. G" were not "threats."*

Defendants seek sanctions against Plaintiffs' counsel based on allegations that Mr. Saltz sent threatening direct messages to Ms. Barnhart on January 1, 2021.[85] First, it is undisputed, though purposely vague in Defendants' Motion for Sanctions, that Mr. Saltz did not send any direct messages to Ms. Barnhart, but rather sent direct, non-threatening messages to "Ms. G."[86] Second, Ms. Barnhart testified that she did not take these messages as a "threat."[87] Finally, Mr. Brown's own correspondence reveals that Ms. Barnhart did not take Mr. Saltz's messages to Ms. G as a threat. On January 11, 2021, Mr. Brown wrote to Ms. Barnhart regarding Mr. Saltz's direct messages with Ms. G, suggesting: "It would be great if you would state that you took it as a threat and felt intimidated etc."[88] Had Ms. Barnhart truly felt threatened, there would have been no need for Mr. Brown's suggestion.

*d. Ms. Barnhart terminated her attorney-client relationship with Mr. Brown, if any, prior to contacting Plaintiffs' counsel.*

Defendants simultaneously assert that Mr. Brown never represented Ms. Barnhart and that Plaintiffs' counsel must be sanctioned because they should have known that Mr. Brown represented Ms. Barnhart. In Defendants' recently filed Motion to Quality Counsel, Defendants argue for six pages that Ms. Barnhart could never have reasonably assumed that Mr. Brown represented her[89] and acknowledge that Ms. Barnhart cut off all communication with Mr. Brown (i.e., terminated the attorney-client relationship) the day before she spoke with Plaintiffs' counsel.[90]   As such, Defendants' argument in the instant motion is absurd. How can Plaintiffs' counsel be sanctioned for violating Mr. Brown's attorney-client relationship with Ms. Barnhart if no such relationship actually existed, especially when Defendants acknowledge their

---

[85] Notably, the district court in the case cited by Defendants (*Somers v. Digital Realty Trust Inc.*, 2017 WL 3623728 (N.D. Cal. July 13, 2017)) did not use its inherent powers to sanction the party's attorney.
[86] Saltz Decl. ¶¶ 18–19.
[87] *See* Signed Barnhart Decl., Dkt. 38-1, ¶ 22 ("Plaintiff's counsel's attempts to communicate with me privately to informally obtain information contained no threats.").
[88] Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 198 of 221.
[89] Defendants' Motion to Qualify Counsel, Dkt. 63, pp. 4–9.
[90] *Id.* at p. 10.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SANCTIONS - 14
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1    communications were cut off before any contact with Plaintiffs' counsel occurred?

2         Whether Mr. Brown represented Ms. Barnhart and whether any conflict exists due to that

3    relationship are issues for the Court to determine. What is clear in the evidence[91] is that Ms.

4    Barnhart terminated her relationship with Mr. Brown on January 11, 2021, the day before she

5    spoke with Plaintiffs' counsel; therefore, Plaintiffs' counsel could not have violated RPC 4.2.[92]

6    **D.    DEFENDANTS' REQUEST FOR ATTORNEYS' FEES IS NOT REASONABLE UNDER THE SCOPE OF § 1927 AND THE COURT'S INHERENT POWER.**

7         If the Court finds that Plaintiffs' counsel acted in bad faith and an award of attorney's

8    fees is appropriate under 28 U.S.C. § 1927, the court must first determine how much of the

9    attorney's fees are due to "excessive" litigation.[93] Then, the "excess" amount is evaluated for

10   reasonableness.[94] "The Court's purpose in imposing sanctions [under § 1927] is to deter certain

11   behavior and not necessarily to compensate the moving party."[95] Additionally, any attorney's

12   fees awarded under the district court's inherent power must be "limited to the fees the innocent

13   party incurred solely because of the misconduct."[96] Here, as set forth above, the declarations

14   filed by Plaintiffs cannot be considered "excessive" litigation. Even assuming that the

15   declarations were "excessive," then any award of sanctions must be limited to Defendant's

16   required response to the declarations, which does not include the instant Motion for Sanctions.[97]

17                        **IV.    CONCLUSION**

18        For the foregoing reasons, Plaintiffs request that the Court deny the Motion for Sanctions.

---

[91] *See* Signed Barnhart Decl., Dkt. 38-1, ¶ 28 ("I cut off all communications with Defendants and Defendants' attorneys….I therefore reached out to Plaintiffs' Counsel by telephone for the first time on January 12, 2021[.]"); *see also* Defs.' Mot. to Qualify, Dkt. 63, p. 10 ("And, in fact, Ms. Barnhart did cease communicating with [Mr. Brown] on January 11, 2021.").

[92] Signed Barnhart Decl., Dkt. 38-1, ¶ 28; Defendants' Motion to Qualify Counsel, Dkt. 63, p. 10.

[93] *See In re Yagman*, 796 F.2d 1165, 1184–85 (9th Cir. 1986); *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1347–48 (9th Cir. 1985).

[94] *See In re Yagman*, 796 F.2d at 1184–85.

[95] *Phillips v. Estate of Arnold*, Case No. C13-0444RSM, 2014 WL 12774311, at *2 (W.D. Wash. Dec. 4, 2014)).

[96] *United States v. Sauk-Suiattle Indian Tribe of Wash.*, Case No. C16-0052JLR, 2019 WL 6052646, at *6 (W.D. Wash. Nov. 15, 2019).

[97] *See Sauk-Suiattle Indian Tribe of Wash.*, 2019 WL 6052646, at *12 (finding no award for drafting the motion for sanctions).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS - 15**
(2:20-cv-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

Dated: March 3, 2021

                                    CARROLL, BIDDLE, & BILANKO, PLLC


                              By:    */s/ Jeffrey E. Bilanko*
                                     Jeffrey E. Bilanko, WSBA 38829

                                     */s/ Susan K. Kaplan*
                                     Susan K. Kaplan, WSBA 40985

                                     Carroll, Biddle, & Bilanko, PLLC
                                     1000 2nd Avenue, Suite 3100
                                     Seattle, WA 98104
                                     Phone: (206) 338-1496
                                     Phone: (206) 338-1518
                                     Email: jbilanko@cbblegal.com
                                     Email: skaplan@cbblegal.com
                                     Attorneys for Plaintiffs

                                    JACOBSON, RUSSELL, SALTZ, NASSIM
                                    & DE LA TORRE LLP


                              By:    */s/ Michael J. Saltz*
                                     Michael J. Saltz

                              By:    */s/ Elana R. Levine*
                                     Elana R. Levine

                                     JACOBSON, RUSSELL, SALTZ,
                                     NASSIM & DE LA TORRE LLP
                                     Michael J. Saltz, Esq.
                                     Elana R. Levine, Esq.
                                     1880 Century Park East, Suite 900
                                     Los Angeles, CA  90067
                                     Telephone: (310) 446-9900
                                     Facsimile: (310) 446-9909
                                     Email: msaltz@jrsnd.com
                                     Email: lani@jrsnd.com
                                     Attorneys for Plaintiffs
                                     *Admitted pro hac vice*

**PLAINTIFFS' OPPOSITION TO**            **CARROLL, BIDDLE, & BILANKO, PLLC**
**DEFENDANTS' MOTION FOR**                      1000 2nd Avenue, Suite 3100
**SANCTIONS - 16**                                  Seattle, WA  98104
(2:20-cv-01606-BJR)