THE HONORABLE BARBARA J. ROTHSTEIN

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| TATIANA WESTBROOK, an individual; JAMES WESTBROOK, an individual; HALO BEAUTY PARTNERS, LLC, a Nevada Limited Liability Company,<br><br>                    Plaintiffs,<br><br>     v.<br><br>KATIE JOY PAULSON, an individual; WITHOUT A CRYSTAL BALL, LLC, a Minnesota Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | NO. 2:20-cv-01606-BJR<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO QUALIFY**<br><br>**ORAL ARGUMENT REQUESTED** |

18

19

20

21

22

23

24

25

26

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO QUALIFY
(2:20-cv-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1

### I.   INTRODUCTION

2        Before Defendants even have filed an Answer admitting or denying any of the allegations

3  in Plaintiffs' Complaint, Attorney Michael P. Brown and Defendants are seeking a blanket order

4  from the Court that Mr. Brown and his law firm cannot be disqualified—now or ever—as

5  counsel in the instant litigation "or future proceedings in another forum" based on his conduct

6  related to non-party witness, Lori Ann Barnhart.[1]   Defendants' Motion to Qualify should be

7  denied because such a motion is inappropriate, the issue of disqualification is not yet ripe,

8  discovery is stayed, the totality of the communications between Mr. Brown and Ms. Barnhart is

9  unknown, and the requested relief is overbroad.[2]   Defendants fail to cite any legal standard for a

10 motion to qualify; nor do they cite a single case in which a party has successfully requested such

11 relief from any Court.  Perhaps that is because it appears no such case exists.  The lack of such

12 case law is likely because, once admitted to practice before a court, attorneys are not required to

13 then affirmatively "prove" they are qualified.  Rather, counsel is presumed qualified and eligible

14 to practice before this Court until: 1) counsel withdraws,[3] or 2) the Court exercises its duty to

15 examine charges of a conflict of interest brought in a motion to disqualify and determines that

16 counsel is disqualified.[4]  Defendants' counsel, Mr. Brown, has not withdrawn, and no motion to

17 disqualify Mr. Brown has yet been filed in this matter.[5]

18        On January 13, 2021, Ms. Barnhart, submitted testimony against Defendants' interests[6]

19 relating to personal jurisdiction (referred herein as the "Signed Barnhart Declaration"), which: 1)

20 shows that Defendant Katie Joy Paulson misrepresented the nature and scope of Defendants'

21

22  [1] Defendants' Motion to Qualify, Dkt. 63, p. 3.
   [2] Nor are Plaintiffs obligated to file a motion to disqualify at this point in the proceedings.  *See FMC Techs., Inc. v.*
23  *Edwards*, 420 F. Supp. 2d 1153, 1162–63 (W.D. Wash. 2006).
   [3] *See* LCR 83.2(b) (withdrawal of attorneys).
24  [4] *See FMC Techs., Inc.*, 420 F. Supp. 2d at 1157.
   [5] Plaintiffs respectfully reserve the right to timely file a motion to disqualify counsel when the issue is ripe.
25  [6] Defendants acknowledged this conflict in the instant Motion when they asserted that "Ms. Barnhart's 'first' story
   was plainly consistent with Defendants' interests" and that the Signed Barnhart Declaration "chang[ed] that story
26  180 degrees."  *See* Defendants' Motion to Qualify, Dkt. 63, p. 11.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO QUALIFY - 1**
(2:20-cv-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1   Washington contacts[7] in her declarations filed in support of Defendants' Motion to Dismiss; and

2   2) establishes Defendants have sufficient minimum contacts with Washington for this Court to

3   exercise personal jurisdiction over them.[8]  Although it appears from the correspondence between

4   Ms. Barnhart and Mr. Brown—over 150 emails and two phone calls—that a reasonable person

5   would have a subjective belief that an attorney-client relationship existed,[9] a determination of

6   Mr. Brown's qualifications to remain as counsel in this matter due to his conduct with Ms.

7   Barnhart is premature.  Defendants' Motion to Dismiss regarding personal jurisdiction still is

8   pending before this Court; no Answer, Affirmative Defenses (other than raised in the Motion to

9   Dismiss), and/or Counterclaims have been filed identifying the issues in this case; and discovery

10  in this matter currently is stayed.[10]

11          Until the pending Motion to Dismiss is decided, and Defendants have answered

12  Plaintiffs' Complaint, it is unknown whether Ms. Barnhart, who currently is a witness on the

13  jurisdiction issue, will be deposed and/or be a witness at trial subject to cross-examination by

14  Mr. Brown and/or another attorney at his firm.  There is no need to inundate the Court with a

15  motion to disqualify (or qualify) counsel that may be needless if the Court grants Defendants'

16  Motion to Dismiss.[11]   Likewise, until Defendants file an Answer and until discovery is

17  performed, it is unknown whether Ms. Barnhart has knowledge of any non-jurisdictional issues

18  relevant to this case, such that she would be a testifying witness as to those issues at a trial on the

19  merits.

20          Additionally, the Court currently does not have all the facts to affirmatively and

21

22  [7] Declaration of Katherine Paulson in Support of Defendants' Motion to Dismiss ("Paulson Decl."), Dkt. 19, ¶ 4.
    [8] See Declaration of Kim Fulmer ("Fulmer Decl."), Dkt. 29, ¶¶ 10–15; Declaration of Michael J. Saltz in support of

23  Plaintiffs' Opposition to Defendants' Motion to Dismiss ("January 4 Declaration"), Dkt. 30-1; Declaration of Lori
    Ann Barnhart ("Signed Barnhart Decl."), Dkt. 38-1, ¶¶ 8–11.

24  [9] See Signed Barnhart Decl., Dkt. 38-1, ¶ 21, 25; see also Brown Suppl. Decl., Dkt. 43-1, Ex. B.
    [10] See Joint Status Report and Discovery Plan, Dkt. 31, at Sections 1A and 1F; Stipulated Order Staying Discovery,
    Dkt. 36.

25  [11] Even if the Court denies the Motion to Dismiss, the issue of disqualification nevertheless may be moot if
    Defendants decide not to pursue a lack of personal jurisdiction defense and there is no other basis to call Ms.

26  Barnhart as a witness at trial.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**          **CARROLL, BIDDLE, & BILANKO, PLLC**
**MOTION TO QUALIFY - 2**                          1000 2nd Avenue, Suite 3100
(2:20-cv-01606-BJR)                                Seattle, WA  98104

indefinitely <u>qualify</u> Mr. Brown as counsel.  Although Mr. Brown has provided the Court with a "compendium" of his email communications with Ms. Barnhart,[12] he has not represented that he provided this Court with *all* his communications with Ms. Barnhart.  To be certain, Ms. Barnhart provided Plaintiffs' counsel with additional communications that were <u>not</u> included in Mr. Brown's numerous declarations.[13]  Thus, neither the Court nor Plaintiffs' counsel can fully evaluate Mr. Brown's relationship with Ms. Barnhart without all the necessary information.

There is no question that Mr. Brown now has a conflict of interest regarding Ms. Barnhart.  The record reveals that Mr. Brown has repeatedly attempted to discredit Ms. Barnhart's testimony, truthfulness, and mental competency, despite his own efforts to use Ms. Barnhart for her testimony on behalf of Defendants, <u>as recently as two days before the Signed Barnhart Declaration was filed</u>.[14]  Finally, Defendants' Motion to Qualify relies on hearsay evidence:[15]  1) Mr. Brown's correspondence with Ms. Barnhart, and 2) Mr. Brown's correspondence with purported relatives of Ms. Barnhart.

In light of these issues, Plaintiffs were not, and are not, in a position to stipulate to Mr. Brown's request to retroactively remedy his conflicts of interest with his former client, Ms. Barnhart.[16]  For the same reasons, this Court should deny Defendants' Motion to Qualify.

---

[12] Brown Suppl. Decl., Dkt. 43-1, p. 4 fn.6.

[13] Plaintiffs identified at least two emails between Mr. Brown and Ms. Barnhart that have not been filed by Mr. Brown. *See* Declaration of Elana Levine in support of Plaintiffs' Opposition to Defendants' Motion for Sanctions ("Levine Decl."), Dkt. 65-1, ¶ 7, Ex. 1.

[14] *See* Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 193 of 221 (January 11 at 8:02 am: "We will be filing an objection today…and I'd like to include a statement from you if you are on board with that."); p. 195 of 221 (January 11 at 9:10am: "I'd like to stand up for you by filing your declaration if you'd let me."); p. 198 of 221 (January 11 at 3:16pm:"We're filing something today that addresses the threat Saltz recently made to you….It would be great if you would state that you took it as a threat and felt intimidated, etc.").

[15] Defendants cannot raise new, admissible evidence in their reply.  *See Goldmanis v. Insinger*, Case No. C13–2035–JCC, 2014 WL 3739430, at *4 (W.D. Wash. July 29, 2014), *aff'd in part, dismissed in part*, 679 F. App'x 605 (9th Cir. 2017) (finding that counsel may not decline to submit declarations to support a motion and then, in reply, provide declarations that counter the opposing party's argument with new allegations).

[16] Mr. Brown also mis-characterizes Plaintiffs' counsel's position and statements during the meet and confer on the Motion to Qualify and fails to inform the Court that Plaintiffs' counsel told Mr. Brown: 1) his mis-characterization was not Plaintiffs' counsel's "recollection of what was said during [the] call"; and, 2) Plaintiffs' counsel's "recollection was that what [Plaintiffs' counsel] represented was that [they] didn't intend, at that time, to make a

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO QUALIFY - 3**
(2:20-cv-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1

## II.   CLARIFICATION OF FACTS

### A.  Communications between Lori Ann Barnhart and Mr. Brown.

Beginning on December 24, 2020, Mr. Brown and Ms. Barnhart proceeded to exchange nearly 150 emails and two short phone calls over the course of 18 days.[17]   None of those communications establish that Mr. Brown advised Ms. Barnhart in writing that he did not represent her or that he was not providing her legal advice.  The nature of the approximately 150 emails that have been produced by Mr. Brown reveal that he provided Ms. Barnhart with legal advice relating to: 1) alleged harassment she received on Twitter following the filing of the Declaration of Kim Fulmer; 2) how she should respond to Plaintiffs' proposed subpoena; and 3) her proposed testimony in support of Defendants' Motion to Dismiss in this matter.  Additionally, the primary reason Ms. Barnhart contacted Mr. Brown was to solicit his services to correct the record as to her employment.[18]

In the Signed Barnhart Declaration, Ms. Barnhart testified that Mr. Brown offered to represent her as a third-party witness in this litigation.[19]   Ms. Barnhart also advised Plaintiffs' counsel on January 12, 2021 that she believed that Mr. Brown was acting as her attorney because she repeatedly asked him for legal advice, which he provided,[20] and he offered on multiple

---

motion to the [C]ourt on that issue."  Declaration of Michael Brown in support of the Motion to Qualify, Dkt. 63, Ex. A., at p. 6.

[17] Brown Suppl. Decl., Dkt. 43-1 ¶¶ 3, 7, 9; Defendants' Motion to Qualify, Dkt. 63, pp. 4, 6.

[18] *See* Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 33 of 221 ("I hope that other Lori isn't being harassed."); p. 47 of 221 ("Look what they have done to me and the other Lori"); p.53 of 221 ("Will anything be put out so this woman's information will stop spreading[?]"); p. 75 of 221 ("I contacted you because of the doxing of the wrong Lori"); p. 146 of 221 ("Do they know I am not the other Lori yet?"); p. 160 of 221 ("I think they still believe that I am the other Lori."); p. 165 of 221 ("Do they know I am not the other Lori?"); p. 177 of 221 ("They can show up at Lori's house or work, harass her and her family now too"); and p. 186 of 221 ("Can you tell me what is going on with the other Lori?").

[19] *See* Signed Barnhart Declaration, Dkt. 38-1, ¶¶ 21, 25, 26; *see also* Brown Suppl. Decl., Dkt. 43-1, p. 195 of 221, ("I'd like to stand up for you by filing your declaration if you'd let me. It costs you nothing.").

[20] *See* Levine Decl., Dkt. 65-1, ¶ 7, Ex. 1, (Ms. Barnhart: "Figures. What are your thoughts?"; *see also* Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 30 of 221 (Ms. Barnhart: "[I]s there anything I can do, or should I try to ignore it?"); p. 43 of 221 (Mr. Brown: "I'll have to think about this.  For the time being, it's best for you not to make any contact with Katie (and vice-versa).  They are working hard to try to paint you two as a 'team' and that's not good for either of you."); p. 44 of 221 (Ms. Barnhart: "Don't worry I will not say nor do anything without telling you first."); p. 159 of 221 (Mr. Brown: "You have a right to object to the subpoena. At a minimum that would delay everything and the judge might just say you don't have to respond."); p. 182 of 221 (Mr. Brown: "[Y]ou have done

---

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO QUALIFY - 4
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1  occasions to help her "at no cost."[21]

2      Mr. Brown also dissuaded Ms. Barnhart from contacting Plaintiffs' counsel directly.  For

3  example, on December 30, 2020 at 5:55 p.m., Mr. Brown wrote, in relevant part:

4
   *I spoke with Saltz today. They are planning to subpoena your Twitter account*
5  *because they see that you closed your account and they think there might be*
   *evidence there about your connection to Katie. I did not disclose that you and I*
6  *are in touch. Saltz even complained to me that you "threatened" him via DM.*[22]

7  At 6:18 p.m., Ms. Barnhart responded:

8      *Figures. <u>What are your thoughts</u>?*[23]

9  At 6:22 p.m., Mr. Brown responded:

10
   *I'll have to think about this. For the time being, it's best for you not to make any*
11  *contact with Katie (and vice-versa). They are working hard to try to paint you two*
   *as a "team" and that's not good for either of you.*[24]

12  At 7:16 p.m., Ms. Barnhart responded, in relevant part:

13
   *<u>Maybe it would just be easier if I went and met with [Saltz] myself</u>. He can see me*
14  *face to face and see I am no threat and I have nothing to hide….I actually present*
   *myself very well and know how to be professional when I need to be. <u>Don't worry</u>*
   *<u>I will not say nor do anything without telling you first</u>.*[25]

15  On December 31, 2020 at 6:37 a.m., Mr. Brown wrote:

16
   *I understand that impulse but you need to understand the type of person he is. Do*
17  *you have the ability to pay for your own lawyer to help you if they do issue a*
   *subpoena?*[26]

18  It is unclear if Ms. Barnhart responded to the above email as the record is devoid of such a

19  response.  Yet, on December 31, 2020 at 2:47 p.m., Mr. Brown wrote:

20  ────────────────────────────
   nothing illegal….I recommend that you sit tight, accept service if they come to your door, and then we can take it
21  form [sic] there.").
   [21] *See* Levine Decl., Dkt. 65-1, ¶ 7; *see, e.g.*, Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 45 of 221 (Mr. Brown: "Do
22  you have the ability to pay for your own lawyer if they do issue a subpoena?"); p. 159 of 221 (Mr. Brown: "I can
   help with that."); p. 195 of 221 (Mr. Brown: "You don't need to spend money or hire a lawyer to respond to the
23  subpoena"); p. p. 198 of 221 (Mr. Brown: "I can give you some assistance with respect to responding to the
   subpoena."); p. 205 of 221 (Mr. Brown: "I think I can help you with the response, for no charge.  It's very simple.").
24  [22] Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 42 of 221.
   [23] Notably, this email was not provided by Mr. Brown in the multitude of his previous filings with this Court.  *See*
25  Levine Decl., Dkt. 65-1, ¶ 7 (emphasis added).
   [24] Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 43 of 221.
   [25] *Id.* at p. 44 of 221 (emphasis added).
26  [26] *Id.* at p. 45 of 221.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**    **CARROLL, BIDDLE, & BILANKO, PLLC**
**MOTION TO QUALIFY - 5**                  1000 2nd Avenue, Suite 3100
(2:20-cv-01606-BJR)                      Seattle, WA  98104

*You'll get a copy of the subpoena if they issue it. If it just asks for communications with Katie then it sounds like there won't be much to it. If it is too broad (like asking for all your tweets etc) you can challenge it.*[27]

Mr. Brown also convinced Ms. Barnhart on at least one occasion that she did not need to consult with separate counsel:

On January 8, 2020 at 5:35 p.m., Ms. Barnhart wrote, in relevant part:

*I used to volunteer for Snohomish county legal services*[28] *maybe they can help me.*[29]

At 5:41 p.m., Mr. Brown responded:

*What help do you think you'd need from legal services?*[30]

At 5:48 p.m., Ms. Barnhart wrote, in relevant part:

*Advice.*[31]

At 5:56 p.m., Mr. Brown responded, in relevant part:

*I understand.  You really have nothing to worry about with this. You've done nothing wrong. I think I can help you with the response, for no charge.  It's very simple.*[32]

On or around January 11, 2021, Ms. Barnhart terminated her attorney-client relationship

---

[27] *Id.* at p. 46 of 221.

[28] Notably, Snohomish County Legal Services is a free legal aid program.  Thus, Mr. Brown's attempt to explain that his statements to Ms. Barnhart were to reassure her that she did not need to spend money in responding to the subpoena          is          misleading.          Official          Website          of          the          City          of          Everett          Washington, https://everettwa.gov/Faq.aspx?QID=395.  The Court may take judicial notice of this fact because it is a fact not subject to reasonable dispute and is available from a reliable source.  *See* ER 201; *Cooper v. Simpson Strong-Tie Co., Inc.*, 460 F. Supp. 3d 894, 905 (N.D. Cal. 2020) (taking judicial notice of pages from official city websites); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (("[C]ourt can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." (internal quotations omitted)); *Daniels–Hall v. National Education Association,* 629 F.3d 992, 999 (9th Cir.2010) (taking judicial notice of information on the websites of two school districts because they were government entities).

[29] Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 171 of 221.

[30] *Id.* at p. 173 of 221.

[31] Sealed Second Supplemental Declaration of Michael P. Brown in support of Defendants' Motion to Dismiss ("Second Suppl. Brown Decl."), Dkt. 52-1, Ex. C, p. 36 of 39.

[32] Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 176 of 221.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO QUALIFY - 6**
(2:20-cv-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1   with Mr. Brown.[33]  On January 13, 2021, the Signed Barnhart Declaration was filed.[34]

2       On January 22, 2021, Mr. Brown filed a supplemental declaration in support of

3   Defendants' Motion to Dismiss, in which he purports to characterize his communications with

4   Ms. Barnhart and accuses Ms. Barnhart of filing false statements under penalty of perjury.[35]  Mr.

5   Brown also attached "the relevant emails"[36] with Ms. Barnhart—nearly 200 pages—for public

6   review and consumption.[37]  Mr. Brown withheld "those containing especially sensitive health

7   information" and purported to provide such emails in his second supplemental declaration.[38]  It

8   remains unclear whether *all* of Mr. Brown's communications with Ms. Barnhart have been

9   provided.

                            III.   ARGUMENT

10

11  **A.   MOTION TO STRIKE**

12      Defendants again rely on hearsay evidence and three unsigned declarations prepared by

13  Mr. Brown (collectively, "Unsigned Barnhart Declaration") to support the instant Motion.[39]

14  Plaintiffs previously moved to strike this evidence in their Opposition to Defendants' Motion for

15  Sanctions, pursuant to Local Civil Rule 7(g), the Federal Rules of Evidence 801 and 802, the

16  Local Electronic Filing Procedures at Section L, and 28 U.S.C. § 1746.  Plaintiffs reiterate their

17  previous motion to strike.[40]

---

18  [33] *See* Signed Barnhart Declaration, Dkt. 38-1, ¶ 28; Declaration of Michael J. Saltz in support of Plaintiffs'
19  Opposition to Defendants' Motion for Sanctions, Dkt. 65-2, ¶ 29; Levine Decl., Dkt. 65-1, ¶ 6; *see also* Second
    Suppl. Brown Decl., Dkt. 52, Ex. C, p. 38 of 39 ("Good luck with your case."); Brown Suppl. Decl., Dkt. 43-1, Ex.
20  B, p. 189 of 221 ("Unfortunately I see who the slime ball is now."); Defendants' Motion to Qualify Counsel, Dkt.
    63, p. 4.
    [34] Signed Barnhart Decl., Dkt 38-1.
21  [35] *See e.g.*, Brown Suppl. Decl., Dkt. 43-1, ¶¶ 4, 6, 7, 23.
    [36] *Id.* at ¶ 8.
22  [37] Brown Suppl. Decl., Dkt. 43-1, Exs. A–J.
    [38] Second Suppl. Brown Decl., Dkt. 52, Ex. B.
23  [39] Brown Suppl. Decl., Dkt. 43-1, ¶¶ 9–11, 13–17, 20, 22–26, 34–40, including Ex. B (pp. 30–205 of 221); Second
    Suppl. Brown Decl., Dkt. 52, Exs. A–C; and Declaration of Michael P. Brown in support of Defendants' Motion for
    Sanctions ("Brown Decl.").
24  [40] Although Ms Barnhart's own prior statements might be used for impeachment purposes on cross-examination if
25  Ms. Barnhart testifies at trial, such evidence is inadmissible to support a motion.  *See Orr v. Bank of Am., NT & SA*,
    285 F.3d 764, 778 (9th Cir. 2002); *see also* FRE 802; 28 U.S.C. § 1746; *Link Treasure Ltd. v. Baby Trend, Inc.*, 809
26  F. Supp. 2d 1191, 1195 (C.D. Cal. 2011).  On a motion to dismiss for lack of personal jurisdiction, the Court does

---

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO QUALIFY - 7
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

**B.    ALTHOUGH POTENTIAL CONFLICT OF INTEREST AND ETHICAL ISSUES PLAINLY EXIST, DISQUALIFICATION IS NOT YET RIPE.**

Attorneys practicing in the Western District of Washington must abide by the Rules of Professional Conduct as promulgated and interpreted by the Washington Supreme Court.[41]  The Court retains responsibility for controlling the conduct of lawyers practicing before it.[42] "[N]onclient litigants may, under proper circumstances, bring motions to disqualify counsel based on conflicts of interest" where an "unethical change of sides was manifest and glaring" or an "open and obvious" ethical violation, which compels the Court to exercise its "plain duty to act."[43]

**1.    Mr. Brown's qualification or disqualification is not ripe.**

While a motion to disqualify counsel ultimately may be necessary, Defendants' instant Motion to Qualify is premature as well as improper, and the requested relief—"that the Court enter an order finding that no grounds exist to disqualify [Mr. Brown or his law firm]"[44]—is overbroad.  Defendants' efforts to preemptively obtain a ruling on Mr. Brown's disqualification due to alleged concerns about Plaintiffs using the issue as a "litigation tactic" are misguided and fail to show ripeness.  Contrary to Defendants' assertions, Defendants are not being "forced to proceed under the constant threat that Plaintiffs will choose some strategic time in the future to make the disqualification motion."[45]  Rather, it is Mr. Brown's actions that have created the situation in which Defendants find themselves, and it is Defendants' Motion to Dismiss and their agreement to stay discovery that make the disqualification issue not ripe.[46]  Moreover, Washington law prohibits the use of motions to disqualify as litigation tactics.  A motion to

---

not weigh the credibility of witnesses and factual disputes are resolved in favor of the plaintiff. *See Washington Fed. Bank v. Garold*, Case No. C19-995RSM, 2020 WL 60256, at *1 (W.D. Wash. Jan. 6, 2020).

[41] *See* LCR 83.3(a)(2).

[42] *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir.1980).

[43] *FMC Techs., Inc.*, 420 F. Supp. 2d at 1156 (quoting *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976)).

[44] *See* Defendants' Motion to Qualify, Dkt. 63, p.12.

[45] *Id.* at p. 2.

[46] *See* Defendants' Motion to Dismiss, Dkt. 17; Stipulated Order Staying Discovery, Dkt. 36.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO QUALIFY - 8
(2:20-cv-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

disqualify must be filed "with reasonable promptness" after a party discovers the basis for an alleged conflict, and failure to do so may result in waiver of the objecting party's ability to bring the motion.[47]  "Delay in filing [a] motion to disqualify is suggestive of its use for purely tactical purposes and could be the sole grounds for denying [the motion]."[48]

Here, Plaintiffs have not delayed filing a motion to disqualify because the disqualification issue is not yet ripe.  Plaintiffs first became aware of a potential issue of disqualification on January 12, 2021, which was after Defendants' Motion to Dismiss was filed on December 2, 2020.  Depending on the Court's ruling on the Motion to Dismiss, Defendants' litigation decisions (i.e. whether Defendants continue to pursue a jurisdiction defense), and on what Defendants put at issue in their anticipated Answer (assuming Defendants file an Answer), Mr. Brown's qualification (or disqualification) as counsel in this matter may be rendered moot.[49] Additionally, discovery has been stayed in this matter until the Court rules on the Motion to Dismiss, and until discovery is conducted, Plaintiffs cannot ascertain whether Ms. Barnhart would be a testifying witness regarding jurisdictional and/or non-jurisdictional facts,[50] or whether Mr. Brown is in possession of a proper written conflict waiver signed by Defendants and Ms. Barnhart contrary to her testimony.[51]  Therefore, the disqualification issue is not yet ripe for consideration.  In addition, even if the disqualification issue was ripe for consideration, a "delay" of less than three months while discovery has been stayed and no substantive motion practice has occurred, or can occur until the Court rules on the pending Motion to Dismiss, is not

---

[47] *Eubanks v. Klickitat Cnty.*, 181 Wn. App. 615, 620, 326 P.3d 796 (2014) (citing *First Small Bus. Inv. Co. v. Intercapital Corp.*, 108 Wn.2d 324, 337, 738 P.2d 263 (1987)).
[48] *In re Firestorm 1991*, 129 Wn.2d 130, 145, 916 P.2d 411 (1996).
[49] *See, e.g.*, *FMC Techs., Inc.*, 420 F. Supp. 2d at 1162 (finding no undue delay for six-month gap between beginning of lawsuit and filing motion to disqualify because the issue of disqualification was not ripe until the district court denied the defendants' second motion to dismiss claims seeking to rely on the testimony of the former client).
[50] Joint Status Report, Dkt. 31, at Sections 1A and 1F; Stipulated Order Staying Discovery, Dkt. 36.
[51] *See* Signed Barnhart Decl. Dkt. 38-1, ¶ 26.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO QUALIFY - 9
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1  unreasonable nor grounds for denying a motion to disqualify.[52]

2      **2. Mr. Brown and Ms. Barnhart appear to have formed an attorney-client**
           **relationship.**

3
        An attorney-client relationship exists when "the conduct between an individual and an
4
   attorney is such that the individual subjectively believes such a relationship exists."[53]   The
5
   client's subjective belief, however, does not control the issue unless it is "reasonably formed
6
   based on the attending circumstances, including the attorney's words or actions."[54]  A court must
7
   have the facts of what "actually occurred" between two parties in order to determine the legal
8
   question of whether the parties established an attorney-client relationship.[55]  "An attorney-client
9
   relationship may be implied from the parties' conduct; it need not be memorialized in writing."[56]
10
   Washington courts have held that even a "short consultation" meeting or conversation may
11
   create an attorney-client relationship."[57]
12
        Here, Ms. Barnhart testified that she had an attorney-client relationship with Mr.
13
   Brown.[58]  Defendants even sought sanctions against Plaintiffs' counsel for violating RPC 4.2
14
   when they spoke with Ms. Barnhart.[59]  Additionally, Mr. Brown has advised the Court—on more
15
   than one occasion—that he and Ms. Barnhart exchanged nearly "150 emails and two phone
16
   calls" over the course of 18 days.[60]  While Mr. Brown only cites to two emails to/from Ms.
17
   Barnhart in the instant Motion to Qualify, the breadth and nature of the available correspondence
18

19
   ---
20  [52] *See Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87–88 (9th Cir.1983) (finding undue delay where
    motion to disqualify was filed two years and six months after disqualification issue arose and 33 days before trial);
    *Eubanks*, 181 Wn. App. at 620 (finding undue delay where motion to disqualify was filed 18 months after
21  disqualification issue arose and counsel at issue engaged in extensive litigation activities on behalf of his clients
    during that time).
22  [53] *Dietz v. Doe*, 131 Wn.2d 835, 843, 935 P.2d 611 (1997).
    [54] *In re Disciplinary Proceeding Against Egger*, 152 Wn.2d 393, 410–11, 98 P.3d 477 (2004).
23  [55] *Dietz*, 131 Wn.2d at 845.
    [56] *In re Disciplinary Proceeding Against Egger*, 152 Wn.2d at 410 (2004).
24  [57] *State v. Reeder*, 181 Wn. App. 897, 910, 330 P.3d 786 (2014), *aff'd*, 184 Wn.2d 805, 365 P.3d 1243 (2015).
    [58] Signed Barnhart Decl., Dkt 38-1.
25  [59] *See* Defendants' Motion for Sanctions, Dkt. 59, p. 13.
    [60] *See* Defendants' Motion for Sanctions, Dkt 59, pp. 6, 14; Declaration of Michael P. Brown in support of the
26  Motion for Sanctions ("Brown Decl. ISO Sanctions Mot."), Dkt., 60, ¶ 4; Brown Suppl. Decl., Dkt. 43-1, ¶ 7.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO QUALIFY - 10
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

as a whole appears to support Ms. Barnhart's reasonable belief that Mr. Brown represented her.
For example, the available correspondence shows that:

- Ms. Barnhart repeatedly requested Mr. Brown's legal advice[61] and, as early as December 31, 2020, told Mr. Brown that she would "not say nor do anything without telling [him] first."[62]

- Mr. Brown repeatedly offered Ms. Barnhart legal advice.[63]

- Mr. Brown actively dissuaded Ms. Barnhart from contacting Plaintiffs' counsel directly. Ms. Barnhart indicated to Mr. Brown on at least four occasions that she was inclined to contact Plaintiffs' counsel directly.[64]  However, Mr. Brown convinced Ms. Barnhart not to do so.[65]

Based on the preceding examples alone, Ms. Barnhart's subjective belief that an attorney-client relationship existed with Mr. Brown appears to be reasonably formed.  Ms. Barnhart terminated such attorney-client relationship on January 11, 2021.[66]

---

[61] *See, e.g.*, Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 30 of 221 ( "[I]s there anything I can do, or should I try to ignore it?"); p. 44 of 221 (Ms. Barnhart: "Don't worry I will not say nor do anything without telling you first."); p. 48 of 221 ("Wouldn't they need to mail me a subpoena or go directly to twitter?...What exactly am I accused of?"); p. 51 ("I have no idea what to do."); p. 146 of 221 ("Do they know that I am not the other Lori yet? What should I do?"); *see also* Levine Decl., Dkt. 65-1, Ex. 1, p. 24 ("What are your thoughts?").
[62] Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 44 of 221.
[63] *See, e.g.*, Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 45 of 221 ("Do you have the ability to pay for your own lawyer if they do issue a subpoena?"), p. 159 of 221 ("I can help with that."), p. 167 of 221 ("[H]ere's how the process plays out once you actually get the subpoena served on you formally…."), p. 168 of 221 ("It will be best for you to play this 'straight up' and make the legitimate objections once you have it."), p. 182 of 221 ("I recommend that you sit tight, accept service if they come to your door, and then we can take it from there."), p. 195 of 221 ("You don't need to spend money or hire a lawyer to respond to the subpoena. I'd like to stand up for you by filing your declaration if you'd let me.  It costs you nothing."), and p. 169 of 221 ("I can give you some assistance with respect to responding to the subpoena. Have you been served?").
[64] *See, e.g.*, Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 44 of 221 ("Maybe it would just be easier if I went and met with him myself… I have nothing to hide."); p. 47 of 221 ("For all I care they can look at all my internet activities."); p. 171 of 221 ("I guess I can just call [Mr. Saltz] and authorize YouTube and twitter to give him all of it."); p. 188 of 221 ("I will call [Mr. Saltz] tomorrow.").
[65] *See, e.g.*, Brown Suppl. Decl., Dkt. 43-1, Ex. B, p. 45 of 221 ("I understand that impulse but you need to understand the type of person he is."); p. 193 of 221 ("Can you please talk with me before you do anything?"); p. 200 of 221 ("I understand this is very stressful. You should at least speak with me about it.").
[66] Signed Barnhart Decl., Dkt. 38-1, ¶ 28; Defendants' Motion to Qualify Counsel, Dkt. 63, p. 10.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO QUALIFY - 11
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

### 3.  At the very least, Mr. Brown and Ms. Barnhart formed a prospective client relationship.

Even assuming Mr. Brown and Ms. Barnhart did not have an attorney-client relationship, Ms. Barnhart appears to be, at the very least, a prospective client to whom Mr. Brown owed certain duties.  Rule 1.18 of Washington's Rules of Professional Conduct, which establishes the duties owed to a prospective client, is the applicable rule here.  That rule provides in relevant part:

> (a) A person who <u>consults</u> with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, <u>a lawyer who has learned information from a prospective client shall not use or reveal that information</u>, except as Rule 1.9 would permit with respect to information of a former client or except as provided in paragraph (e).
>
> (c) <u>A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter</u>, except as provided in paragraphs (d) or (e). If a lawyer or LLLT is disqualified from representation under this paragraph or paragraph (c) of LLLT RPC 1.18, no lawyer in a firm with which that lawyer or LLLT is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).[67]

Comment 2 to RPC 1.18 states, in relevant part:

> Whether communications, including written, oral, or electronic communications, constitute a consultation depends on the circumstances. For example, a consultation is likely to have occurred if a lawyer, either in person or through the lawyer's communications in any medium, specifically requests or invites the submission of information about a potential representation <u>without clear and reasonably understandable warnings and cautionary statements that limit the lawyer's obligations</u>, and a person provides information in response…..In contrast, consultation does not occur if a person provides information to a lawyer in response to a communication that merely describes the lawyer's education, experience, areas of practice, and contact information, or provides legal information of general interest.

Here, Mr. Brown and Ms. Barnhart exchanged nearly 150 emails over the course of 18 days.  At no time has Mr. Brown submitted to this Court evidence or argument that he sent an

---

[67] RPC 1.18 (emphasis added).

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO QUALIFY - 12
(2:20-cv-01606-BJR)

1   email to Ms. Barnhart that contained any "clear and reasonably understandable warnings and

2   cautionary statements" that limited his obligations to Ms. Barnhart.  Instead, Mr. Brown made

3   numerous requests and repeatedly invited Ms. Barnhart to submit information about herself and

4   the matters at hand.[68]  Ms. Barnhart disclosed substantive and confidential information to Mr.

5   Brown that could be significantly harmful to her.[69]  Mr. Brown, therefore, may be barred from

6   using Ms. Barnhart's confidences against her and barred from representing Defendants, who

7   have adverse interests in the same matter.

8      **4. The record reflects a significant conflict of interest.**

9          While Plaintiffs have not yet moved to disqualify Mr. Brown and his law firm due to the

10  disqualification issue not being ripe, it is apparent that a conflict of interest exists such that

11  Defendants' Motion to Qualify must be denied.

12          Mr. Brown asserts that his communications with Ms. Barnhart were for two purposes: 1)

13  "to explain the abusiveness of the Fulmer Declaration," and 2) to confirm Defendants'

14  statements that they did not know Ms. Barnhart resided in Washington until that fact was

15  disclosed in this lawsuit."[70]  However, Ms. Barnhart's testimony submitted on January 13, 2021,

16  states, among other things, that: 1) Ms. Fulmer's declaration was accurate, with the exception of

17  where Ms. Barnhart allegedly worked[71]; 2) Defendant Paulson did, in fact, have reason to know

18  that Ms. Barnhart resided in Washington by at least April 2020, if not earlier[72]; and 3) Defendant

19  Paulson misrepresented the nature and scope of Defendants' Washington contacts[73] in her

20  declarations filed in support of the Motion to Dismiss.[74]

21

22

23  [68] *See, e.g.*, Brown Suppl. Decl., Dkt. 43-1, pp. 36, 40, 45, 54, 55, 69, 89, 191, 192.
    [69] *See* Second Suppl. Brown Decl., Dkt. 52, Ex. C.
24  [70] Defendants' Motion to Qualify, Dkt. 63, p. 5.
    [71] Signed Barnhart Decl., Dkt. 38-1, ¶ 17.
25  [72] *Id.* at ¶ 4.
    [73] Paulson Decl., Dkt. 19, ¶ 4.
26  [74] Signed Barnhart Decl., Dkt. 38-1, ¶ 15; Brown Suppl. Decl., Dkt. 43-1, p. 59 of 221.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**          **CARROLL, BIDDLE, & BILANKO, PLLC**
**MOTION TO QUALIFY - 13**                        1000 2nd Avenue, Suite 3100
(2:20-cv-01606-BJR)                               Seattle, WA  98104

1     Notably, Ms. Barnhart's testimony centers on the same issues Mr. Brown admits were the

2  subject of his former representation, and her testimony is not favorable to Mr. Brown or his

3  current clients.[75]   In fact, Mr. Brown alleges that Ms. Barnhart's testimony in the Signed

4  Barnhart Declaration changed the "first" story she told him by "180 degrees."[76]   That Mr. Brown

5  contends Ms. Barnhart's testimony is now in the *opposite* position is enough to establish

6  adversity.  "The crux of the adversity inquiry centers on a lawyer's duty of loyalty."[77]   "Parties

7  are allowed to switch sides; lawyers are not."[78]   "The underlying question is whether the lawyer

8  was so involved in the matter that the subsequent representation can be justly regarded as a

9  changing of sides in the matter in question."[79]

10     Not only is Ms. Barnhart's testimony unfavorable for Defendants and Mr. Brown, but

11  also, in nearly every one of Defendants' filings since January 13, 2021, Defendants and Mr.

12  Brown have attempted to use Ms. Barnhart's communications with Mr. Brown to discredit her;

13  accuse her of submitting false statements under penalty of perjury; and/or allege that she did not

14  have the capacity to execute the Signed Barnhart Declaration.[80]

---

15  [75] Defendants' Motion to Qualify, Dkt. 63 p. 11 ("[T]he only 'interest' even hinted at in the Second Barnhart
16  Declaration is Ms. Barnhart's alleged possession of *information* that contradicted testimony Ms. Paulson provided in
   support of Defendants' Motion to Dismiss.").

17  [76] Defendants' Motion to Qualify, Dkt. 63 p. 6 ("[T]he 150 emails exchanged between the undersigned and Ms.
   Barnhart over the previous 18 days were perfectly consistent with the [Unsigned] Barnhart Declaration, which she
18  was eager to sign under oath, and contradicted the testimony they were putting in front of her in the [Signed]
   Barnhart Declaration.").

   [77] *FMC Techs., Inc.*, 420 F. Supp. 2d at 1160.
19  [78] *Id.* (emphasis added).

   [79] RPC 1.9, Cmt. 2; *see also* RPC 1.7, Cmt. 1 ("Loyalty and independent judgment are essential elements in the
20  lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to
   another client, a former client or a third person or from the lawyer's own interests.") and Cmt. 5 ("Unforeseeable
21  developments, such as…realignment of parties in litigation, might create conflicts in the midst of a
   representation…").

22  [80] *See, e.g.*, Defendants' Praecipe, Dkt 43, p. 2 ("[A]lmost every material assertion of fact set forth in the Declaration
   of Lori Ann Barnhart, filed with Plaintiffs' Praecipe on January 13, 2021, is demonstrably false…"); Brown Suppl.
23  Decl., Dkt 43-1, ¶ 4 ("The Second Declaration is replete with plainly and provably false assertions of fact."), ¶ 6
   ("very false"), ¶ 7 ("numerous falsities"), ¶ 8 ("falsely"), ¶ 23 ("patently false"), ¶ 31 ("simply false"); Defendants'
24  Motion to Seal, Dkt 51, p. 1–2 ("I have come into possession of evidence that strongly suggests Ms. Barnhart was
   not aware of what she was signing when swore to the truth of the contents of that declaration and may have lacked
25  capacity to swear under oath to the contents of that declaration."); Defendants' Motion for Sanctions, Dkt 59, p. 1
   ("Ms. Barnhart's testimony is demonstrably false in every material respect"), p.2 ("simply false."), p. 13
26  ("demonstrably false"), p. 14 ("false allegations"), p. 15 ("false and defamatory testimony in the Second Barnhart

---

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1      Moreover, if and when this case proceeds, Mr. Brown may need to cross-examine (in a

2  deposition or a trial) Ms. Barnhart about these exact same issues—including issues raised in

3  confidence during the attorney-client relationship—for the sole purpose of trying to create doubt

4  as to whether Ms. Barnhart gave truthful testimony in the Signed Barnhart Declaration and/or is

5  a competent witness.  Further, if Ms. Barnhart testifies at trial on any facts not favorable to

6  Defendants, to represent Ms. Paulson to the best of his ability, Mr. Brown **must** attempt to

7  discredit that testimony.  That is, again, it is in Defendants' best interest for Mr. Brown to try to

8  create doubt as to whether Ms. Barnhart is competent to testify and/or convince a jury that she

9  committed perjury when she testified against Defendant Paulson.  Accusing a former client of

10  either incompetence or a crime to benefit another client in the same matter could not be a clearer

11  conflict of interest.  Therefore, Mr. Brown and his firm cannot exercise their duty of loyalty to

12  both Ms. Paulson and Ms. Barnhart in this matter.

### IV.   CONCLUSION

      For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'
Motion to Qualify.

Dated: March 11, 2021

                  CARROLL, BIDDLE, & BILANKO, PLLC

             By:    */s/ Jeffrey E. Bilanko*_____
                   Jeffrey E. Bilanko, WSBA 38829

                  */s/ Susan K. Kaplan*_____
                  Susan K. Kaplan, WSBA 40985

                  Carroll, Biddle, & Bilanko, PLLC

---

Declaration"); Brown Decl. ISO Sanctions Mot., Dkt. 60, ¶ 7 ("simply false"); Defendants' Motion to Qualify, Dkt. no 63, p. 5 ("After the Second Barnhart Declaration was filed, the undersigned came into possession of information strongly suggesting that Ms. Barnhart was not aware of what she was signing when she signed it….The circumstances surrounding the preparation of that declaration and Ms. Barnhart's state of mind when she signed it, provide strong grounds for this Court to disregard that "testimony.").

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO QUALIFY - 15
(2:20-cv-01606-BJR)

**CARROLL, BIDDLE, & BILANKO, PLLC**
1000 2nd Avenue, Suite 3100
Seattle, WA  98104

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1000 2nd Avenue, Suite 3100
Seattle, WA 98104
Phone: (206) 338-1496
Phone: (206) 338-1518
Email: jbilanko@cbblegal.com
Email: skaplan@cbblegal.com
Attorneys for Plaintiffs

JACOBSON, RUSSELL, SALTZ, NASSIM
& DE LA TORRE LLP


By:     /s/ Michael J. Saltz
        Michael J. Saltz

By:     /s/ Elana R. Levine
        Elana R. Levine

JACOBSON, RUSSELL, SALTZ,
NASSIM & DE LA TORRE LLP
Michael J. Saltz, Esq.
Elana R. Levine, Esq.
1880 Century Park East, Suite 900
Los Angeles, CA  90067
Telephone: (310) 446-9900
Facsimile: (310) 446-9909
Email: msaltz@jrsnd.com
Email: lani@jrsnd.com
Attorneys for Plaintiffs
*Admitted pro hac vice*

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO QUALIFY - 16
(2:20-cv-01606-BJR)

CARROLL, BIDDLE, & BILANKO, PLLC
1000 2nd Avenue, Suite 3100
Seattle, WA  98104