1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TATIANA WESTBROOK, an individual;
JAMES WESTBROOK, an individual; HALO
BEAUTY PARTNERS, LLC, a Nevada Limited
Liability Company,

      Plaintiffs,

      v.

KATIE JOY PAULSON, an individual;
WITHOUT A CRYSTAL BALL, LLC, a
Minnesota Limited Liability Company; and
DOES 1 through 100, inclusive,

      Defendants.

NO. 2:20-cv-1606

**ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS FOR LACK OF
PERSONAL JURISDICTION;
AND DENYING DEFENDANTS'
MOTION FOR SANCTIONS**

## I.      INTRODUCTION

This matter comes before the Court on a Motion to Dismiss filed by Defendants Katie Joy

Paulson and Without a Crystal Ball, LLC ("Defendants"), and on a Motion for Sanctions, also

filed by Defendants. The Motion to Dismiss sets forth multiple grounds for dismissal, including

lack of personal jurisdiction, lack of diversity jurisdiction, failure to join necessary parties, and

failure to state a claim on which relief can be granted. Dkt. No. 17. The Motion for Sanctions

seeks an award of sanctions against Plaintiffs' counsel Michael Saltz, under 28 U.S.C. § 1927, for

ORDER GRANTING
MOTION TO DISMISS

- 1

alleged conduct related to the Declaration of Lori Barnhart. Dkt. No. 59.

Plaintiffs Tatiana Westbrook, James Westbrook, and Halo Beauty Partners, LLC ("Plaintiffs") oppose both motions. Having reviewed the parties' briefs in support of and in opposition to the motions, the relevant exhibits and case law, and the remainder of the record, the Court grants Defendants' Motion to Dismiss for lack of personal jurisdiction, and denies Defendants' Motion for Sanctions. The Court's reasoning follows.

## II.      FACTUAL BACKGROUND

Plaintiff Tatianna Westbrook is a self-described "internet personality, celebrity, and influencer," who "critiques beauty products and posts those critiques on social media platforms, including YouTube." Compl., ¶ 10, Dkt. No. 1. She claims to have over 9 million followers on YouTube alone. *Id*. Plaintiff Halo Beauty Partners ("Halo"), a Nevada limited liability company, is a "nutraceuticals company that produces products formulated to support hair, skin, and nail health." *Id*., ¶ 12. Ms. Westbrook founded and owns Halo with her husband, Plaintiff James Westbrook. For purposes of this motion, the Court takes as true the Westbrooks' claim that they are and were "at all relevant times" domiciled in King County, Washington. *Id*., ¶¶ 1 & 2.[1]

Defendant Katie Joy Paulson is a resident of Minnesota. *Id*., ¶ 5. Her company, Defendant Without a Crystal Ball, is a Minnesota limited liability company. *Id*. ¶ 4. Paulson is an internet "blogger and vlogger who makes, produces, and uploads 'drama' and/or 'tea' videos and internet postings on various internet-based platforms, including but not limited to YouTube and Twitter." *Id*. Defendants have an estimated 135,000 YouTube followers. *Id*., ¶ 14.

---

[1] Both sides devote substantial effort to arguing whether the Westbrooks were at all relevant times domiciled in Washington. Even Plaintiffs deny, however, that "Plaintiffs' domicile is relevant to the inquiry of whether personal jurisdiction exists over Defendants," and furthermore, the Court, as it must for purposes of this motion, takes Plaintiffs' allegations concerning their domicile as true. Pls.' Opp. Br. at 11.

ORDER GRANTING
MOTION TO DISMISS
- 2

1          According to the Complaint, starting in May 2019, Defendants have uploaded to YouTube

2    and Twitter dozens of videos targeting the Westbrooks and Halo, designed to "ruin" Ms.

3    Westbrook's "good name and reputation." *Id.*, ¶ 22. These videos are presented as "exposés"

4    covering a range of subjects, including: (1) a public dispute between Ms. Westbrook and a

5    rival/fellow "beauty celebrity" James Charles; (2) the safety and efficacy of Halo vitamin

6    products, which Paulson has referred to as "snake oil"; (3) the personal and business history of the

7    Westbrooks, including alleged legal disputes and business failures; and (4) a lawsuit filed in

8    October 2020 in Los Angeles Superior Court by Plaintiffs' "business partner" Clark Swanson,

9    against Halo Beauty, Inc., a company affiliated with Plaintiffs.  *See, e.g.,* Compl., ¶¶ 28, 29, 32.

10          Plaintiffs claim that in these videos, Defendants have "intentionally harassed and

11    maligned Plaintiffs and/or otherwise maliciously portrayed them in a false light and sought to

12    financially harm them." *Id.*, ¶ 22.  Defendants' videos "have been published to, and/or are

13    accessible by the general public" and have been viewed "hundreds of thousands, if not millions,

14    of times." *Id.*, ¶¶ 26 & 27. Plaintiffs have sued Defendants for defamation, intentional infliction of

15    emotional distress, and violations of the Washington Consumer Protection Act, among other

16    causes of action, and seek $5 million in damages. *See id.,* ¶¶ 50-114; Plaintiffs' Civil Cover Sheet,

17    Dkt. No. 1-1.

18          Defendants move to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(2) for lack of

19    personal jurisdiction. Because the Court grants Defendants' motion to dismiss on these grounds, it

20    does not reach Defendants' remaining challenges to the Complaint.

21    ///
      ///
22

23

24    ORDER GRANTING
      MOTION TO DISMISS
25    - 3

### III.    DISCUSSION

**A.  General Principles on a Motion to Dismiss for Lack of Personal Jurisdiction**

When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). All of a plaintiff's uncontroverted allegations are taken as true, and factual disputes are to be resolved in plaintiff's favor. *Id.*

In the absence of applicable federal law, jurisdiction is governed by the long-arm statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends personal jurisdiction to the broadest reach of federal due process. *See* RCW § 4.28.185; *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wn.2d 1989). To comply with the requirements of due process, a plaintiff must demonstrate "(1) that the non-resident defendant has established 'minimum contacts' with the forum state; and (2) that the exercise of personal jurisdiction comports with the traditional notions of 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985); *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945).[2]

Courts apply a three-part test to determine whether the non-resident defendant has the requisite quantum of "minimum contacts" with the forum state for the exercise of specific jurisdiction to be appropriate: (1) the defendant has purposefully directed his activities toward the forum; (2) the plaintiff's claims arise out of those forum-related activities, and (3) the exercise of jurisdiction is reasonable. *See Burger King Corp.*, 471 U.S. at 472–76; *Schwarzenegger*, 374 F.3d

---

[2] Personal jurisdiction may be general or specific. *Helicopteros Nacionales de Colom., S.A. v. Hall,* 466 U.S. 408, 415–416 (1984). General jurisdiction requires that a defendant's contacts in the forum state are "continuous and systematic." *See id.* Because Plaintiffs here do not claim that Defendants are subject to this Court's general jurisdiction, the Court considers only the question of specific jurisdiction.

ORDER GRANTING
MOTION TO DISMISS
- 4

at 802. Defendants challenge the first prong of the "minimum contacts" test, and deny that they "purposefully directed" their activities towards Washington.

**B. Whether Defendants' Actions Were "Purposefully Directed" at Washington State**

*1. The Effects Test Under* Calder *and Subsequent Cases*

The Ninth Circuit has recently acknowledged the difficulty of analyzing personal jurisdiction in the context of internet-based claims, "when an individual in one state can cause serious harm anywhere in the world, without leaving the comfort of their home." *Janus v. Freeman*, 2020 WL 7663439, at *6 (9th Cir. Dec. 24, 2020) (Baylson, D.J., dissenting). Courts have sought to strike a fair balance between the interests of defendants who may have no intentional connection with a forum, and plaintiffs, who may have nevertheless experienced harm, all while maintaining a principled approach to the concept of jurisdiction, rooted in due process.

Even in this context of constantly and rapidly evolving technology, whether a defendant accused of an intentional tort such as defamation has "purposefully directed" its activities toward a forum sufficient to establish personal jurisdiction is still governed by the "effects" test outlined nearly 40 years ago by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984); *see Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). Under this test, courts are to determine whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1228 (9th Cir. 2011) (citations omitted). Apparently conceding prongs (1) and (3), Defendants claim that Plaintiffs have failed to establish the second element of

ORDER GRANTING
MOTION TO DISMISS

the *Calder* effects test: that Defendants' conduct was "expressly aimed" at Washington.[3]

In *Calder*, Shirley Jones, a California television and movie actress, brought a libel suit in California state court against a reporter and editor based on an article published by the National Enquirer, headquartered in Florida. 465 U.S. at 784–86. In concluding that defendants had expressly aimed their conduct at California, the Court noted the following factors were significant: that defendants had reached out directly by telephone to sources in California; that the article "concerned the California activities of a California resident," and contained "various facts that gave the article a California focus"; that National Enquirer sold 600,000 copies of the article in California, out of a total nationwide circulation of approximately 5 million—almost twice as many as in the next highest State; and that the contents in the article were alleged to have caused an injury "to the plaintiff's reputation in the estimation of the California public," and specifically, "impugned the professionalism of an entertainer whose television career was centered in California." *See Calder,* 465 U.S. at 785, 788; *Walden v. Fiore*, 571 U.S. 277, 288 (2014).

Since *Calder*, courts have weighed similar factors connecting a defendant with the forum, tempered by a recent admonition in *Walden v. Fiore*. In that case, a unanimous Supreme Court "expressly rejected the view that *Calder*'s effects test is satisfied merely by the defendant's commission of an intentional tort that is aimed at a person known to be a resident of the forum state." *Janus*, 2020 WL 7663439, *2 (citing *Walden*, 571 U.S. at 289–90) ("[M]ere injury to a forum resident is not a sufficient connection to the forum."). The *Walden* Court noted that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the

---

[3] It is not clear from the case law what distinction, if any, is intended between the phrases "purposely directed" and "expressly aimed," but for purposes of this case, because Defendants have not challenged the first and third prongs, the effects test effectively collapses into the first prong of the "minimum contacts" test.

ORDER GRANTING
MOTION TO DISMISS

1    defendant's conduct connects him to the forum in a meaningful way." 571 U.S. at 290.

2           As noted above, in the context of internet-based conduct in particular, courts " have

3    struggled with the question whether tortious conduct on a nationally accessible website is

4    expressly aimed at any, or all, of the forums in which the website can be viewed," and have

5    required "something more" than maintenance of a passive website, available anywhere with an

6    internet connection. *Mavrix Photo*, 647 F.3d at 1229. The Ninth Circuit has found jurisdiction

7    where a defendant "continuously and deliberately exploited" the forum-state market for its

8    website, and a "substantial number of hits to [defendant's] website came from" the forum. *Mavrix*

9    *Photo*, 647 F.3d at 1230. It has declined to exercise jurisdiction, however, even where almost

10   20% of a defendant's total circulation was located in the forum, where plaintiff did "not establish

11   that [defendant] expressly aimed at" the forum or "tailored the website to attract [forum-specific]

12   traffic." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1211 (9th Cir. 2020).

13        *2.   Whether Defendants' Suit-Related Conduct Was "Expressly Aimed" at Washington*

14          The cases demonstrate that the ultimate question of when defendants "expressly aim" their

15   suit-related conduct at a forum state is intensely fact-specific. *See Attachmate Corp. v. Pub.*

16   *Health Tr. of Miami-Dade Cty. Fla.*, 686 F. Supp. 2d 1140, 1147 (W.D. Wash. 2010) ("One clear

17   import of the Ninth Circuit's case law regarding express aiming is that the district court's inquiry

18   on this score must be grounded squarely in the facts of the particular case.").

19          After examining Defendants' connections to the state of Washington, the Court concludes

20   that the Defendants' contacts in this case are the kind of "random, fortuitous, or attenuated"

21   contacts with the forum state that *Walden* cautioned courts against relying on. *See Burger King*

22   *Corp.*, 471 U.S. at 475; *see also, e.g., Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064,

23

24   ORDER GRANTING
     MOTION TO DISMISS

25    - 7

1068 (9th Cir. 2017). The connections alleged include:

### a. *Sources for the Content*.

Plaintiffs allege that Defendants "searched through and relied upon Washington sources" for their information. Pls.' Opp. Br. at 11-12. The evidence demonstrates, however, that Paulson conducted "several different searches," using general internet search engines, looking "all over the place . . . everywhere, everywhere." Decl. of T. Westbrook, ¶ 11 (quoting May 31, 2019 video "Sephora Arrived at My House! And I'll Answer Questions Too!"). Paulson did "a regular, very basic background check," and also noted "you can actually go state to state and try to pull up some stuff as well." *Id*. Plaintiffs argue that Paulson must have used Washington-specific websites in her research, a reasonable inference from the content of her videos. However, it is also clear she likely used state-specific websites from multiple other states as well. *Id*., ¶ 12 (citing June 2, 2019 video "The Past James & Tati Westbrook Don't want you to Know" ("The Past video")) (Paulson stating "all of this information came from court records from Hawaii, California, South Carolina, North Carolina, Washington state and Georgia. . . all of this is public record."). Unlike in *Calder*, there is no allegation that Defendants reached out directly (or indirectly) to any resident of Washington for information for the videos; Plaintiffs' claim that Defendants relied on "Washington sources" is significantly overstated.

### b. *Focus on Plaintiffs' Activities in the Forum*.

Also unlike the article in *Calder*, which was focused on Jones' activities in the forum, Defendants' videos do not refer in any substantive way to activities conducted in Washington. Plaintiffs' proffered examples of Defendants' references to Washington are brief, isolated, and incidental. *See* T. Westbrook Decl., ¶ 12 (citing "The Past" video at 13:00) ("Tati grew up in

ORDER GRANTING
MOTION TO DISMISS

Washington and her mother actually was her talent agent. . . Tati and her family moved around a lot."). Other than a brief reference Paulson makes to Ms. Westbrook's "small tax warrant" in 2003 in Washington—lasting mere seconds of the hours and hours of video at issue—the Court was unable to identify any explicit references to Washington that might arguably impugn the Westbrooks' reputation. *See* T. Westbrook Decl., ¶¶ 11 & 12 (citing "The Past" video at 15:30). Critically, almost none of the few Washington references in Defendants' videos are connected to the underlying defamation claims in this case.

Instead, the majority of Defendants' alleged offending content concerns events and subjects (such as Ms. Westbrook's feud with James Charles and the Los Angeles lawsuit Clark Swanson filed against Halo) that took place in California, or virtually online. Defendants' discussion of Plaintiffs' vitamin products is directed at Plaintiff Halo, a Nevada company, and none of Ms. Westbrook's YouTube videos (the frequent topic of Defendants' videos) was apparently filmed in Washington, or even concerns activities that took place in Washington. This is in contrast to the situation in Calder, where the Court reviewed "the various facts that gave the article a California focus," and concluded "California is the focal point [] of the story."). *Calder*, 465 U.S. at 789; *Mavrix Photo, Inc.*, 647 F.3d at 1230 (noting defendant "operated a very popular website with a specific focus on the California-centered celebrity and entertainment industries").

### c. Activities Directed at "Large Number" of Citizens of the Forum.

*Calder* and its more recent progeny also indicate that a plaintiff must demonstrate that the offending content both reached a "large number" of forum-state residents, *and* was intentionally targeted at the forum. In *Calder*, the "reputation-based effects . . . would not have occurred *but for* the fact that the defendants wrote an article for publication in California *that was read by a large*

ORDER GRANTING
MOTION TO DISMISS

*number* of California citizens." *Walden*, 571 U.S. at 288 (emphasis added); *see also Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984) (finding specific jurisdiction appropriate in state where "substantial number of copies"—10,000-15,000 per month—"are regularly sold and distributed").

As more recent cases dealing with internet-based injury establish, it is not enough that a defendant's content is merely accessible to residents of a forum. "Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." *Mavrix Photo, Inc.*, 647 F.3d at 1231. Where the "[p]laintiff does not identify any evidence that Defendant specifically targets or solicits [forum-state] viewers," the forum-state "residents' ability to view Defendant's online content" alone is not enough to demonstrate express aiming. *E'Casanova v. Morrow*, 2021 WL 682058, at *3 (D. Nev. Feb. 22, 2021) (citing *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018)); *Handsome Music, LLC v. Etoro USA LLC*, 2020 WL 8455111, at *9 (C.D. Cal. Dec. 17, 2020) ("Plaintiff does not present any evidence to show Defendant's website has a specific focus on California or has a substantial California user base. Plaintiff proffers no evidence to show Defendant posts and profits from California-specific advertisements on its website. Furthermore, the online stock and commodities trading market cannot reasonably be considered a California-centered industry. Unlike the celebrity-gossip industry described in *Mavrix Photo Inc.,* which arguably revolves around Hollywood, California, the industry to which Defendant belongs is not specific to one geographic area.").

The Court takes as true Plaintiffs' barebones claim that "Defendants' viewership includes residents of Washington," but that factor alone is insufficient to support their bid for jurisdiction.

ORDER GRANTING
MOTION TO DISMISS

Pls.' Opp. Br. at 4. In support of their claim that jurisdiction lies in Washington, Plaintiffs have

submitted (1) declarations of two Washington residents, who viewed Defendants' videos and,

based thereon, decided not to buy Plaintiffs' products; and (2) the declaration of one of

Defendants' "fiercest and loyalist [*sic*]" fans, a Washington resident, who subscribed to

Defendants' YouTube channel "during the time period [that] . . . "Ms. Paulson published

numerous videos and other content maligning Plaintiffs in this case."  *See* Decls. of Macy Storme,

Hope Walker, Dkt. Nos. 27-4 & 5; Decl. of Kim Fulmer, ¶ 11; Decl. of Lori Ann Barnhart, Dkt.

No. 38-1, ¶ 5. Even crediting the testimony of these three witnesses, the declarations of three

viewers in Washington—out of the alleged "hundreds of thousands, if not millions, of times" that

Defendants' videos have been viewed—only highlight the vast discrepancy between this case and

the 600,000 California readers in *Calder*. Compl. ¶¶ 26 & 27. *See also Mavrix Photo, Inc.*, 647

F.3d at 1230 (jurisdiction existed because "*substantial number* of hits to [defendant's] website

came from California residents.") (emphasis added); *AMA Multimedia, LLC*, 970 F.3d at 1211

(court lacked jurisdiction even though 20% of defendant's audience lived in the forum).

Significantly, Plaintiffs have proffered no allegations of, for example, Washington-specific

marketing or advertising from which one could conclude that Defendants targeted Washington, as

opposed to a wider audience generally.

       The Court finds that Plaintiffs have failed to demonstrate that Defendants "expressly

aimed" their video content at Washington, and thus have not shown that Defendants

"purposefully directed" their actions toward the state of Washington. Therefore, the Court

concludes that Washington is an improper forum, and this Court lacks personal jurisdiction over

Defendants.

ORDER GRANTING
MOTION TO DISMISS

**C. Defendants' Motion for Sanctions**

Defendants have filed a motion seeking sanctions against Plaintiffs' counsel Michael Saltz, essentially accusing him of harassing and intimidating third-party witness Lori Ann Barnhart, and of both suborning and committing perjury. Mot. for Sanctions, Dkt. No. 59. Defendants rely on 28 U.S.C. § 1927, which provides that the Court may order "[a]ny attorney or other person admitted to conduct cases ... who so multiplies the proceedings in any case unreasonably and vexatiously ... to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Where ordered, these sanctions must be accompanied by a finding that the sanctioned attorney "acted recklessly or in bad faith" or committed intentional misconduct. *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir. 1982); *see also In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) ("[b]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent") (quoting *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986)).

The Court declines to rule on Defendants' Motion for Sanctions for several reasons. First, the misconduct alleged is serious, and if proven could expose Saltz to sanctions up to and including disbarment. Given the gravity of the potential consequences, and because Defendants' allegations are both convoluted and avidly disputed, the Court could not rule on the motion without an extensive evidentiary hearing.

Furthermore, because the Barnhart declaration is not material to the Court's ruling on jurisdiction, the integrity of these proceedings is not implicated to the extent that Defendants contend. And while the Court acknowledges it has the discretion to rule on the motion, the fact

ORDER GRANTING
MOTION TO DISMISS

that this case is being dismissed means the Court's supervision of these proceedings is no longer required. In sum, the Court declines to devote its resources to investigating the activities of a California attorney, not licensed in Washington, in a case that is being dismissed. The Motion for Sanctions is therefore denied without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss. Defendants' Motion for Sanctions is DENIED without prejudice.  This case is DISMISSED without prejudice.

DATED this 15th day of March, 2021.


Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING
MOTION TO DISMISS

- 13